FILED

2018 JUN -4  AM 11: 11

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO. FLORIDA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| **FEDERAL TRADE COMMISSION,** | <u>Filed Under Seal</u> |
| Plaintiff, | |
| v. | Case No. 6:18-CV-862 -ORL- 31-DCI |
| **MOBE Ltd.**, also d/b/a **MOBE**, also d/b/a **My Online Business Education**, also d/b/a **My Own Business Empire**, a Malaysian limited liability company, | **COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |
| **MOBEProcessing.com, Inc.**, a Delaware corporation, | |
| **Transaction Management USA, Inc.**, a Delaware corporation, | |
| **MOBETraining.com, Inc.**, a Delaware corporation, | |
| **9336-0311 Quebec Inc.**, also d/b/a **Business Education Training**, a Canada corporation, | |
| **MOBE Pro Limited**, an United Kingdom limited liability company, | |
| **MOBE Inc.**, a Panama corporation, | |
| **MOBE Online Ltd.**, a Mauritius limited liability company, | |
| **Matt Lloyd Publishing.com Pty Ltd.**, also d/b/a **Matt Lloyd Publishing**, also d/b/a **Home Business Builders**, an Australia limited liability company, | |

S-1

**Matthew Lloyd McPhee**, a/k/a **Matt Lloyd**, individually and as an officer, member and/or manager of MOBE Ltd., MOBEProcessing.com, Inc., MOBETraining.com, Inc., 9336-0311 Quebec Inc., MOBE Pro Limited, MOBE Inc., MOBE Online Ltd., Matt Lloyd Publishing.com Pty Ltd., and Transaction Management USA, Inc.,

**Susan Zanghi**, individually and as an officer, member and/or manager of MOBE Ltd. and MOBE Processing.com, Inc., and

**Russell W. Whitney, Jr.**, individually and as an officer, member and/or manager of MOBE Ltd.,

      Defendants.

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.     The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## SUMMARY OF THE CASE

2.     Since 2013, Defendants have used online advertisements, social media, and live events held throughout the United States to promote a fraudulent business education program called "My Online Business Education" or "MOBE." Through their program, Defendants claim to reveal a simple 21-step system that will show consumers how to quickly and easily start their own online business and make substantial income.

3.      Although the initial entry fee for Defendants' 21-Step System is relatively modest—typically $49 or less—as consumers proceed through the steps, they are bombarded with sales pitches for various MOBE membership packages costing thousands of dollars that consumers must buy in order to continue through and complete the 21-Step System.

4.      Defendants eventually reveal, as consumers progress through the steps, that the way to make money through MOBE is by luring other consumers into the MOBE program and earning commissions when these consumers buy the same costly memberships.

5.      In fact, the vast majority of consumers who join the MOBE program and purchase the costly MOBE memberships lose money.  In income disclosures buried on their website, Defendants acknowledge that the average "active consultant" makes only a few hundred dollars a year from their program—far less than the thousands of dollars consumers pay for their MOBE memberships.

6.      In addition to their false and unsubstantiated claims that consumers will earn substantial income by joining the MOBE program and purchasing these costly memberships, Defendants also make false and misleading refund and money-back guarantees to induce consumers to purchase MOBE memberships.  After consumers pay, however, Defendants require these consumers to sign post-purchase agreements that seek to impose onerous conditions for obtaining a refund, or that claim in other instances that the purchases are non-refundable and final.  Defendants often cite to the language in these post-purchase agreements to deny refund requests or dispute chargebacks.

7.      In sum, Defendants' scheme has defrauded thousands of consumers who collectively have paid over $125,000,000 to Defendants based on their misrepresentations

about how much money they will earn by purchasing the MOBE program and memberships. Numerous consumers have individually lost more than $20,000 from Defendants' scheme.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

9.      Venue is proper in this district under 28 U.S.C. § 1391 (b)(2), (b)(3), (c)(1), (c)(2), (c)(3), and (d) and 15 U.S.C. § 53(b).

## PLAINTIFF

10.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

11.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. § 53(b).

## DEFENDANTS

*Corporate Defendants*

12.      Defendant **MOBE Ltd.,** also d/b/a **MOBE,** also d/b/a **My Online Business Education,** also d/b/a **My Own Business Empire,** is a Malaysian company incorporated under the Labuan Companies Act 1990 on or around July 1, 2014 (Company No. LL10885). MOBE Ltd. has a registered office address in the federal territory of Labuan at Level 2, Lot 19, Lazenda Commercial Centre, Phase 3, Federal Territories of Labuan, Malaysia 87007.

MOBE Ltd.'s principal place of business is currently located at Suite 8-1 & 8-2, Level 8,

Menara CIMB No. 1, Jalan Stesen Sentral 2 Kuala Lumpur Sentral 50470 Kuala Lumpur,

Malaysia.  Individual defendant Matthew Lloyd McPhee ("Matt Lloyd") is the creator,

founder and sole owner of MOBE Ltd.  MOBE Ltd. transacts and has transacted business in

Florida and throughout the United States in connection with the matters alleged herein.

MOBE Ltd. has numerous contacts with the United States, including organizing and hosting

live events in this district and throughout the United States to promote its products or

services; employing sales agents and other representatives in the United States, including

individual defendants Russell W. Whitney, Jr. and Susan Zanghi, and conducting its business

in the United States through these sales agents and representatives; registering over 300

website domains with a U.S.-based internet service provider and operating numerous active

websites targeting consumers in the United States; soliciting and arranging for consumers

residing in the United States to register for and attend its U.S. and overseas seminars or

conferences; creating and disseminating direct mailers and other promotional materials to

consumers in the United States; and registering numerous trademarks with the U.S. Patent

and Trademark Office for use in the sale and marketing of MOBE's products and services in

the United States.

