DocuSign Envelope ID: 2A9CD406-54A3-4920-8A9B-E77865268C2C

**First Data**
First Data Global Leasing
4000 Coral Ridge Drive
Coral Springs, FL 33065
1-(877) 257-2094

# EQUIPMENT LEASE AGREEMENT

| Merchant ID | Sales Rep. Name | Sales ID |
|---|---|---|
|  | Maile Silva | BR8C |

## MERCHANT INFORMATION

| Corporate Business Name | DBA Name |
|---|---|
| MOBEPROCESSINGCOM INC | MOBE |

| Business Address | City | County | State | Zip Code | Business Phone Number |
|---|---|---|---|---|---|
| 8207 GOLF RIDGE DR | CHARLOTTE | USA | NC | 28277 |  |

☐ Corporation ☐ Partnership ☐ Proprietorship ☐ Non-Profit

| Business Type | Tax ID# | Years in Business |
|---|---|---|
| 8207 GOLF RIDGE DR | | 2 |

| Billing Address (if different than above) | City | State | Zip Code |
|---|---|---|---|
| BANK OF AMERICA NA | CHARLOTTE | NC | 28277 |

| Bank Name | Routing Number | Account Number | (Provide copy of Void Check) |
|---|---|---|---|
|  | XXXXXX196 | XXXXXXXXX505 |  |

## DESCRIPTION OF LEASED EQUIPMENT

| Equipment Type | Quantity | Unit price w/o tax | Equipment Type | Quantity | Unit price w/o tax |
|---|---|---|---|---|---|
| CLOVER MOBILE 3G WIFI | 6 | $48.93 | | | $ |
| | | $ | | | $ |
| | | $ | | | $ |
| | | $ | | | $ |
| | | $ | | | $ |

**Payable at Lease Signing (amounts without tax)**

☐ Advance Payments $ _____
☐ Security Deposit $ _____
☐ _____ $ _____
TOTAL $293.58

**Additional Monthly Charges:**
☐ Term. Maintenance Fees: $ _____
☐ _____ $ _____

**Annual Tax Handling Fee:**
☒ AL, AR, CA, CT, GA, IN, KY, LA, MS, MO, NE, NV, NM, NC, OK, OR, RI, SC, TN, TX, VT, VA, WA, WV, WI, WY $ 30.20
☐ All other states $ 10.20

## SCHEDULE OF PAYMENTS

Lease Term: 36 (in months)
Total Monthly Lease Charge: (total unit price without tax) $ 293.58
Total Cost to Lease: (without tax) $ 10,568.88

**Option to purchase:** If you wish to buyout the equipment please contact 1-877-257-2094 to obtain the cost.

Approx. Date of First ACH Payment: _____ Approx. Amount of First ACH Payment: $ .00

This Equipment Lease Agreement ("Agreement") is being entered into by and between First Data Merchant Services LLC and the Lessee identified in the signature panel of this Agreement. In this Agreement, the words "we," "our" and "us" refer to First Data Merchant Services LLC and its successors and assigns and the words "you" and "your" refer to Lessee and its permitted successors and assigns. This Equipment Lease Agreement may be a factor in the pricing you are receiving for processing services provided by us.

1. **Effective Date, Term and Interim Rent.**

a) This Agreement becomes effective on the date we deliver any piece of Equipment to you (the "Delivery Date"). This Agreement remains in effect until all of your obligations and all of our obligations under it have been satisfied. We will deliver the Equipment to the site designated by you.

b) **Term:** The term of this Agreement begins on a date designated by us after receipt of all required documentation and acceptance by us represented by our delivery of Equipment to you (the "Commencement Date"), and continues for the number of months indicated above in the Lease Term. YOU AGREE THIS AGREEMENT IS A NON-CANCELLABLE COMMITMENT BY YOU TO LEASE THE EQUIPMENT IDENTIFIED HEREIN FOR THE ENTIRE LEASE TERM INDICATED ABOVE. You agree to pay all amounts due during the Lease Term and confirm upon execution the Lease Term is specifically defined as written above.

c) You agree to pay an Interim Lease Payment in the amount of one-thirtieth (1/30th) of the monthly lease charge for each day from and including the Delivery Date until the date preceding the Commencement Date.

2. **Authorization.** Lessee hereby authorizes us or our designees, successors or assigns (hereinafter "Lessor") to withdraw any amounts including any and all sales taxes now due or hereinafter imposed, owed by Lessee in conjunction with this Agreement by initiating debit entries to Lessee's account at the bank named above (hereinafter "Bank"), or such other bank as the Lessee may from time to time use. In the event of default of Lessee's obligation hereunder, Lessee authorizes debit of its account for the full amount due under this Agreement. Further, Lessee authorizes Bank to accept and to charge any debit entries initiated by Lessor to Lessee's account. In the event that Lessor withdraws funds erroneously from Lessee's account, Lessee authorizes Lessor to credit Lessee's account for an amount not to exceed the original amount of the debit. This authorization is to remain in full force and effect until Lessor and Bank have received written notice from Lessee of its termination in such time and in such manner as to afford Lessor and Bank a reasonable opportunity to act.

3. **Default; Remedies.**

a) If any debit of your bank account initiated by us is rejected when due, or if you otherwise fail to pay us any amounts due hereunder when due, or if you default in any material respect in the performance or observance of any obligation or provision of this Agreement or any agreement with any of our affiliates, alliances or joint ventures, any such event shall be a default hereunder. Without limiting the foregoing, any default by you under a Merchant Processing Agreement ("MPA") with us or with an alliance or joint venture to which we are a party may be treated as a default under this Agreement. Such a default would include a default resulting from early termination of the MPA, if applicable. For fees that may be applicable upon payment default, please see paragraph 10.