13.    Defendant **MOBEProcessing.com, Inc. ("MOBE USA")** is a Delaware

corporation formed on or about December 3, 2014, with a registered agent address at

Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.  MOBE USA's

current place of business is listed as 8207 Golf Ridge Drive, Charlotte, North Carolina,

28277.  MOBE USA transacts and has transacted business in this district and throughout the

United States. In or around 2015, MOBE USA's principal place of business was listed as 12806 Langstaff Drive, Windermere, Florida 34786. In or around 2016, MOBE USA changed its principal place of business to 13506 Summerport Village Parkway, Windermere, Florida 34786, a UPS mail box. Matt Lloyd is the sole owner of MOBE USA, and MOBE USA has no other directors or shareholders. On its websites and elsewhere, MOBE Ltd. identifies MOBE USA as an operating division of MOBE Ltd. Defendants established MOBE USA to collect and process payments from consumers in the United States on behalf of MOBE Ltd. and Matt Lloyd. MOBE USA has opened merchant accounts and billed consumers in the United States for MOBE products and services using merchant descriptors such as "MOBE-Coaching/Mentoring," "MOBE-Mastermind," "Mobe-Online Product Group," "Mobe-Traffic," "Mobe-Marketplace," "Mobe-Home Business Summit," "Mobe-Summit," and "Mobe Online." During the time period material to this complaint, MOBE USA has commingled funds with and made substantial transfers of cash or assets to and from MOBE Ltd. and its other operating divisions.

14. Defendant **Transaction Management USA, Inc. ("TM-USA")** is a Delaware corporation formed in November 2015 with a registered agent address at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Prior to April 25, 2017, TM-USA's name was "Staff Talent International, Inc." Matt Lloyd is the sole owner, director and CEO of TM-USA. TM-USA's principal place of business is listed as 10612 Providence Road, Suite D, Charlotte, North Carolina 28277, a UPS mail drop. TM-USA transacts and has transacted business in this district and throughout the United States. Defendants established TM-USA to collect and process consumer payments via wire transfer and PayPal

on behalf of MOBE Ltd. and Matt Lloyd. During the time period material to this complaint, TM-USA has commingled funds with and made substantial transfers of cash or assets to MOBE Ltd. and its operating divisions.

15.     Defendant **MOBETraining.com, Inc. ("MOBE Training USA")** is a Delaware corporation formed on or about November 20, 2015, with its registered agent address and principal business address both located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. MOBE Training USA transacts and has transacted business in this district and throughout the United States. Matt Lloyd is the sole owner of MOBE Training USA, and MOBE Training USA has no other directors or shareholders. Defendants established MOBE Training USA to receive and transfer payments collected from consumers in the United States by MOBE USA and TM-USA. During the time period material to this complaint, MOBE Training USA has commingled funds with and made substantial transfers of cash or assets to and from MOBE Ltd. and its other operating divisions.

16.     Defendant **MOBE Pro Limited ("MOBE UK")** is a private limited liability company registered in England and Wales in September 2015 (Company No. 09763289) under the Companies Act 2006. MOBE UK has a registered address and business address at Third Floor, 207 Regent Street, London, United Kingdom W1B 3HH, which is a mail forwarding address belonging to a UK-based incorporation services provider. MOBE UK transacts and has transacted business throughout the United States through its common enterprise and its alter egos, Matt Lloyd, MOBE Ltd., MOBE USA, MOBE Training USA, and/or TM-USA. Matt Lloyd is the sole owner of MOBE UK, and MOBE UK has no other

directors, shareholders or employees.   On its websites and elsewhere, MOBE Ltd. recognizes MOBE UK as an operating division of MOBE Ltd.  Defendants established MOBE UK to collect and process consumer payments on behalf of MOBE Ltd. and Matt Lloyd.  MOBE UK has opened merchant accounts and billed consumers in the United States for MOBE products and services using merchant descriptors such as "WeSellGoodTraffic.com," "Mobe.com," "Mobehelp.com" and "ALW*MOBEHELP.COM."  During the time period material to this complaint, MOBE UK has commingled funds with and made substantial transfers of cash or assets to and from MOBE Ltd. and its other operating divisions.

17.    Defendant **MOBE Online Ltd. ("MOBE Mauritius")** is a private limited liability company created in Port Louis, Mauritius in September 2015 (Company No. 133151).  MOBE Mauritius has its registered office and principal business address at 54 Wellington Street, Rose-Hill, Mauritius, an address belonging to a Mauritius-based incorporation services provider.  MOBE Mauritius transacts and has transacted business throughout the United States through its common enterprise and its alter egos, Matt Lloyd, MOBE Ltd., MOBE USA, MOBE Training USA, and/or TM-USA.  Matt Lloyd controls and is the sole owner of MOBE Mauritius.  On its websites and elsewhere, MOBE Ltd. identifies MOBE Mauritius as an operating division of MOBE Ltd.  Defendants established MOBE Mauritius to collect and process consumer payments on behalf of MOBE Ltd. and Matt Lloyd.  MOBE Mauritius has opened merchant accounts and billed consumers in the United States for MOBE products and services using merchant descriptors "WeSellGoodTraffic.com," "Mobe.com" and "Mobehelp.com."  During the time period

material to this complaint, MOBE Mauritius has commingled funds with and made

substantial transfers of cash or assets to MOBE Ltd. and its other operating divisions.