b) Upon the occurrence of any default, we may at our option, effective immediately without notice, either (i) terminate this Agreement and our future obligations under this Agreement, repossess the Equipment and proceed in any lawful manner against you for collection of all charges that have accrued and are due and payable, or (ii) accelerate the remaining payments due, which shall be calculated as 95% of the product of (1) your monthly payment and (2) the number of months then outstanding on the Lease Term. If Equipment has not been returned this accelerated amount shall include the then fair market value of the Equipment (as determined in good faith by us). This acceleration of payments is not a penalty but liquidated damages for our loss of the bargain. Upon any such termination for default, we may proceed in any lawful manner to obtain satisfaction of the amounts owed to us and, if applicable, our recovery of the Equipment, including entering onto your premises to recover the Equipment. In addition, you shall also be responsible for our costs of collection, court costs and reasonable attorneys' fees, as well as applicable shipping, repair and refurbishing costs of recovered Equipment. You agree that we shall be entitled to recover any amounts due to us under this Agreement by charging your bank account or any other funds of yours that come into our possession or control, or within the possession or control of our affiliates, alliances or joint ventures, or by setting off amounts that you owe to us against any amounts we may owe to you, without notifying you prior to doing so. Without limiting the foregoing, you agree that we are entitled to recover amounts owed to us under this Agreement by obtaining directly from an alliance or joint venture

## LEASE ACCEPTANCE

Undersigned agrees to all terms and conditions contained in this Equipment Lease Agreement. Lessee authorizes First Data Merchant Services LLC or its agents, to request and obtain from a consumer reporting agency personal and business consumer reports. Each of the undersigned authorizes us to obtain subsequent consumer reports in connection with the maintenance, updating, renewal or extension of the Agreement. Each of the undersigned furthermore agrees that all references, including banks and consumer reporting agencies, may release any and all personal and business credit financial information to us. **THIS LEASE IS A NON-CANCELLABLE COMMITMENT BY YOU FOR THE FULL LEASE TERM INDICATED HEREIN.** By executing the below, Lessee confirms that the Lease Term is filled in above. Any attempt by you to terminate this commitment prior to the end of the Lease Term, entitles First Data Merchant Services LLC to all rights and remedies set forth in paragraph 3 including acceleration of the remaining payments due, which shall be calculated as 95% of the product of (1) your monthly payment and (2) the number of months then outstanding on the Lease Term.

| X _SUSAN ZANGHI_ | Secretary | SUSAN ZANGHI | 7/26/2016 |
|---|---|---|---|
| Lessee Signature | Title | Print Name | Date |

42FD0333    ADDITIONAL TERMS ON PAGE 2.    BRBLease(SNAP)1905

**CONFIDENTIAL**

**PX 38**

FTC-MOBE-002852

DocuSign Envelope ID: 2A9CD406-54A3-4920-8A9B-E77865268C2C

to which we are a party and with which you have entered into a MPA any funds held or available as security for payment under the terms of the MPA, including funds available under the "Reserve Account; Security Interest" section of the MPA, if applicable.

4. Return or Purchase of Equipment at End of Lease Period. Upon the completion of your Lease Term the Agreement shall continue on a month-to-month basis. There is no obligation to continue the lease after the Lease Term ends. At the end of your Lease Term, you will have the option to: (a) return the Equipment to us; (b) purchase the Equipment from us for the lesser of fair market value at the time (as determined in good faith by us), or an amount equal to ten-percent (10%) of the total lease payments under this Lease Agreement with respect to each item of Equipment; or (c) as noted, rent the Equipment on a month-to-month basis at the existing monthly lease payment. In the absence of an affirmative election by you to return or purchase the Equipment, (c) will apply and this Agreement will continue on a month-to-month basis at the existing monthly lease payment. After the end of the Lease Term, if you do not want to continue to rent the Equipment on a month-to-month basis, then you will be obligated to provide Lessor with notice of that choice prior to the end of the Lease Term and advise whether you will return the Equipment to Lessor or purchase the Equipment, which price Lessor shall provide to you upon receipt of the notification. If you fail to provide such notice at least 30 days prior to the end of the Lease Term, you acknowledge that Lessor may not have time to suspend billing due for the next month's lease charge. If we terminate this Agreement pursuant to paragraph 3 due to a default by you, then you shall immediately return the Equipment to us at the address set forth in paragraph 11 no later than the tenth Business Day after termination, or remit to us the fair market value of the Equipment which amount we shall provide after good faith determination. We may collect any amounts due to us under this paragraph 4 by debiting your Settlement Account, and to the extent we are unable to obtain full satisfaction in this manner, you agree to pay the amounts owed to us promptly upon our request.

5. Limitation on Liability. We are not liable for any loss, damage or expense of any kind or nature caused directly or indirectly by the Equipment, including any damage or injury to persons or property caused by the Equipment. We are not liable for the use or maintenance of the Equipment, its failure to operate, any repairs or service to it, or by any interruption of service or loss of use of the Equipment or resulting loss of business. Our liability arising out of or in any way connected with this Agreement shall not exceed the aggregate lease amount paid to us for the particular Equipment involved. In no event shall we be liable for any indirect, incidental, special or consequential damages. The remedies available to you under this Agreement are your sole and exclusive remedies.

6. Governing Law; Dispute Resolution; Miscellaneous. This Agreement shall be governed by and will be construed in accordance with the laws of the State of New York (without applying its conflicts of laws principles). We have substantial facilities in the State of New York and many of the services provided under this Agreement are provided from these facilities. The exclusive venue for any actions or claims arising under or related to this Agreement shall be the appropriate state or federal court located in Suffolk County New York. If any part of this Agreement is not enforceable, the remaining provisions will remain valid and enforceable.

7. Equipment and Software.
a) We agree to lease to you and you agree to lease from us the equipment identified on the first page of this Agreement or such other comparable equipment we provide you (the "Equipment"), according to the terms and conditions of this Agreement. We are providing the Equipment to you "as is" and make no representations or warranties of any kind as to the suitability of the Equipment for any particular purpose.
b) YOU ACKNOWLEDGE THAT THE EQUIPMENT YOU LEASE UNDER THIS LEASE AGREEMENT MAY NOT BE COMPATIBLE WITH ANOTHER PROCESSOR'S SYSTEMS AND THAT WE DO NOT HAVE ANY OBLIGATION TO MAKE SUCH EQUIPMENT COMPATIBLE IN THE EVENT THAT YOU ELECT TO USE ANOTHER SERVICE PROVIDER. UPON TERMINATION OF YOUR MERCHANT PROCESSING AGREEMENT, YOU ACKNOWLEDGE THAT YOU MAY NOT BE ABLE TO USE THE EQUIPMENT LEASED UNDER THIS LEASE AGREEMENT WITH SAID SERVICE PROVIDER.