18. Defendant **9336-0311 Quebec, Inc.,** also d/b/a **Business Education Training**

("**MOBE Canada**") is a company incorporated in Quebec, Canada, in February 2016

(Quebec Enterprise No. 1171564231). MOBE Canada has a registered office and principal

business address at 2500-1751 Richardson Street, Montreal, Quebec K3K1G6, Canada,

which is a mail forwarding address established and paid for by MOBE's corporate attorneys

in Canada. MOBE Canada transacts and has transacted business in this district and

throughout the United States through its common enterprise and its alter egos, Matt Lloyd,

MOBE Ltd., MOBE USA, MOBE Training USA, and/or TM-USA. On its websites and

elsewhere, MOBE Ltd. identifies MOBE Canada as an operating division of MOBE Ltd.

Matt Lloyd is the sole owner of MOBE Canada, and MOBE Canada has no board of

directors or other shareholders or employees. Defendants established MOBE Canada to

collect and process consumer payments for MOBE Ltd. and Matt Lloyd. MOBE Canada has

opened merchant accounts and billed consumers in the United States for MOBE products and

services using merchant descriptors such as "Business Education Training" and

"MobeTraining.com." During the time period material to this complaint, MOBE Canada has

commingled funds and made substantial transfers of cash or assets to MOBE Ltd. and its

other operating divisions.

19. Defendant **MattLloydPublishing.com Pty Ltd.,** also d/b/a **Matt Lloyd**

**Publishing,** also d/b/a **Home Business Builders** ("**MOBE Australia**") is an Australian

private limited company registered in or around February 2013 (ACN 162 580 770, ABN 51

162 580 770).  MOBE Australia has a registered office at 22 Mercury Street, Carlisle,

Western Australia 6101.  MOBE Australia transacts and has transacted business in the United

States directly and through its common enterprise and its alter egos, Matt Lloyd, MOBE Ltd.,

MOBE USA, MOBE Training USA, and/or TM-USA.  Matt Lloyd is the sole owner of

MOBE Australia, and MOBE Australia has no board of directors or other shareholders or

employees.  Defendants use MOBE Australia to collect and process consumer payments on

behalf of MOBE Ltd. and Matt Lloyd.  MOBE Australia has opened merchant accounts and

billed consumers in the United States for MOBE products and services using merchant

descriptors such as "Home Business Builders," "Mattlloydpublishing.com," and "Matt Lloyd

Publishing."  During the time period material to this complaint, MOBE Australia has

commingled funds and made substantial transfers of cash or assets to Matt Lloyd, MOBE

Ltd., and its other operating divisions.

     20.     Defendant **MOBE Inc.** ("**MOBE Panama**") is a "Sociedad Anonima"

business entity incorporated in Panama in or around August 2013 (Company No. 812658).

MOBE Panama has a registered office address at Azuero Business Center, Suite 580,

Avenida Perez Chitre, Panama 00395.  Jerome Mark Seaton purports to be the registered

president of MOBE Panama, although Matt Lloyd is the bona fide owner, controls MOBE

Panama through a separate agreement between these parties, and has represented to third

parties that he is MOBE Panama's CEO and sole owner.  MOBE Panama transacts and has

transacted business in the United States through its common enterprise and its alter egos,

Matt Lloyd, MOBE Ltd., MOBE USA, MOBE Training USA, and/or TM-USA.  Defendants

use MOBE Panama to, among other things, collect and process consumer payments for

MOBE Ltd. and Matt Lloyd.  MOBE Panama has opened merchant accounts under its name and billed consumers in the United States for MOBE products and services using merchant descriptors such as "Mobeorder.com."  The "Mobeorder.com" website domain is currently registered to and operated by MOBE Ltd.  Mobeorder.com identifies MOBE Panama as the registered business name of MOBE Australia.  During the time period material to this complaint, MOBE Panama has commingled funds with and made and received substantial transfers of cash or assets to and from MOBE Ltd. and its various operating divisions.

*Individual Defendants*

21.     Defendant **Matthew Lloyd McPhee**, a/k/a Matt Lloyd ("**Matt Lloyd**") is an Australian national residing in Kuala Lumpur, Malaysia, in the same hotel where MOBE Ltd. maintains its principal place of business.   In connection with the matters alleged herein, Matt Lloyd has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, Matt Lloyd has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of MOBE Ltd., MOBE USA, TM-USA, MOBE Training USA, MOBE UK, MOBE Mauritius, MOBE Canada, MOBE Australia, and MOBE Panama (the "**Corporate Defendants**") as set forth in this Complaint.  Matt Lloyd has scripted, narrated, produced and disseminated advertising and promotional materials, including videos of himself and others, targeting consumers in the United States.  Matt Lloyd travels to the United States several times per year to speak at live events and seminars in order to promote MOBE's products and services.  In 2015, Matt Lloyd executed a lease purporting to establish his residence in Charlotte, North Carolina, in conjunction with MOBE USA's application to open a bank

account in the United States.  The Corporate Defendants, which Matt Lloyd owns and

controls, function as a seamless, unified entity to advance a fraudulent scheme that targets

consumers in the United States.

22.     Defendant **Russell W. Whitney, Jr.**, a/k/a Russ Whitney ("**Russ Whitney**")

is a Florida resident.  During all or part of the times material to this Complaint, he served as

MOBE Ltd.'s Director of Event Sales and, acting alone or in concert with others, he has

formulated, directed, controlled, had the authority to control, or participated in the acts and

practices of the Corporate Defendants as set forth in this Complaint.  Russ Whitney has

advanced the MOBE fraudulent scheme by promoting, arranging, and speaking at numerous

MOBE live events and seminars held in the United States.  Russ Whitney has also provided

training to MOBE sales agents.  For example, Russ Whitney conducted an online training

webinar that teaches techniques for convincing consumers to take on debt to finance MOBE

purchases.  Russ Whitney claims that he has made over $1,000,000 with MOBE and another

$600,000 in commissions from MOBE with his business partner.  In connection with the

matters alleged herein, Russ Whitney transacts or has transacted business in this district and

throughout the United States.