8. Warranties
a) All warranties express or implied, made to you or any other person are hereby disclaimed including without limitation, any warranties regarding quality, suitability, merchantability, fitness for a particular use, quiet enjoyment, or infringement.
b) You warrant that you will only use the Equipment for commercial purposes and will not use the Equipment for any household or personal purposes.
c) Leased Equipment is warranted against material defects for the life of the lease. This warranty does not include damage to the Equipment resulting from accident or misuse or any other breach of the Agreement. If the Equipment should become defective within the warranty period, Banc of America Merchant Services, LLC will replace it free of charge (except that appropriate shipping charges may apply).

9. Lease Guaranty. No guarantor shall have any right of subrogation to any of our rights in the Equipment or this Lease or against you, and any such right of subrogation is hereby waived and released. All indebtedness that exists now or arises after the execution of this Agreement between you and any guarantor is hereby subordinated to all of your present and future obligations, and those of your guarantor, to us, and no payment shall be made or accepted on such indebtedness due to you from a guarantor until the obligations due to us are paid and satisfied in full.

10. Payment of Amounts Due, Administrative and Collection Fees.
a)

| SCHEDULE OF FEES | | | |
|---|---|---|---|
| Default Fees | Amount | Administrative Fees | Amount |
| NSF Fee | $10 | Upgrade Fee | $50 |
| Collection Fee | $25 | Assumption Fee | $150 |
| Late Fee | $10 | Lease Copy Fee | $7 |
| Collection Invoicing Fee | $7 | | |

b) The monthly lease charge is due and payable on the same day of each successive month thereafter of the Lease Term for each piece of lease Equipment. You agree to pay all assessed costs for delivery and installation of Equipment.
c) In addition to the monthly lease charge, you shall pay, or reimburse us for, amounts equal to any taxes or assessments on or arising out of this Agreement or the Equipment, and related supplies or any services, use or activities hereunder, including without limitation, state and local sales, use, property, privilege and excise taxes, exclusive, however, of taxes based on our net income. Reimbursement of property tax calculation is based on an average tax rate.
d) Your lease payments will be due despite dissatisfaction for any reason with the Equipment or related processing services.
e) Whenever any payment is not made by you in full when due, you shall pay us a late fee of $10.00 for each month during which it remains unpaid but in no event more than the maximum permitted by law. You shall also pay to us a NSF fee of $10.00 for any debit we attempt to make against your bank account that is for any reason rejected, but in no event more than the maximum amount permitted by law.
f) In the event your account is placed into collections for past due lease amounts, you agree that we can recover a collection expense fee of $25 for each aggregate payment requiring a collection effort, but in no event more than the maximum amount permitted by law.

11. Use and Return of Equipment; Insurance.
a) You shall cause the Equipment to be operated by competent and qualified personnel in accordance with any operating instructions furnished by us or the manufacturer. You shall maintain the Equipment in good operating condition and protect it from deterioration, normal wear and tear excepted.
b) You shall not permit any physical alteration or modification of the Equipment, or change the installation site of the Equipment, without our prior written consent.
c) You shall not create, incur, assume or allow any consensually or judicially imposed liens or encumbrances on, or part with possession of, or sublease the Equipment without our prior written consent.
d) You shall comply with all governmental laws, rules and regulations relating to the use of the Equipment. You are also responsible for obtaining all permits required to operate the Equipment at your facility.
e) We or our representatives may, at any time, enter your premises for purposes of inspecting, examining or repairing the Equipment.
f) The Equipment shall remain our personal property and shall not under any circumstances be considered to be a fixture affixed to your real estate. You shall permit us to affix suitable labels or stencils to the Equipment evidencing our ownership.
g) You agree that all Equipment returns shall be to TASQ Technology, 1169 Canton Road, Marietta, GA., 30066, be done in a manner that can be tracked, and shall have Lease number referenced on the return packaging. You understand and agree that your failure to return the Equipment in the manner noted above will delay our receipt of the return and possibly result in you being charged the then fair market value of the Equipment, or $100 should the Equipment be received with excessive wear and tear.
h) You shall keep the Equipment adequately insured against loss by fire, theft, and all other hazards.
i) You shall provide proof of insurance as evidenced by a certificate naming First Data Merchant Services LLC as a loss payee under your insurance policy. The loss, destruction, theft or damage of or to the Equipment shall not relieve you from your obligation to pay the full purchase price or total monthly lease charges hereunder.

12. Site Preparation. You will prepare the installation site(s) for the Equipment, including but not limited to the power supply circuits and phone lines, in conformance with the manufacturer's and our specifications and will make the site(s) available to us by the confirmed shipping date.

13. Title to Equipment. We at all times retain title to the Equipment unless we agree otherwise in writing. You agree to execute and deliver to us any statement or instrument that we may request to confirm or evidence our ownership of the Equipment, and you irrevocably appoint us as your attorney-in-fact to execute and file the same in your name and on your behalf. If a court determines that the leasing transaction contemplated by this Agreement does not constitute a financing and is not a lease of the Equipment, then we shall be deemed to have a first lien security interest on the Equipment as of the date of this Agreement, and you will execute such documentation as we may request to evidence such security interest.

14. Software License. We retain all ownership and copyright interest in and to all computer software, related documentation, technology, know-how and processes embodied in or provided in connection with the Equipment other than those owned or licensed by the manufacturer of the Equipment (collectively "Software"). Any rights to use the Software other than those owned or licensed by the manufacturer of the Equipment are described in this Lease Agreement. You shall have only a nonexclusive license to use the Software owned or licensed by the manufacturer of the Equipment in your operation of of the Equipment.