23.     Defendant **Susan Zanghi** is a North Carolina resident.  She is MOBE Ltd.'s

and MOBE USA's Finance Manager.  During all or part of the times material to this

Complaint, acting alone or in concert with others, she has formulated, directed, controlled,

had the authority to control, or participated in the acts and practices of the Corporate

Defendants as set forth in this Complaint.  Susan Zanghi has opened and has signatory

authority over numerous bank accounts and merchant accounts in the United States for

MOBE USA, MOBE Training USA and TM-USA.  Susan Zanghi is the listed point of

contact for the MOBE USA and TM-USA merchant accounts and in this role she has

received information about numerous chargebacks filed by dissatisfied purchasers of MOBE

memberships.  Susan Zanghi is also listed as a point of contact on the Better Business Bureau

website for MOBE Ltd.  In connection with the matters alleged herein, Susan Zanghi

transacts or has transacted business in this district and throughout the United States.

## COMMON ENTERPRISE

24.     The Corporate Defendants have operated as a common enterprise while

engaging in the deceptive acts and practices and other violations of law alleged in the

Complaint.  The Corporate Defendants have conducted the business practices described

herein through an interrelated network of companies that have a common business purpose,

business functions, and employees; have commingled funds; and are all controlled and

dominated by Matt Lloyd and others acting at his behest.  The Corporate Defendants have

commingled a substantial amount of funds and assets, have shared websites, addresses,

phone numbers and employees, and appear to have no separate business operations or

functions apart from promoting the MOBE program and processing payments from

consumers.  Because all of the Corporate Defendants have operated as a common enterprise,

each of them is jointly and severally liable for the acts and practices alleged below.

Individual Defendants Matt Lloyd, Russ Whitney and Susan Zanghi have formulated,

directed, controlled, had authority to control, or participated in the acts and practices of the

Corporate Defendants that constitute the common enterprise.

- 13 -

## COMMERCE

25.     At all times material to this Complaint, Defendant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

### A. Overview of Defendants' Program and Products

26.     Since 2013, Defendants have marketed and sold purported money-making opportunities—packaged and presented to consumers as "business education" products—in the United States and abroad.

27.     Defendants use online advertisements, direct mailers, and live events to market their program to consumers.  Defendants claim to have a "simple 21-step" money-making system that will show consumers how to quickly and easily make substantial income. Defendants often refer to this 21-step system as "My Top Tier Business" system, or the "MTTB" system.

28.     Defendants convey the impression that making money using the MOBE program is easy or effortless.  For example, Defendants state on their websites that consumers can earn commissions "without creating your own products," "without picking up the phone," and "without dealing with customers."

29.     Defendants repeatedly claim that the MOBE program provides a "done-for-you" sales system that will convert leads into commissions for consumers.

30.     On their websites and in email communications, Defendants claim that "Making Money Online Has Never Been Easier."  Defendants represent to consumers that by

purchasing MOBE memberships, consumers are "investing" in their own businesses and their ability to grow their income.

31.     For example, Defendants claim on their websites—like the one shown below—that consumers who purchase their "proven system" will have access to the "master plan to massive paydays with ease," have thousands of dollars in commissions "deposited directly into your bank account on auto-pilot," and that "average people with no prior experience online are depositing $1,250, $3,300, and even $5,500 commissions" into their bank accounts using the MOBE system:



Figure 1:  Excerpt of webpage for 21-Step System at mttbsystem.com

32.     Defendants claim in their websites that purchasers of the MOBE program will make commissions "Within 30 Days Of Completing The [21] Steps."

33.     Defendants use these websites to identify targets of their scheme and collect their contact information.  Once consumers provide their email addresses and click the

"Instant Access" button, they are taken to a registration page for the 21-Step System,

typically offered at $49 or less.

34.　　On the registration website—as shown below—Defendants reinforce the

message that they have a "Done-For-You Online Sales System … that can deposit $1,250,

$3,300 and $5,500 commissions into your bank account," and state that they will provide

"personal 1-on-1 coaching … to answer all your questions and walk you through

everything," as well as a "simple 21-step training program to making your first $1,250,

$3,300 or $5,500 commissions with MTTB":



Figure 2:  Excerpt of registration page for 21-Step System at mttbsystem.com/21steps/order.php

35.　　Once consumers sign up and pay the registration fee, they are enrolled in

Defendants' 21-Step System, which is comprised of a series of pre-recorded videos narrated

by Matt Lloyd, video testimonials from "satisfied" members, and "coaching" sessions with

Defendants' sales agents.

36.     Although Defendants claim that these items constitute a business education program, the videos and "coaching" sessions are essentially platforms for Defendants to promote and sell consumers more expensive MOBE products and services.

37.     After consumers purchase the 21-step program, Defendants explain in the videos that the "secret" to making money through the MOBE system is to:  (1) buy expensive MOBE memberships; (2) generate internet traffic or bring referrals to Defendants; and (3) receive commissions when Defendants are able to sell MOBE memberships to the consumer's leads or referrals.

38.     During the course of the program, Defendants have attempted to sell five different membership packages in the MOBE program at different prices:  Silver Masterclass for $2,497; Gold Masterclass for $4,997; Titanium Mastermind for $9,997; Platinum Mastermind for $16,667; and Diamond Mastermind for $29,997.