15. Indemnification. You shall indemnify and hold us harmless from and against any and all losses, liabilities, damages and expenses, (including attorneys' fees) resulting from (a) the operation, use, condition, liens against, or return of the Equipment or (b) any breach by you of any of your obligations hereunder, except to the extent any losses, liabilities, damages or expenses result from our gross negligence or willful misconduct.

16. Assignment. You may not assign or transfer this Agreement, by operation of law or otherwise, without our prior written consent. For purposes of this Agreement, any transfer of voting control of you or your parent shall be considered an assignment or transfer hereof. We may assign or transfer this Agreement and our rights and obligations hereunder, in whole or in part, to any third party without the necessity of obtaining your consent.

17. Notices. All notices must be in writing, if to you at your address appearing on the cover page of this Agreement and if to us at 4000 Coral Ridge Drive, Coral Springs, Florida, 33065. Attn: Lease Department, and shall be deemed to have been given (i) if sent by mail or courier, upon the earlier of five (5) days after mailing or when actually received or, in the case of courier, when delivered, and (ii) if sent by facsimile machine, when the courier confirmation copy is actually received. Notice given in any other manner shall be effective when actually received, if to you at the address appearing on the cover page of this Agreement or by any electronic means, including but not limited to the email address you have provided on the cover page of the Agreement. Notices sent to the Merchant's last known address, as indicated in our records, shall constitute effective notice to the Merchant under this Agreement. Customer Service toll free number 1-877-257-2094.

18. Entire Agreement. This Agreement constitutes the entire agreement between the parties with respect to its subject matter, supersedes any previous agreements and understandings and can be changed only by a written agreement signed by all parties. This Agreement may be executed in any number of counterparts and all of such counterparts taken together shall be deemed to constitute one and the same instrument. Delivery of an executed counterpart of a signature page of this Agreement by facsimile shall be effective as delivery of a manually executed counterpart of this Agreement.

## PERSONAL GUARANTY

Undersigned unconditionally guarantees performance of this Equipment Lease Agreement by Lessee and payment of all sums due hereunder in the event of default, hereby waiving any modification, amendment or extension and notice thereof, and further agrees to the terms of this Equipment Lease Agreement insofar as they apply to the undersigned as guarantor.

| X SUSAN ZANGHI | , an Individual | SUSAN ZANGHI | | | 7/26/2016 |
|---|---|---|---|---|---|
| Personal Guarantor's Signature (No Title Allowed) | | Print Name | | Home Phone Number | Date |
| 8207 GOLF RIDGE RD | CHARLOTTE | NC | 28277 | xx/xx/xx | XXXXXX191 |
| Home Address | City | State | Zip Code | DOB | Social Security # |

42FD0333

**CONFIDENTIAL**
BRBLease(SNAP)1905

**PX 38**

FTC-MOBE-002853

Clover Service Plans Addendum

This Clover Service Plans Addendum ("Service Plans Addendum") supplements and modifies the terms for the Clover Service ("Clover Terms") set forth in either the Merchant Agreement, as defined in the Merchant Processing Application and Agreement ("Merchant Processing Application"), or the Addendum to Agreement: Special Provisions Regarding Clover Service ("Clover Addendum"), as applicable, for the client legal business entity named therein ("Client", "you" or "your"). This Services Plans Addendum is agreed upon by you and Banc of America Merchant Services, LLC ("BAMS") or First Data Services, LLC ("FDS"), as applicable under the Merchant Processing Application or Clover Addendum (BAMS or FDS", as applicable, is referred to herein as "Processor", "our", "us" or "we"), and you acknowledge receipt of, and accept the terms of, this Services Plans Addendum, effective as of the date of, and by, your purchase, rental or lease of a "Clover Mobile" or "Clover Mini" (or any other Device identified by us from time to time)("Addendum Effective Date"), without separate signature by you or us. Capitalized terms used but not defined herein have the meanings set forth in the Merchant Agreement or Clover Addendum, as applicable.

As part of the Clover Terms, we and you agree as follows:

1. Service Plans. A Service Plan is a limited, full or expanded version of the Clover Service available directly from us or on the Clover supported application marketplace ("Clover App Market") for the "Clover Station", Clover Mobile and Clover Mini and any other Devices that we identify from time to time, as further described in this Service Plans Addendum. Each Service Plan available from the Clover App Market includes all of the applications listed within the service description for that Service Plan on the Clover App Market.
2. We are an Authorized Sublicensor of all Service Plans. Current Service Plans are the "Classic", "2000" and "Pro" Service Plans. The Service Plans may change from time to time and the then available Service Plans will be reflected in the Clover App Market.
   a. The Classic Service Plan is available directly from us on the Clover Station and includes the full Clover Service functionality identified in your Clover Terms. If you purchase the Classic Service Plan, we will charge your Settlement Account for the Clover Monthly Services Fee for the Classic Service Plan, as further described in the Clover Terms.
   b. The 2000 Service Plan is a limited version of the Clover Service providing all point-of-sale payment processing functionality of the Clover Service and other limited functionality. The 2000 Service Plan is available for Clover Mobile or Clover Mini or other Devices we identify from time to time, and will be accessible from such Devices upon their activation, unless you wish to upgrade to the Pro Service Plan (or such other Service Plans made available as an upgrade to the 2000 Service Plan from time to time), or have the Classic Service Plan for a Clover Station. No monthly fee is charged for the 2000 Service Plan.
   c. The Pro Service Plan is an available upgrade for the 2000 Service Plan, and includes the full Clover Service functionality identified in your Clover Terms. If you elect the Pro Service Plan, you will be charged the monthly fee indicated on the Clover App Market.
3. Devices sold or rented to you by us or leased to you by First Data Merchant Services Corporation (through its First Data Global Leasing division) require activation via the Clover App Market. If, as part of that activation process for a Device, you obtain the 2000 Service Plan or purchase the Pro Service Plan (or any other Service Plan that we may later identify) from the Clover App Market, then, as further described in the Clover End User License Agreement ("Clover EULA") and notwithstanding the Clover Terms or information on the Clover App Market that may be to the contrary, (i) we, and not Clover, will be deemed to have sold and/or licensed to you, and you will be deemed to have purchased or obtained from us, and not Clover, that Service Plan, (ii) we, and not Clover, are responsible to you for providing that Service Plan, and that Service Plan will not be a Third Party Service (under the Clover Terms); (iii) the Clover Terms (as modified by this Service Plans Addendum), and not the Clover EULA, will govern the use of all Service Plans, (iv) if a monthly fee for that Service Plan is indicated on the Clover App Market, then you will be obligated to pay us that fee as further described in the Clover Terms; provided, however, that Clover will, on our behalf, collect that fee from you and remit it to us, and your authorization for us to debit your Settlement Account for amounts due us under the Merchant Agreement or Clover Addendum, as applicable, will apply for any amounts debited from your Settlement Account by Clover for Service Plans, (v) once you have activated more than one Device on your Account, you will be required to have one Service Plan for all your Devices, and (vi) if you activate a Clover Station and any other Devices on your Account, then you will be charged by us, for the Classic Service Plan for the Clover Station, and Clover will, on our behalf, collect certain monthly fees associated with the Service Plan available through the Clover App Market for the other Devices from you and remit them to us.