39.     Prior to 2016, Defendants called the introductory membership level "MOBE License Rights."  MOBE License Rights was the precursor to the Silver membership, cost $1,997, offered commissions to consumers if their referrals also purchased this membership or "license," and was marketed by Defendants in much the same way as the Silver membership.

40.     The MOBE membership offerings are progressively tiered.  In order to pay and become a Diamond member, consumers must first pay for the Platinum membership; in order to reach the Platinum level, consumers must first pay for the Titanium membership; and so forth.

- 17 -

41.     With the purchase of each membership package, Defendants claim that consumers are able to earn up to 50% in sales commissions when Defendants sell that same membership package to the consumer's referral.  Thus, if a Silver level member refers a lead to MOBE who also purchases a Silver membership, Defendants claim that the referring member will earn $1,250 in commissions from the sale to his or her referral; if a Titanium level member refers a lead to MOBE who also purchases a Titanium membership, the referring member will earn $3,300 in commissions, and so forth.  At times, Defendants describe these membership offerings as a "license" or a "franchise-like opportunity."

42.     A consumer's eligibility to earn a commission from the sale of a particular membership package, however, depends on the consumer's membership level at the time of sale.  Under Defendants' compensation plan, purchasers of MOBE memberships can earn commissions only on a referral's purchase of the same membership tier or lower.  Thus, a consumer who pays $9,997 for a Titanium-level membership can earn commissions only on his or her referral's purchase of a Silver, Gold, or Titanium membership.  If the referral purchases a Platinum or Diamond membership, a Titanium member will not earn any commissions on those sales.  By structuring their commissions in this manner, Defendants encourage consumers to purchase the most expensive MOBE memberships.

43.     Defendants assure consumers that they can recoup the substantial sums of money they are paying for the MOBE memberships by simply making a few sales. Defendants often tell consumers that they are losing out on money by not being correctly "positioned"—in other words, they should purchase the more expensive membership

packages that will lead to greater amounts in commissions per sale, and earn greater returns on their "investment."

44.     Reaching the Diamond Mastermind membership level costs a typical consumer approximately $60,000.

45.     To identify potential new purchasers for their program, Defendants actively encourage members to place their own ads on social media platforms such as Facebook or Instagram, to create their own website domains directing traffic to Defendants' offerings, to narrate their own video testimonials promoting Defendants' program, and to copy, paste and send one of the many "done-for-you" emails that Defendants create and provide to members.

46.     Even with these efforts, the vast majority of consumers are not able to sell enough MOBE memberships to recoup their costs from participating in the MOBE program.

47.     Defendants also offer to sell members add-on products or services that purportedly will help them generate leads or referrals, such as paid sessions with a "traffic coach" and lead lists (*e.g.*, email addresses of people who reportedly have expressed interest in work-at-home opportunities).  Consumers who purchase such add-on products or services from Defendants suffer mounting losses.

48.     Many targets of Defendants' scheme cannot afford the high cost of the MOBE memberships.  Defendants claim they can help these consumers by offering them a "financing plan."  In reality, Defendants' "financing plan" involves advising consumers to sell their personal assets or incur debt—either by maxing out their existing credit cards or applying for new lines of credit.

### B.   The 21-Step System

49.     Defendants primary method for marketing and selling MOBE memberships is the 21-Step System, also known as My Top Tier Business ("MTTB").

50.     Defendants claim that the 21-Step System provides "a step-by-step method for new business owners to rapidly build and grow a successful online business."

51.     However, as Matt Lloyd has explained in a sworn declaration filed in a civil suit that Defendants brought against one of their competitors, the 21-Step System is a series of marketing videos that is the "essential precursor to all of the revenue MOBE generates" by providing the "platform for selling other MOBE products and services."

52.     The 21-Step System is comprised of a series of videos narrated by Matt Lloyd and complemented by Skype or phone call sessions with Defendants' sales agents who purport to be "business coaches."

53.     Defendants instruct consumers to watch a few of these videos at a time and to call their assigned coaches before proceeding to the next steps.  Consumers are required to speak with their assigned coaches—if they do not, the coaches will not grant consumers access to additional videos.

54.     During the "coaching" sessions, Defendants' sales agents ensure that consumers have watched the videos and reinforce the messages conveyed in the videos.

55.     Defendants make claims in these videos about having the "secret" or the "missing ingredient" to online marketing that will enable consumers to earn substantial income through the MOBE program.

56.     In Step 1, Matt Lloyd claims that Defendants' program will show how "you can leverage funnels that have paid out millions and millions of dollars in commissions to people just like you who went through this training."

57.     In Step 2, Matt Lloyd relates his personal rags-to-riches story and claims to share his "secret" method to generating substantial income online: "You have a system that … you are going to learn throughout these steps … that will actually do it for you, and all you need to do is put leads into the system. That's really all it is."

58.     In Step 3, Matt Lloyd states that "MOBE is the only internet business system that allows you to have your business running at full steam after your first few weeks, and eventually on auto-pilot, making money for you."

59.     In Step 4, titled "Choosing Your Million Dollar Niche, Business Model, and Products For Maximum Profit," Matt Lloyd promises: "I'm going to share with you why it's easier today, right now, to get rich, to become incredibly wealthy than it's ever been in the course of modern capitalism … or even just human kind. And I really want to tell you about that because I want you to understand the opportunity that's in front of you and why it's so important that you take this training seriously."