Except to the extent modified hereby, the Clover Terms remain in full force and effect, and any reference to the Clover Terms after the Addendum Effective Date will mean the Clover Terms as modified by this Service Plans Addendum.

Clover Service Plans Addendum (Rev 06022015).docx    **CONFIDENTIAL**

**PX 38**

FTC-MOBE-002854

# CHARGEBACKS

**PX 38**

FTC-MOBE-002855

# DISPUTE NOTIFICATION

**MERCHANT SERVICES**
PO BOX 6603
HAGERSTOWN, MD 21741-6603
USA

09/27/2016 (mm/dd/yyyy)

MOBE
SUSAN ZANGHI
8207 GOLF RIDGE DR
CHARLOTTE NC 28277
US

**Dispute Type:** FIRST CHARGEBACK

A financial adjustment has been made to your account as a result of a dispute. If you wish to contest, your response must be received no later than: **10/11/2016** (mm/dd/yyyy)

**Issuer:** American Express
**Case Number:** 562700091701
**Adjustment Amount:** 497.00
**Reason:** C05 / Credit not processed/cancelled trans

## Original Transaction Detail Information

| Field | Value | Field | Value |
|---|---|---|---|
| Merchant Number: | 372547049885 | Credit Card Number: | ████008 |
| Card Product Type: | American Express | Transaction Amount: | 497.00 |
| Batch Date (mm/dd/yyyy): | 09/09/2016 | Transaction Date (mm/dd/yyyy): | 09/09/2016 |
| Invoice Number: |  | Alternate Amount: | 0.00 |
| Merchant Xref: | 311986410665 | Transaction Method: |  |
| Reference Number: | 48300011 | POS Entry: |  |
| Airline Ticket Number: |  | MCC: | 7399 |
| Custom Data: |  |  |  |

**DO NOT ISSUE CREDIT!** The cardholders account has been credited as a result of this chargeback. If you previously issued credit, please provide the date and amount of the credit.

When responding to this dispute, follow all instructions on the back of the form.

**Comment:** To refute this chargeback, please provide an explanation of why credit is not due and proof that your cancellation/return policy was properly disclosed and signed by the cardholder.

**Dispute Alert:** If you have received an EMV chargeback and the transaction was not processed on a chip capable device, please accept the chargeback as there is no further recourse. In order to avoid these types of disputes you MUST become EMV capable. Please contact Customer Service for additional information. *If you have an EMV capable device and feel you have received this debit in error, please refute stating such.

Questions?
Call Merchant Services at:
800-430-7161

Contact your Representative today to manage your disputes in a more efficient, timely and secure environment.

The information in this message may be proprietary and/or confidential, and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify First Data immediately by replying to this message and (deleting it from your computer).

PX 38

**CONFIDENTIAL**

FTC-MOBE-002856

# DISPUTE RESPONSE

**MERCHANT SERVICES**
PO BOX 6603
HAGERSTOWN, MD 21741-6603
USA

Responses must be received by
10/11/2016 (mm/dd/yyyy)

Date (mm/dd/yyyy): _____

**Case Number:** 562700091701
**Amount:** 497.00
**Custom Data:**

**Why are you requesting a reversal of this Dispute?**

_(If additional space is needed please continue on a separate sheet of paper)_

The Issuer requires supporting documentation included in your response be clearly identified. Please add a check next to appropriate items listed below to identify what you have included in support of your case. Ensure the case number is written in the upper right hand corner of each separate sheet supplied.

___ Copy of a Signed and/or Electronically Captured Sales Slip
___ Copy of a Signed Cancellation Policy
___ Copy of a Signed Order Form
___ Signed Proof of Delivery, including Proof of Positive AVS
___ Signed Rental Agreement
___ Copy of the Hotel/Motel Folio
___ Copy of the Recurring Billing Agreement
___ Copy of the Credit Receipt
___ Proof that the Authorized Signer was known by the Cardholder
___ Documentation Showing Additional Transactions by this Cardholder
___ T & E-Documentation showing Loyalty Transactions related to this Purchase
___ T & E-Documentation Showing Subsequent purchases made throughout the Service Period
___ Proof that the ticket was received for Passenger Transport
___ Proof the name on the Flight Manifest matches the Cardholder Name on Purchased Itinerary
___ Proof of CVV2 in Lieu of Imprint
___ Proof of Authorization
___ Proof of Verified by Visa or MasterCard Secure Code
___ Proof that a Customer Profile was Established and Validated for the Purchase of Digital Goods
___ Proof that the Cardholder has Possession of the Merchandise/Service (ie. Photographs, E-mails)
___ Other Documentation (Please describe): _____

■ **For non face-to-face transactions** (mail/telephone and internet transactions) we recommend that you provide as much information as possible to establish cardholder participation in a transaction. Non face to face transactions are made at your own risk.

■ **For face-to-face transactions,** the Network's rules require a signed and card-imprinted (if not card-swiped) transaction document to establish cardholder participation in a transaction.