60.     Starting around Step 6, Defendants begin pitching the Silver and Gold memberships. Defendants present the MOBE memberships as the "million dollar business model" that consumers should choose in order to make money online without creating any products or expending any effort to make sales. For example, Defendants promise that when consumers purchase the Silver membership, they will receive the "ultimate business model for creating your first $100,000 in commissions online," access to MOBE's "proven

marketing systems," and their "own multi-million-dollar sales team without having to come out of pocket."  Defendants claim that their business model is "even more lucrative, and far less expensive, than the proven franchise model."  Below is a screenshot of the Step 6 video page:



Figure 3: Screenshot from 21stepbusiness.com/members/step/step-6 video

61.     After consumers purchase the Silver membership for $2,497, Defendants lead them through the subsequent "steps," or videos, designed to promote and sell the higher-level, more expensive, membership packages.

62.     If consumers decline to purchase the Silver membership package, Defendants' coaches typically drop them from the program and refuse to grant consumers access to additional videos.

63.     Starting around Step 15, Defendants entice consumers by promising higher returns with the Titanium, Platinum, and Diamond memberships.  For example, in the Step 15 video, titled "Residual Income Streams and Passive High-Ticket Commissions:  How the

MOBE Compensation Plan Works," Defendants purport to show consumers how they will make "more income than most make in a month." Defendants emphasize that by spending more money and upgrading their memberships—or in Defendants' words, becoming "fully certified"—consumers will make money in the form of higher payouts or commissions per sale. As Matt Lloyd claims in this video, "some people who haven't understood how [the MOBE compensation plan] works have missed out on some very big commissions" and "if you don't get fully certified … you could end up leaving a lot of money on the table."

### C. Defendants' Advertising of the 21-Step System

64.     Defendants operate a website (mobeaffiliatesupport.com) where they provide banner ads, email templates, and other materials that MOBE members are encouraged to use to market the MOBE program to third parties.

65.     For example, Defendants frequently create and provide e-mail templates and instruct MOBE members to "Just copy this message and share it with your email list to get more sales of this program." In one e-mail template sent to MOBE members for wider dissemination, Defendants describe MOBE as a "Turnkey Business System" and claim to show "How This Australian Sheep Farmer Made $150 Million In Six Years."

66.     Defendants also frequently re-brand and promote their same 21-Step System under other names for which they have registered websites, applied for trademark registrations, and developed and provided marketing materials for MOBE members to use.

67.     For example, Defendants created and promoted the "Internet Funnel System," which is simply a re-branded version of Defendants' 21-Step System aiming to market and sell MOBE memberships, and claiming that even individuals with severe physical or mental

- 23 -

disabilities are guaranteed to make money through Defendants' system.  Defendants

registered the website internetfunnelsystem.com and created banner ads that claim that the

Internet Funnel System will reveal how a "poisoned, brain-damaged man … RAKES IN A 6-

FIGURE INCOME FROM HOME AND HOW YOU CAN TOO, GUARANTEED":



Figure 4:  Online advertisement for Internet Funnel System available at mobeaffiliatesupport.com

68.     Defendants created and promoted the "Patriot Funnel System," which is also

nothing more than a re-branded version of the MOBE program that targets service members

and veterans.  Defendants launched the website patriotfunnelsystem.com and created ad

copies, such as the following, that claim the Patriot Funnel System will reveal "the shocking

$97,337 secret a war vet uncovered from his sweat-box room in Afghanistan":



Figure 5:  Banner ad for Patriot Funnel System available at mobeaffiliatesupport.com

69.     Defendants created and promoted a system called the "Ultimate Retirement Breakthrough," which is yet another re-branded version of the MOBE 21-Step System that markets MOBE memberships to older adults and retirees.  Defendants launched the www.ultimateretirementbreakthrough.com and created banner ads, such as the following, that claim that the program provides a "Surefire Way to Create a Six-Figure Retirement Income in Less Than 12 Months":



Figure 6:  Banner ad for Ultimate Retirement Breakthrough available at mobeaffiliatesupport.com

70.     In addition to the foregoing, Defendants have launched other websites and created banner ads touting the "surefire" substantial income consumers will earn through the MOBE program, including the "7 Figure Freedom Formula" (7figurefreedomformula.com), "Top Tier Side Income" (toptiersideincome.com), "17 Minutes Only" (17minutesonly.com), "Ultimate Dot Com Lifestyle" (ultimatedotcomlifestyle.com), "45 Minute Paydays" (45minutepaydays.com), "Digital Millionaire System" (digitalmillionairesystem.com), and others.  Like the banner ads, these websites and advertisements lead consumers to the 21-step videos that Defendants use to sell MOBE memberships.

**D. Defendants' Live Events**

71.     Since at least 2015, Defendants also have promoted their program and tried to sell the MOBE memberships through live events held in the United States and abroad.

72.     During these live events—as in their online advertisements—Defendants claim that consumers will make substantial amounts of money by joining their 21-step program, buying the MOBE memberships, and attending other business training seminars that Defendants offer.

73.     Defendants host a series of live events or seminars called, among other things, the "IM Freedom Workshop," the "Home Business Summit," the "Supercharge Summit," and the "Mastermind."

74.     The IM Freedom Workshops are free and open to the public and typically are held once each month.  Defendants hold the IM Freedom Workshops in different U.S. cities each month.

75.     During IM Freedom Workshops, Defendants promise to show attendees "how to create a full-time income in your spare time" and "how to gain financial freedom through the power of this System … even if you have NO computer skills and have NEVER made a single sale online before."  Defendants claim that attendees will learn how to "make BIG commissions of $1,250 … $3,300 … and $5,500 just for bringing in leads," as illustrated below in the promotion for the January 2018 IM Freedom Workshop held in Orlando:



Figure 7:  Excerpt of promotion for IM Freedom Workshop at imfreedomworkshop.com_orlando_january2018

76.     The free workshops typically are held in a conference room or meeting room at a hotel.  When consumers show up to the free workshops, Defendants deliver a presentation that focuses on the amount of money consumers can make by joining MOBE.