**FOR FAST PROCESSING, FAX YOUR RESPONSE TO:** 800-405-1489
**OR, MAIL TO:** The address at the top of this page.

Help us save energy, money and the planet through electronification of paper correspondence. If you are interested in "going green", call the Merchant Services number provided to find out more about our web based Dispute Manager tool.

**CONFIDENTIAL**

PX 38

FTC-MOBE-002857

Merchant Name: MOBE
Merchant Number: 1311354021
Case Number: 739937
Transaction Date (mm/dd/yyyy): 09/09/2016
Dollar Amount: 497.00

The following information is being provided so that it may assist you in providing the issuing bank with your response as required by American Express regulations.

**Issuer Comments :**
1008 : LZN6478

**Association Comments:**
3G56 #SE256MOBE 00004-8114

**Additional Information:**
The Cardmember claims that the goods/services ordered were cancelled.

**PX 38**

CONFIDENTIAL
FTC-MOBE-002858

# Representment - Arbitration Form

Date: 10/08/2016 (mm/dd/yyyy)

To: American Express Disputes
Fax Number:

From: Merchant Services
FDCS Case Number: 562700091701
FDCS Merchant Name: MOBE
FDCS Merchant Number: 372547049885

Transaction Date (mm/dd/yyyy): 09/09/2016
Chargeback Reason Code: C05
Account #: ████████1008
Amount: 497.00
Original Amount: 497.00
External Merchant Number: 1311354021
Case Number: 739937
Reference Number: 48300011
Chargeback Receipt Date: 09/26/2016
Invoice Number:

Reason:

Credit Issued 092616 $497.00

**PX 38**

CONFIDENTIAL

FTC-MOBE-002859

CONFIDENTIAL

**MERCHANT SERVICES**
PO BOX 6603
HAGERSTOWN, MD 21741-6603
USA

# DISPUTE RESPONSE

Responses must be received by
10/11/2016 (mm/dd/yyyy)

Date (mm/dd/yyyy): 10/05/16

Case Number: 562700091701
Amount: 497.00
Custom Data:

**Why are you requesting a reversal of this Dispute?**
Refund requested and processed 9/23/2016
@ 10:41 am Refund ID 6BW8K9N8XBSO2

(If additional space is needed please continue on a separate sheet of paper)

The issuer requires supporting documentation included in your response be clearly identified. Please add a check next to appropriate items listed below to identify what you have included in support of your case. Ensure the case number is written in the upper right hand corner of each separate sheet supplied.

✓ Copy of a Signed and/or Electronically Captured Sales Slip
___ Copy of a Signed Cancellation Policy
___ Copy of a Signed Order Form
___ Signed Proof of Delivery, including Proof of Positive AVS
___ Signed Rental Agreement
___ Copy of the Hotel/Motel Folio
___ Copy of the Recurring Billing Agreement
___ Copy of the Credit Receipt
___ Proof that the Authorized Signer was known by the Cardholder
___ Documentation Showing Additional Transactions by this Cardholder
___ T & E-Documentation showing Loyalty Transactions related to this Purchase
___ T & E-Documentation Showing Subsequent purchases made throughout the Service Period
___ Proof that the ticket was received for Passenger Transport
___ Proof the name on the Flight Manifest matches the Cardholder Name on Purchased Itinerary
___ Proof of CVV2 in Lieu of Imprint
___ Proof of Authorization
___ Proof of Verified by Visa or MasterCard Secure Code
___ Proof that a Customer Profile was Established and Validated for the Purchase of Digital Goods
___ Proof that the Cardholder has Possession of the Merchandise/Service (ie. Photographs, E-mails)
✓ Other Documentation (Please describe): REFUND ID 6BW8K9N8X

■ **For non face-to-face transactions** (mail/telephone and internet transactions) we recommend that you provide as much information as possible to establish cardholder participation in a transaction. Non face to face transactions are made at your own risk.

■ **For face-to-face transactions**, the Network's rules require a signed and card-imprinted (if not card-swiped) transaction document to establish cardholder participation in a transaction.

**FOR FAST PROCESSING, FAX YOUR RESPONSE TO:** 800-406-1489
OR, MAIL TO: The address at the top of this page.

Help us save energy, money and the planet through electronification of paper correspondence. If you are interested in "going green", call the Merchant Services number provided to find out more about our web based Dispute Manager tool.

09/27/16 IDS000 0003249

10/06/2016 10:41 FAX 7048498106
Rcvd at 10/06/2016 10:54:21 EDT SVR: WTPVAPI429 DNIS:4029932946 CSID 7048498106 Duration (mm:ss): 1:16
Page 1/5
☑ 001/005

**PX 38**

FTC-MOBE-002860

**CONFIDENTIAL**

Payment ID - | MOBEPROCESSING.COM Inc | Transactions | www.clover.com

/2016



# Transactions

CASE# 5627000917d

Payments   Manual Refunds   Refunds

< Back to Payments

## PAYMENT DETAILS

Payment ID: 3TCXJVWNWZNE6
Created: 08-Sep-2016 9:27 pm
Tender: Credit Card
View Payment Receipt

## TOTAL

Payment Amount: $497.00
Tax Amount: $0.00

## EMPLOYEE

James Harvey
Payments by James Harvey
Edit Employee

## CARD TRANSACTION INFORMATION

Card Details: AMEX - 1008
Card Entry Method: EMV_CONTACT
Card Transaction Type: AUTH
Card Transaction State: CLOSED
MID: 372547049885
AUTH: 876173
REF: 625300000231
CVM: SIGNATURE

## ORDER

Order ID: W0QVAA0MJADBR
View Order Receipt

Tax Rates   Tax Amount: $0.00

| ID | Name | Tax Rate | Taxable Amount | Is Default |
|---|---|---|---|---|

10/06/2016 10:42 FAX 7048498106
Rcvd at 10/06/2016 10:54:21 EDT SVR: WLPVAP1429 DNIS:4029329946 CSID:7048498106 Duration(mm:ss):1:16
Page 2/5   ☒ 002/005