77.     For example, MOBE's Director of Event Sales, Russ Whitney, delivered the following statements to consumers attending the IM Freedom Workshop held in Arlington, Virginia on April 11, 2017:

> …I'm going to teach how to live a life of financial freedom,
> a life of adventure and a life of achievement.  Today I'm going
> to show you how proven internet marketing strategies and
> techniques that you can start implementing right away where you
> can generate a guaranteed $5,000, $10,000, $20,000 or more cash
> in your pocket each and every single month following our proven
> system, techniques and strategies….

78.     During and after the IM Freedom Workshop, Defendants repeatedly urge the attendees to pay $497 to register for the upcoming three-day long Home Business Summit.

Defendants typically hold the Home Business Summit in the same venue one or two weeks after the IM Freedom Workshop takes place.

79.     Consumers who pay $497 and attend the Home Business Summit are subjected to three days of Defendants' high-pressure sales pitches designed to convince them to pay thousands of dollars to purchase MOBE membership packages.

80.     In addition to the IM Freedom Workshop and Home Business Summit, Defendants periodically host other live events where they try to sell higher-level memberships and additional products or services to existing MOBE members.

81.     For example, several times each year, Defendants host multi-day seminars called Supercharge Summits.  In past years, Defendants held these seminars in Las Vegas, Orlando, and Los Angeles.

82.     Supercharge Summits are open to MOBE members who have purchased the Silver or Gold memberships.  At Supercharge Summits, Defendants try to convince attendees to purchase more expensive memberships levels by touting the greater commissions that consumers will supposedly make, as well as the income that consumers will supposedly lose out on if they do not promptly upgrade their memberships.  Defendants typically charge $497 to $797 to register for a Supercharge Summit.

83.     Defendants also offer multi-day seminars or conferences called "Masterminds" that are held at various resort locations outside the United States.

84.     Defendants claim that Masterminds are exclusive to Titanium, Platinum or Diamond members and provide opportunities to network with and learn from other MOBE members or "entrepreneurs" that have achieved success with the MOBE program.  Much like

the Supercharge Summits, Defendants try to convince Mastermind event attendees to purchase more expensive memberships by emphasizing the greater commissions consumers can earn at the higher membership levels.  In addition, at Titanium or Platinum Mastermind events, Defendants often claim they will build a "million dollar sales funnel" with the consumer at the next Diamond Mastermind event for those consumers who immediately upgrade their membership to the Diamond level.

85.     Like everything else in Defendants' program, Supercharge Summits and Masterminds are additional platforms for Defendants to market and sell higher-level memberships and other offerings.

86.     In fact, the deceptive upsells do not end at the Diamond membership level. Defendants have created additional products for Diamond members who have already spent tens of thousands of dollars on the MOBE program, including one-on-one mentorship sessions with Matt Lloyd or a high-level MOBE mentor that often cost $30,000 or more.  In marketing materials for these "exclusive" mentorship sessions, Defendants claim that a MOBE mentor will work 1-on-1 with purchasers to help them create their own "custom sales funnel."  Defendants claim that "[i]f used correctly, your product and sales funnel could easily bring in $1 million (or more) per year for your online business."

### E. Defendants' Admissions Regarding Earnings Potential

87.     As shown above, Defendants make numerous representations about the large

sums of money that consumers will make by joining their program, buying their

memberships, and using their "proven" system.  In reality, most consumers who join

Defendants' program fail to make the substantial income that was promised.

88.     Buried in fine print in the middle of an income "disclosure statement" that

was previously accessible via inconspicuous web-links on the mobe.com website, Defendants

stated that the "average Consultant, which includes both active and inactive members,"

generates less than $250 per year":

MOBE pays commissions in accordance with our compensation plan, located HERE. The MOBE Compensation Plan is an exciting opportunity that rewards you for selling Small Business Training Resources to customers. You can also benefit by sponsoring other participants who can do the same. Although the opportunity is unlimited, individual results will vary depending on the commitment levels and sales and marketing skills of each participant. This page contains detailed income statistics. The average Active MOBE Consultant generates less than $700 per year in commissions. The average Consultant, which includes both active and inactive, generates less than $250 per year, although it should be noted that the majority of inactive affiliates do not place ads to consistently promote programs for longer than 1 month. The "average" Consultant also does not finish the 21 Step training program, and fails to even attend the weekly training webinars.The average Consultant does not appear to take it seriously and does next to nothing to promote the commissionable programs. Do not become an average Consultant. Make sure you do not turn into a statistic, by completing all of the training steps, as well as attending all of the weekly training calls.

Figure 8:  Excerpt of MOBE's "Income Disclosure Statement" available at mobe.com/income-disclosure/?aff_id=1760 (as of June 15, 2017) (highlights added).

89.     In Defendants' currently available income disclosure statement—which is still

only accessible via inconspicuous web-links on the mobe.com website—Defendants have

removed the disclosure that the average consultant generates less than $250 per year in

commissions.  However, this income disclosure statement also states in fine print that the

"average Active MOBE Consultant generates less than $700 per year in commissions."