**PX 38**

FTC-MOBE-002861

**CONFIDENTIAL**

0/5/2016

Payment ID - 1 MOBEPROCESSING.COM Inc | Transactions | www.clover.com

## Refunds   Refund Total: $497.00

Case # 562700291701

| Created | Amount | Employee | Details | | |
|---|---|---|---|---|---|
| 23-Sep-2016 10:41 am | $497.00 | | | Susan Zanghi | Details |

MOBEPROCESSING.COM Inc Y7ZPSWJJYN63E | MID: 372547049885 | 8207 GOLF RIDGE DR, CHARLOTTE, NC, 28277, US | Phone: 7047248114

**PX 38**

**FTC-MOBE-002862**

**CONFIDENTIAL**

9/5/2016

Order #W0QVAA0MJA0BR | MOBEPROCESSING.COM Inc

# MOBEPROCESSING.COM Inc

CASE # 562700091701

Sep 08, 2016 09:26:48 PM

8207 GOLF RIDGE DR

CHARLOTTE, NC 28277

7047248114

Cashier: James H

| Items | | |
|---|---|---|
| 1 | Manual Transaction | $497.00 |

| Total | |
|---|---|
| Subtotal | $497.00 |
| Tax | $0.00 |
| Total | $497.00 |

**Payments**

| | |
|---|---|
| Date | Sep 08, 2016 09:27:40 PM |
| MID | *******9885 |
| AMERICAN EXPRESS XXXXXXXXXXXX 1008 | $497.00 |
| Transaction # | 300088 |
| AUTH | 876173 |
| REF | 625300000231 |
| Method | EMV |
| AID | A000000025010801 |
| CVM | SIGNATURE VERIFIED |
| Refunded | Sep 23, 2016 10:41:26 AM |

**Refunds**

10/06/2016 10:42 FAX 7048498106
Rcvd at 10/06/2016 10:54:21 EDT SVR:WIPVAPI429 DNIS:4029299946 CSID:7048498106 Duration(mm:ss):1:18
Page 4/5
004/005

PX 38

FTC-MOBE-002863

**CONFIDENTIAL**

10/6/2016

Order #W0QVAA0MJA0BR | MOBEPROCESSING.COM Inc

[signature]

CASE # 5627000091701

Order: W0QVAA0MJA0BR

Online: https://www.clover.com/tx/r/3TCXJVWNWZNE6



This receipt was sent on behalf of the merchant by Clover. Please contact the merchant directly for any specific questions about the receipt. Please contact support@clover.com if you received this message in error.

10/06/2016 10:42 FAX 7048498106 @005/005
Rcvd at 10/06/2016 10:54:21 EDT  SVR:W1PVAP1429  DNIS:4029329946  CSID:7048498106  Duration(mm:ss):1:16
Page 5/5

PX 38

FTC-MOBE-002864

# REVERSAL REJECTION

**MERCHANT SERVICES**
PO BOX 6603
HAGERSTOWN, MD 21741-6603
USA

> We received your request for a reversal of an adjustment made to your account. The information provided was not sufficient to represent the transaction back to the issuer for payment.

10/12/2016 (mm/dd/yyyy)

MOBE
SUSAN ZANGHI
8207 GOLF RIDGE DR
CHARLOTTE NC 28277
US

| | |
|---|---|
| Issuer: | American Express |
| Case Number: | 562700091701 |
| Work Type: | FIRST CHARGEBACK REVERSAL |
| Reason Code: | C05 / Credit not processed/cancelled trans |

### Original Transaction Detail Information

| | | | |
|---|---|---|---|
| Merchant Number: | 372547049885 | Credit Card Number: | ████1008 |
| Card Product Type: | American Express | Transaction Amount: | 497.00 |
| Batch Date (mm/dd/yyyy): | 09/09/2016 | Transaction Date(mm/dd/yyyy): | 09/09/2016 |
| Invoice Number: | | Alternate Amount: | 0.00 |
| Merchant Xref: | 311986410665 | Transaction Method: | |
| Reference Number: | 48300011 | POS Entry: | |
| Airline Ticket Number: | | MCC: | 7399 |
| Custom Data: | | | |

**COMMENTS:** This debit offsets the credit chargeback issued to your account.

**Dispute Alert:** If you have received an EMV chargeback and the transaction was not processed on a chip capable device, please accept the chargeback as there is no further recourse. In order to avoid these types of disputes you MUST become EMV capable. Please contact Customer Service for additional information. *If you have an EMV capable device and feel you have received this debit in error, please refute stating such.

Questions?
Call Merchant Services at:
800-430-7161

*Contact your Representative today to manage your disputes in a more efficient, timely and secure environment.*

The information in this message may be proprietary and/or confidential, and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify First Data immediately by replying to this message and (deleting it from your computer).

**PX 38**

CONFIDENTIAL
FTC-MOBE-002865

**MERCHANT SERVICES**
PO BOX 6603
HAGERSTOWN, MD 21741-6603
USA

# Merchant Information Request

***TIME SENSITIVE DOCUMENT***
***IMMEDIATE RESPONSE REQUIRED***

09/08/2016 (mm/dd/yyyy)

MOBE
SUSAN ZANGHI
8207 GOLF RIDGE DR
CHARLOTTE NC 28277
US

| | |
|---|---|
| A dispute has been initiated by the issuing bank (below). If you wish to contest the dispute, your response must be: **Received No Later Than 09/19/2016** (mm/dd/yyyy) Failure to respond by the requested due date with a valid remedy may result in a financial adjustment to your account. | |

Faxed to:

| | |
|---|---|
| Jurisdiction: | |
| Dispute Type: | PRE-CHARGEBACK |
| Reason: | Quality of Goods or Services |
| Case Number: | 116991431 |
| Adjustment Amount: | 497.00 |

**Original Transaction Detail Information**

| | | | |
|---|---|---|---|
| Merchant Number: | 372547049885 | Credit Card Number: | 009 |
| Transaction Date (mm/dd/yyyy): | 08/03/2016 | Reference Number: | 48800004 |
| Transaction Amount: | 497.00 | Foreign Amount: | 0.00 |
| Merchant Xref: | | Airline Ticket Number: | |
| Total Batch Amount: | | Batch Date (mm/dd/yyyy): | |
| Card Product Type: | | Transaction Method: | |
| Invoice Number: | | MCC: | 7399 |

**Case Summary**
A dispute has been initiated by American Express

**Comments:**

<u>Complete the information requested on the back side of this form. Follow all instructions.</u>

Fax your response to: 800-405-1489

Help us save energy, money and the planet through electronification of paper correspondence. If you are interested in "going green", call the Merchant Services number provided to find out more about our web based Dispute Manager tool.