90.     The $700 per year figure in Defendants' current income disclosure statement

overstates the income of the average consumer because it only counts the earnings of

"active" consultants—*i.e.*, those who are actively paying a $19.95 monthly "affiliate

subscription fee" to continue in the program.   The $700 per year figure excludes consumers

who purchased MOBE memberships but are not paying the monthly affiliate subscription fee

(*i.e.*, inactive consultants).  The $700 per year figure also excludes consumers who purchased

the 21-Step System but did not complete all 21 steps, a result that the income disclosure

statement acknowledges is typical for an average consumer.

### F.  Defendants' Money-Back Guarantees and Refund Practices

91.    On their websites and through their "coaches," Defendants make

unconditional claims that purchases in the MOBE program are refundable and that

consumers can get their money back if not satisfied with the program.

92.    For example, Defendants make prominent claims on the registration page for

the 21-step training program, next to the payment and billing information, that the program is

"100% risk free" and that "We Guarantee You'll Be Satisfied With Your Course and

Coaching In 30 Days, Or We'll Happily Give You Your Money Back":



Figure 9:  Excerpt of registration page for 21-Step System at mttbsystem.com/21steps/order.php

93.     In addition, during "coaching" sessions, Defendants' sales agents have also made unqualified risk-free or money-back guarantees in an effort to convince consumers to try out and purchase the MOBE memberships.

94.     Contrary to these pre-purchase representations, in numerous instances, Defendants do not provide refunds to purchasers who request them or only do so after purchasers make multiple requests or threaten to complain to law enforcement, their credit card companies, or the Better Business Bureau.

95.     When denying refunds or contesting chargebacks consumers file with their credit card issuer, Defendants often invoke language buried on their website or contained in agreements that consumers are asked to sign after purchase of their MOBE memberships. These provisions seek to impose onerous conditions that purchasers must meet to obtain a refund or purport to prohibit refunds altogether.

96.     For example, in a 2015 version of Defendants' membership agreement that Defendants provided to purchasers after purchase, Defendants required purchasers to "provide proof that they've implemented at least three of the proven traffic strategies ... consistently for each of the 12 months and [haven't] made a sale. Without this proof, the affiliate is not eligible for refund." Defendants have invoked this onerous condition in numerous instances as a basis to deny refunds or dispute chargeback requests filed by consumers with their credit card issuers.

97.     Recent versions of Defendants' membership agreements, which Defendants ask consumers to sign after purchase, claim that the purchases are nonrefundable or final.

Defendants have invoked this language from their post-purchase agreements to deny refunds and contest chargeback requests.

98.     Buried in the "terms and conditions" section of Defendants' website, www.mobe.com, Defendants claim in fine print that all sales are final and non-refundable "once three business days has passed from the time of the Mastermind event purchase" and that "[a]ttendance at any live event also preempts any refund period":

**REFUNDS**

MOBE offers a thirty-day, money back guarantee on certain products. You should review the product or service agreements for your purchase to determine what refunds are offered, if any. Mastermind event purchases are non-refundable, and once three business days has passed from the time of the Mastermind event purchase all sales are final. Attendance at any live event also preempts any refund period, so once you have entered a live event all sales are final. All subscription fees are nonrefundable as the benefits of the service are realized immediately upon payment. MOBE complies with all local laws and regulations so refunds may be offered for longer periods where necessary.

Figure 10:  Excerpt of MOBE's terms and conditions website at www.mobe.com/terms-and-conditions (as of February 2, 2018)

Defendants have invoked these terms and conditions to refuse refunds or contest chargeback requests made by consumers who did not request a refund within three business days.

## VIOLATIONS OF THE FTC ACT

99.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

100.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I
### Misrepresentations Regarding Earnings

101.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of their products or memberships, Defendants have represented, directly or indirectly, expressly or by implication, that purchasers of their products or memberships would earn or were likely to earn substantial income.

102.    Defendants' representations set forth in Paragraph 101 of this Complaint are false, misleading, or were not substantiated at the time the representations were made.

103.    Therefore, Defendants' representations set forth in Paragraph 101 of this Complaint constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II
### Misrepresentations Regarding Refunds

104.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of their products or memberships, Defendants have represented, directly or indirectly, expressly or by implication, that purchases of their products or memberships are refundable without conditions, including claims that purchases of Defendants' products and memberships are "100% risk free," "100% satisfaction guaranteed," or come with a "30 Day Money Back Guarantee."

105.    In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 104 of this Complaint, Defendants have refused to issue refunds or imposed inconspicuous post-purchase conditions that purchasers must satisfy to receive refunds.

106.    Therefore, Defendants' representations set forth in Paragraph 104 of this Complaint are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

107.    Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

108.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Court's own equitable powers, requests that the Court:

A.    Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to

preserve the possibility of effective final relief, including but not limited to, temporary and

preliminary injunctions, an order freezing assets, and the appointment of a receiver;

B.      Enter a permanent injunction to prevent future violations of the FTC Act by

Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers

resulting from Defendants' violations of the FTC Act, including but not limited to, rescission

or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of

ill-gotten monies; and

D.      Award Plaintiff the costs of bringing this action, as well as such other and

additional relief as the Court may determine to be just and proper.

<div style="margin-left:40%">

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

</div>

Dated:  June 4, 2018

<div style="margin-left:40%">

  /s/ Sung W. Kim
Sung W. Kim (Trial Counsel)
Bikram Bandy  (Trial Counsel)
Benjamin R. Davidson  (Trial Counsel)
Federal Trade Commission
600 Pennsylvania Ave., NW, Mailstop CC-8528
Washington, DC 20580
Kim:  (202) 326-2211; skim6@ftc.gov
Bandy:  (202) 326-2978; bbandy@ftc.gov
Davidson:  (202) 326-3055; bdavidson@ftc.gov
Fax:  (202) 326-3395

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

</div>