PX 38

CONFIDENTIAL
FTC-MOBE-002866

Merchant Name: MOBE
Merchant Number: 1311354021
Case Number: LXT7968
Transaction Date: 08/03/2016 (mm/dd/yyyy)
Dollar Amount: 497.00

The following information is being provided so that it may assist you in providing the issuing bank with your response as required by American Express regulations.

Issuer Comments:

Association Comments:
Cm claims classes were suppose to teach internet marketing but instead he was offer to buy thing instead. Cm contacted E/Son 08/19/16. provide proof of services rendered to satisfaction, refund policy and explain. MOBE 0000 48800004

Additional Information:
Our mutual customer claims to be dissatisfied with the goods and/or services provided by your establishment. Please issue full credit or provide a detailed explanation why partial or no credit is due.

Help us save energy, money and the planet through electronification of paper correspondence. If you are interested in "going green", call the Merchant Services number provided to find out more about our web based Dispute Manager tool.

**CONFIDENTIAL**

PX 38

FTC-MOBE-002867

# DISPUTE RESPONSE

My Merchant Services

Date (mm/dd/yyyy): _____

**MERCHANT SERVICES**
PO BOX 6603
HAGERSTOWN, MD 21741-6603
USA

FAX YOUR RESPONSE TO:
800-405-1489

Responses must be received by
09/19/2016 (mm/dd/yyyy)

Case Number: 116991431
Amount: 497.00
Custom Data:

Questions?
Call 800-430-7161

I am requesting that you reverse the dispute case referenced above because:

_____
_____
_____

(If additional space is needed please continue on a separate sheet of paper)

I have attached copies of the following on separate sheets of 8 1/2 by 11 white paper. I have written the Case Number in the upper right hand corner of every sheet. (Check all that apply)

___ Signed and Imprinted Sales Slip
___ Signed proof of Delivery
___ Signed Return or Cancellation Policy
___ Signed Order Form
___ Hotel/Motel Folio
___ Documentation of additional cardholder transactions
___ Signed Rental Agreement
___ Credit receipts
___ Other Documentation (Please describe): _____

■ **For non face-to-face transactions,** (mail/telephone and internet transactions) we recommend that you provide as much information as possible to establish cardholder participation in a transaction. Non face-to-face transactions are made at your own risk.

■ **For face-to-face transactions,** the Associations' rules require a signed and card-imprinted (if not card-swiped) transaction document to establish cardholder participation in a transaction.

**FOR FAST PROCESSING, FAX YOUR RESPONSE TO:** 800-405-1489
OR, MAIL TO: The address at the top of this page.

Help us save energy, money and the planet through electronification of paper correspondence. If you are interested in "going green", call the Merchant Services number provided to find out more about our web based Dispute Manager tool.

PX 38

CONFIDENTIAL

FTC-MOBE-002868

# DISPUTE NOTIFICATION

**MERCHANT SERVICES**
PO BOX 6603
HAGERSTOWN, MD 21741-6603
USA

10/04/2016 (mm/dd/yyyy)

MOBE
SUSAN ZANGHI
8207 GOLF RIDGE DR
CHARLOTTE NC 28277
US

Dispute Type: **FIRST CHARGEBACK**

A financial adjustment has been made to your account as a result of a dispute. This transaction is <u>not eligible</u> for representment.

Issuer: American Express
Case Number: 562770065301
Adjustment Amount: 497.00
Reason: R13 / Retrieval Response Not Received

### Original Transaction Detail Information

Merchant Number: 372547049885
Card Product Type: American Express
Batch Date (mm/dd/yyyy): 08/04/2016
Invoice Number: 48800004
Merchant Xref: 48800004
Reference Number:
Airline Ticket Number:
Custom Data:

Credit Card Number: █████████1009
Transaction Amount: 497.00
Transaction Date (mm/dd/yyyy): 08/03/2016
Alternate Amount: 0.00
Transaction Method:
POS Entry:
MCC: 7399

**DO NOT ISSUE CREDIT!** The cardholders account has been credited as a result of this chargeback.

**Comment:** A response to the initial retrieval request was not received, therefore, chargeback representment rights do not exist. In the future, ensure that all retrieval request are fulfilled in a timely manner to preserve chargeback reversal rights.

**Dispute Alert:** If you have received an EMV chargeback and the transaction was not processed on a chip capable device, please accept the chargeback as there is no further recourse. In order to avoid these types of disputes you MUST become EMV capable. Please contact Customer Service for additional information. *If you have an EMV capable device and feel you have received this debit in error, please refute stating such.

Questions?
Call Merchant Services at:
800-430-7161

*Contact your Representative today to manage your disputes in a more efficient, timely and secure environment.*

The information in this message may be proprietary and/or confidential, and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify First Data immediately by replying to this message and (deleting it from your computer).

**PX 38**

**CONFIDENTIAL**

FTC-MOBE-002869

| | |
|---|---|
| Merchant Name: | MOBE |
| Merchant Number: | 1311354021 |
| Case Number: | 750097 |
| Transaction Date (mm/dd/yyyy): | 08/03/2016 |
| Dollar Amount: | 497.00 |

The following information is being provided so that it may assist you in providing the issuing bank with your response as required by American Express regulations.

**Issuer Comments :**
▮1009 : LXT7968

**Association Comments:**
MOBE 00004-8114

**Additional Information:**
We did not receive your response to our Inquiry within the specified timeframe.

PX 38

CONFIDENTIAL

FTC-MOBE-002870