THE COMPANIES ACT 2006

PRIVATE COMPANY HAVING A SHARE CAPITAL

ARTICLES OF ASSOCIATION

of

MOBE Pro Limited

1 **Defined terms**

   1.1   In these articles, unless the context requires otherwise:

**Allocation Notice** has the meaning given to that term in Article 37.12;
**appointor** has the meaning given to that term in Article 16.1;
**articles** means the company's articles of association for the time being in force;
**Articles** means the articles of association set out in this document which, together with the Model Articles (as modified or excluded by this document) forming part of the articles, and **Article** shall be construed accordingly;
**Buyer** has the meaning given to that term in Article 37.12;
**call** has the meaning given to that term in Article 25.1;
**call notice** has the meaning given to that term in Article 25.1;
**call payment date** has the meaning given to that term in Article 28.2.1;
**company's lien** has the meaning given to that term in Article 23;
**Clear Days** means (in relation to the period of a notice) that period excluding the day when the notice is given or deemed to be given and the day for which it is given or on which it is to take effect;
**Conflict** has the meaning given to that term in Article 11.2;
**conflicted director** means a director who has, or could have, a Conflict in a situation involving the company and consequently whose vote is not to be counted in any vote to authorise such Conflict and who is not to be counted as participating in the quorum for the meeting (or part of the meeting) at which such matter is to be voted upon;
**corporate representative** has the meaning given to that term in Article 54;
**Excess Securities** has the meaning given to that term in Article 21.3.2;
**Excess Shares** has the meaning given to that term in Article 37.11.1;
**holder** in relation to shares means the person whose name is entered in the register of members as the holder of the shares or, in the case of a share in respect of which a share warrant has been issued (and not cancelled), the person in possession of that warrant;
**lien enforcement notice** has the meaning given to that term in Article 24;
**Market Value** has the meaning given to that term in Article 37.4.1;
**Model Articles** means the model articles for private companies limited by shares contained in Schedule 1 of the Companies (Model Articles) Regulations 2008 (SI 2009/3229) as amended prior to the date of adoption of these articles;
**non-conflicted director** means any director who is not a conflicted director;
**Offer Notice** has the meaning given to that term in Article 37.10;
**partly-paid** in relation to a share means that part of that share's nominal value or any premium at which it was issued has not been paid to the company;
**Proposed Sale Price** has the meaning given to that term in Article 37.2.3;
**proxy notification address** has the meaning given to that term in Article 53.1;
**relevant officer** has the meaning given to that term in Articles 58.3.2 or 59.2.1, as the case may be;
**relevant loss** has the meaning given to that term in Article 59.2.2;
**relevant rate** has the meaning given to that term in Article 28.2.2;
**Sale Price** has the meaning given to that term in Article 37.4;
**Sale Shares** has the meaning given to that term in Article 37.2.1 and **Sale Share** shall be construed accordingly;
**Seller** has the meaning given to that term in Article 37.1;
**Total Transfer Condition** has the meaning given to that term in Article 37.2.5;
**transfer** or **transferring** has the meaning given to those terms respectively in Article 36.1;
**Transfer Notice** has the meaning given to that term in Article 37.1;
**United Kingdom** means Great Britain and Northern Ireland;

   1.1   Save as otherwise specifically provided in these Articles, words and expressions which have particular meanings in the Model Articles shall have the same meanings in these Articles, subject to which and unless the context

otherwise requires, words and expressions which have particular meanings in the Companies Act 2006 as in force on the date when these Articles become binding on the company shall have the same meanings in these Articles.

1.2 Headings in these Articles are used for convenience only and shall not affect the construction or interpretation of these Articles.

1.3 Unless expressly provided otherwise, a reference to a statute, statutory provision or subordinate legislation is a reference to it as it is in force from time to time and shall include any orders, regulations or subordinate legislation from time to time made under it and any amendment or re-enactment of it or any such orders, regulations or subordinate legislation for the time being in force.

1.4 Any phrase introduced by the terms "including", "include", "in particular" or any similar expression shall be construed as illustrative and shall not limit the sense of the words preceding those terms.

1.5 The Model Articles shall apply to the company, except in so far as they are modified or excluded by these Articles.

1.6 Articles 7, 8, 11(2) and (3), 13, 14(1) to (4) inclusive, 17(2), 19(5), 21, 26(5), 44(4), 45(1), 46(3), 52 and 53 of the Model Articles shall not apply to the company.

2 **Directors' general authority**

Article 3 of the Model Articles shall be amended by the insertion of the words "and to the applicable provisions for the time being of the Companies Acts", after the phrase "subject to the articles".

3 **Change of Company name**

Without prejudice to the generality of Article 2, the directors may resolve in accordance with Article 5 to change the Company's name.

4 **Committees**

Where a provision of the articles refers to the exercise of a power, authority or discretion by the directors and that power, authority or discretion has been delegated by the directors to a committee, the provision shall be construed as permitting the exercise of power, authority or discretion by the committee.

5 **Directors to take decisions collectively**

5.1 The general rule about decision-making by directors is that any decision of the directors must be taken as a majority decision at a meeting or as a directors' written resolution in accordance with Article 8 (Directors' written resolutions) or otherwise as a unanimous decision taken in accordance with Article 7 (Unanimous decisions).

5.2 If:
 5.2.1 the company only has one director for the time being, and
 5.2.1 no provision of the articles requires it to have more than one director,
 the general rule does not apply, and the director may (for so long as he remains the sole director) take decisions without regard to any of the provisions of the articles relating to directors' decision-making.

5.3 Subject to the articles, each director participating in a directors' meeting has one vote.

6 **Directors' written resolutions**

6.1 Any director may propose a directors' written resolution by giving notice in writing of the proposed resolution to each of the other directors (including alternate directors).

6.2 If the company has appointed a company secretary, the company secretary must propose a directors' written resolution if a director so requests by giving notice in writing to each of the other directors (including alternate directors).

6.3 Notice of a proposed directors' written resolution must indicate:
 6.3.1 the proposed resolution; and
 6.3.2 the time by which it is proposed that the directors should adopt it.

6.4 A proposed directors' written resolution is adopted when a majority of the non-conflicted directors (or their alternates) have signed one or more copies of it, provided that those directors (or their alternates) would have formed a quorum at a directors' meeting were the resolution to have been proposed at such meeting.

6.5 Once a directors' written resolution has been adopted, it must be treated as if it had been a decision taken at a directors' meeting in accordance with the articles.

7 **Unanimous decisions**

7.1 A decision of the directors is taken in accordance with this Article 7 when all non-conflicted directors indicate to each other by any means that they share a common view on a matter.

7.2 A decision may not be taken in accordance with this Article 6 if the non-conflicted directors would not have formed a quorum at a directors' meeting had the matter been proposed as a resolution at such a meeting.

7.3 Once a directors' unanimous decision is taken in accordance with this Article 7 it must be treated as if it had been a decision taken at a directors' meeting in accordance with the Articles.

8 **Calling a directors' meeting**

8.1 Article 9 of the Model Articles shall be amended by:
 8.1.1 inserting the words "each of" before the words "the directors";

8.1.2 by inserting the phrase "(including alternate directors) ,whether or not he is absent from the UK," after the words "the directors";

8.1.3 by inserting the words "subject to article 9.4" at the beginning of article 9(3) of the Model Articles; and

8.1.4 by inserting the words "prior to or up to and including" before the words "not more than seven days" in article 9(4) of the Model Articles.

## 9 Chairman's casting vote at directors' meetings

9.1 Article 13(1) of the Model Articles shall be amended by the insertion of the words "at a meeting of directors" after the word "proposal".

9.2 Article 13(1) of the Model Articles (as amended by Article 8.1) does not apply in respect of a particular meeting (or part of a meeting) if, in accordance with the articles, the chairman or other director chairing the meeting is a conflicted director for the purposes of that meeting (or that part of that meeting at which the proposal is voted upon).

## 10 Quorum for directors' meetings

10.1 Subject to Article 10.2, the quorum for the transaction of business at a meeting of directors may be fixed from time to time by a decision of the directors but it must never be less than two directors, and unless otherwise fixed it is two. A person who holds office only as an alternate director shall, if his appointor is not present, be counted in the quorum. If and so long as there is a sole director, he may exercise all the powers and authorities vested in the directors by these articles and accordingly the quorum for the transaction of business in these circumstances shall be one.

10.2 For the purposes of any meeting (or part of a meeting) held pursuant to Article 11 (Directors' conflicts of interests) to authorise a director's Conflict, if there is only one non-conflicted director in office in addition to the conflicted director(s), the quorum for such meeting (or part of a meeting) shall be one non-conflicted director.

## 11 Directors' conflicts of interests

11.1 For the purposes of this Article 11, a **conflict of interest** includes a conflict of interest and duty and a conflict of duties, and interest includes both direct and indirect interests.

11.2 The directors may, in accordance with the requirements set out in this Article 11, authorise any matter proposed to them by any director which would, if not authorised, involve a director breaching his duty under section 175 of the Companies Act 2006 to avoid conflicts of interest ( such matter being hereinafter referred to as a **Conflict**).

11.3 A director seeking authorisation in respect of a Conflict shall declare to the other directors the nature and extent of his interest in a Conflict as soon as is reasonably practicable. The director shall provide the other directors with such details of the relevant matter as are necessary for the other directors to decide how to address the Conflict, together with such other information as may be requested by the other directors.

11.4 Any authorisation under this Article 11 will be effective only if:

11.4.1 the matter in question shall have been proposed by any director for consideration at a meeting of directors in the same way that any other matter may be proposed to the directors under the provisions of these articles or in such other manner as the directors may determine;

11.4.2 any requirement as to the quorum at the meeting of the directors at which the matter is considered is met without counting the director in question and any other conflicted director(s); and

11.4.3 the matter was agreed to without the director and any other conflicted director(s) voting or would have been agreed to if their votes had not been counted.

11.5 Any authorisation of a Conflict under this Article 11 may (whether at the time of giving the authorisation or subsequently):

11.5.1 extend to any actual or potential conflict of interest which may reasonably be expected to arise out of the Conflict so authorised;

11.5.2 be subject to such terms and for such duration, or impose such limits or conditions as the directors may determine; or

11.5.3 be terminated or varied by the directors at any time.

This will not affect anything done by the director prior to such termination or variation in accordance with the terms of the authorisation.

11.6 In authorising a Conflict the directors may decide (whether at the time of giving the authorisation or subsequently) that if a director has obtained any information through his involvement in the Conflict otherwise than as a director of the company and in respect of which he owes a duty of confidentiality to another person the director is under no obligation to:

11.6.1 disclose such information to the directors or to any director or other officer or employee of the company; or

11.6.2 use or apply any such information in performing his duties as a director,

where to do so would amount to a breach of that confidence.

11.7 Where the directors authorise a Conflict they may provide, without limitation (whether at the time of giving the authorisation or subsequently) that the director:

11.7.1 is excluded from discussions (whether at meetings of directors or otherwise) related to the Conflict;

11.7.2 is not given any documents or other information relating to the Conflict;

11.7.3 may or may not vote (or may or may not be counted in the quorum) at any future meeting of directors in relation to any resolution relating to the Conflict.

11.8 Where the directors authorise a Conflict:

PX 42

FTC-MOBE-003444

- 11.8.1 the director will be obliged to conduct himself in accordance with any terms, limits and/or conditions imposed by the directors in relation to the Conflict;
- 11.8.2 the director will not infringe any duty he owes to the company by virtue of sections 171 to 177 of the Companies Act 2006 provided he acts in accordance with such terms, limits and/or conditions (if any) as the directors impose in respect of its authorisation.
- 11.9 A director is not required, by reason of being a director (or because of the fiduciary relationship established by reason of being a director), to account to the company for any remuneration, profit or other benefit which he receives as director or other officer or employee of the Company's subsidiaries or of any other body corporate in which the Company is interested or which he derives from or in connection with a relationship involving a Conflict which has been authorised by the directors or by the company in general meeting (subject in each case to any terms, limits or conditions attaching to that authorisation) and no contract shall be liable to be avoided on such grounds nor shall the receipt of any such remuneration or other benefit constitute a breach of his duty under section 176 of the Companies Act 2006.
- 11.10 Subject to the applicable provisions for the time being of the Companies Acts and to any terms, limits and/or conditions imposed by the directors in accordance with Article 11.5.2, and provided that he has disclosed to the directors the nature and extent of any interest of his in accordance with the Companies Acts, a director notwithstanding his office:
  - 11.10.1 may be a party to, or otherwise interested in, any contract, transaction or arrangement with the company or in which the company is otherwise interested;
  - 11.10.2 shall be counted as participating for voting and quorum purposes in any decision in connection with any proposed or existing transaction or arrangement with the company, in which he is in any way directly or indirectly interested;
  - 11.10.3 may act by himself or his firm in a professional capacity for the company (otherwise than as auditor) and he or his firm shall be entitled to remuneration for professional services as if he were not a director;
  - 11.10.4 may be a director or other officer of, or employed by, or a party to any contract, transaction or arrangement with, or otherwise interested in, any body corporate promoted by the company or in which the company is otherwise interested; and
  - 11.10.5 shall not, by reason of his office, be accountable to the company for any benefit which he (or anyone connected with him (as defined in section 252 of the Companies Act 2006) derives from any such office or employment or from any such contract, transaction or arrangement or from any interest in any such body corporate and no such contract, transaction or arrangement shall be liable to be avoided on the ground of any such interest or benefit, nor shall the receipt of any such remuneration or benefit constitute a breach of his duty under section 176 of the Companies Act 2006.

## 12 Records of decisions to be kept

Where decisions of the directors are taken by electronic means, such decisions shall be recorded by the directors in permanent form, so that they may be read with the naked eye.

## 13 Number of directors

Unless otherwise determined by ordinary resolution, the number of directors (other than alternate directors) shall not be subject to any maximum but shall not be less than one.

## 14 Methods of appointing directors

- 14.1 In any case where, as a result of death or bankruptcy, the company has no shareholders and no directors, the transmittee(s) of the last shareholder to have died or to have a bankruptcy order made against him (as the case may be) shall have the right, by notice in writing, to appoint a person (including a transmittee who is a natural person), who is willing to act and is permitted to do so, to be a director.
- 14.2 For the purposes of Article 14.1, where two or more shareholders die in circumstances rendering it uncertain who was the last to die, a younger shareholder is deemed to have survived an older shareholder.

## 15 Directors' expenses

Article 20 of the Model Articles shall be amended by the insertion of the words "(including alternate directors) and the secretary (if any)" before the words "properly incur".

## 16 Appointment and removal of alternate directors

- 16.1 Any director (**appointor**) may appoint as an alternate any other director, or any other person approved by resolution of the directors, to:
  - 16.1.1 exercise that director's powers; and
  - 16.1.2 carry out that director's responsibilities,
  - 16.1.3 in relation to the taking of decisions by the directors in the absence of the alternate's appointor
- 16.2 Any appointment or removal of an alternate must be effected by notice in writing to the company signed by the appointor, or in any other manner approved by the directors.
- 16.3 The notice must:
  - 16.3.1 identify the proposed alternate; and

    16.3.2  in the case of a notice of appointment, contain a statement signed by the proposed alternate that the proposed alternate is willing to act as the alternate of the director giving the notice.

17 **Rights and responsibilities of alternate directors**
  17.1  An alternate director may act as alternate director to more than one director and has the same rights in relation to any decision of the directors as the alternate's appointor.
  17.2  Except as the articles specify otherwise, alternate directors:
    17.2.1  are deemed for all purposes to be directors;
    17.2.2  are liable for their own acts and omissions;
    17.2.3  are subject to the same restrictions as their appointors (including those set out in sections 172 to 177 CA 2006 inclusive and Article 11); and
    17.2.4  are not deemed to be agents of or for their appointors,
  and , in particular (without limitation), each alternate director shall be entitled to receive notice of all meetings of directors and of all meetings of committees of directors of which his appointor is a shareholder.
  17.3  A person who is an alternate director but not a director:
    17.3.1  may be counted as participating for the purposes of determining whether a quorum is present (but only if that person's appointor is not participating and provided that no alternate may be counted as more than one director for these purposes);
    17.3.2  may participate in a unanimous decision of the directors (but only if his appointor does not participate); and
    17.3.3  may sign a written resolution (but only if it is not signed or to be signed by that person's appointor).
  17.4  A director who is also an alternate director is entitled, in the absence of any of his appointors, to a separate vote on behalf of that appointor, in addition to his own vote on any decision of the directors but he shall count as only one for the purpose of determining whether a quorum is present.
  17.5  An alternate director is not entitled to receive any remuneration from the company for serving as an alternate director except such part of the alternate's appointor's remuneration as the appointor may direct by notice in writing made to the company.

18 **Termination of alternate directorship**
An alternate director's appointment as an alternate for any appointor terminates:
  18.1  when that appointor revokes the appointment by notice to the company in writing specifying when it is to terminate;
  18.2  when notification is received by the Company from the alternate that the alternate is resigning as alternate for that appointor and such resignation has taken effect in accordance with its terms;
  18.3  on the occurrence, in relation to the alternate, of any event which, if it occurred in relation to that appointor, would result in the termination of that appointor's appointment as a director;
  18.4  on the death of that appointor; or
  18.5  when the alternate's appointor's appointment as a director terminates.

19 **Appointment and removal of secretary**
The directors may appoint any person who is willing to act as the secretary for such term, at such remuneration, and upon such conditions as they may think fit and from time to time remove such person and, if the directors so decide, appoint a replacement, in each case by a decision of the directors.

20 **Further issues of shares: authority**
  20.1  The following paragraphs of this Article 20 shall not apply to a private company with only one class of shares.
  20.2  Subject to Article 20.1 and save to the extent authorised by these articles, or authorised from time to time by an ordinary resolution of the shareholders, the directors shall not exercise any power to allot shares or to grant rights to subscribe for, or to convert any security into, any shares in the company.
  20.3  Subject to the remaining provisions of this Article 20 and to Article 21 (Further issues of shares: pre-emption rights) and to any directions which may be given by the company in general meeting, the directors are generally and unconditionally authorised, for the purpose of section 551 of the Companies Act 2006 to exercise any power of the company to:
    20.3.1  offer or allot;
    20.3.2  grant rights to subscribe for or to convert any security into;
    20.3.3  otherwise create, deal in, or dispose of,
  any shares in the company to any person, at any time and subject to any terms and conditions as the directors think proper.
  20.4  The authority referred to in Article 20.3:
    20.4.1  shall be limited to a maximum nominal amount of £1,000[1];
    20.4.2  shall only apply insofar as the company has not renewed, waived or revoked it by ordinary resolution; and
    20.4.3  may only be exercised for a period of five years commencing on the date on which the company is incorporated or these articles are adopted whichever is the later, save that the directors may make an offer or agreement which would, or might, require shares to be allotted after the expiry of such authority (and the directors may allot shares in pursuance of an offer or agreement as if such authority had not expired).

---

[1] If you have more than one class of shares and particularly where they have different nominal values, you may wish to break the maximum amount down and allocate a particular amount to each class of shares.

21 **Further issues of shares: pre-emption rights**
    21.1  In accordance with section 567(1) of the Companies Act 2006, sections 561 and 562 of the Companies Act 2006 shall not apply to an allotment of equity securities (as defined in section 560(1) of the Companies Act 2006) made by the company.
    21.2  Unless otherwise agreed by special resolution, if the company proposes to allot any equity securities, those equity securities shall not be allotted to any person unless the company has first offered them to all shareholders on the date of the offer on the same terms, and at the same price, as those equity securities are being offered to such other person on a pari passu basis and pro rata to the nominal value of shares held by those shareholders (as nearly as possible without involving fractions).
    21.3  The offer:
        21.3.1  shall be in writing, shall be open for acceptance for a period of fifteen working days from the date of the offer and shall give details of the number and subscription price of the relevant equity securities; and
        21.3.2  may stipulate that any shareholder who wishes to subscribe for a number of equity securities in excess of the proportion to which he is entitled shall, in his acceptance, state the number of excess equity securities (**Excess Securities**) for which he wishes to subscribe.
    21.4  Any equity securities not accepted by shareholders pursuant to the offer made to them in accordance with Articles 21.1 and 21.2 shall be used for satisfying any requests for Excess Securities made pursuant to Article 21.3.2. If there are insufficient Excess Securities to satisfy such requests, the Excess Securities shall be allotted to the applicants as nearly as practicable in the proportion that the number of Excess Securities each shareholder indicated he would accept bears to the total number of Excess Securities applied for (as nearly as possible without involving fractions or increasing the number of Excess Securities allotted to any shareholder beyond that applied for by him). After that allotment, any Excess Securities remaining shall be offered to any other person as the directors may determine, at the same price and on the same terms as the offer to the shareholders.

22 **Variation of class rights**
    22.1  Whenever the capital of the company is divided into different classes of shares, the special rights attached to any class may only be varied or abrogated, either whilst the company is a going concern or during or in contemplation of a winding up, with the consent of the holders of the issued shares of that class given in accordance with Article 22.2.
    22.2  The consent of the holders of a class of shares may be given by:
        22.2.1  a special resolution passed at a separate general meeting of the holders of the issued shares of that class; or
        22.2.2  a written resolution in any form signed by or on behalf of the holders of three-quarters in nominal value of the issued shares of that class,
but not otherwise. To every such meeting, all the provisions of these articles and the Companies Act 2006 relating to general meetings of the company shall apply (with such amendments as may be necessary to give such provisions efficacy) but so that the necessary quorum shall be two holders of shares of the relevant class present in person or by proxy and holding or representing not less than one third in nominal value of the issued shares of the relevant class; that every holder of shares of the class shall be entitled on a poll to one vote for every such share held by him; and that any holder of shares of the class, present in person or by proxy or (being a corporation) by a duly authorised representative, may demand a poll. If at any adjourned meeting of such holders such a quorum as aforesaid is not present, not less than one holder who is present in person or by proxy or (being a corporation) by a duly authorised representative shall be a quorum.

23 **Company's lien over shares**
The company has a lien (**company's lien**) over every share, whether or not fully paid, which is registered in the name of any person indebted or under any liability to the company, whether he is the sole registered holder of the share or one of several joint holders, for all monies payable by him (either alone or jointly with any other person) to the company, whether payable immediately or at some time in the future and whether or not a call notice has been sent in respect of it.
    23.1  The company's lien over a share:
        23.1.1  takes priority over any third party's interest in that share, and
        23.1.2  extends to any dividend or other money payable by the company in respect of that share and (if the lien is enforced and the share is sold by the company) the proceeds of sale of that share.
    23.2  The directors may at any time decide that a share which is or would otherwise be subject to the company's lien shall not be subject to it, either wholly or in part.

24 **Enforcement of the company's lien**
    24.1  Subject to the provisions of this Article 24, if:
        24.1.1  a lien enforcement notice has been given in respect of a share, and
        24.1.2  the person to whom the notice was given has failed to comply with it,
the company may sell that share in accordance with Article 32.5.
    24.2  A lien enforcement notice:
        24.2.1  may only be given in respect of a share which is subject to the company's lien, in respect of which a sum is payable and the due date for payment of that sum has passed;
        24.2.2  must specify the share concerned;
        24.2.3  must be in writing and require payment of the sum payable within fourteen days of the notice;

PX 42

      24.2.4    must be addressed either to the holder of the share or to a transmittee of that holder; and
      24.2.5    must state the company's intention to sell the share if the notice is not complied with.
24.3    Where shares are sold under this Article 24:
      24.3.1    the directors may authorise any person to execute an instrument of transfer of the shares to the purchaser or a person nominated by the purchaser, and
      24.3.2    the transferee is not bound to see to the application of the consideration, and the transferee's title is not affected by any irregularity in or invalidity of the process leading to the sale.
24.4    The net proceeds of any such sale (after payment of the costs of sale and any other costs of enforcing the lien) must be applied:
      24.4.1    first, in payment of so much of the sum for which the lien exists as was payable at the date of the lien enforcement notice,
      24.4.2    second, to the person entitled to the shares at the date of the sale, but only after the certificate for the shares sold has been surrendered to the company for cancellation or an indemnity in a form reasonably satisfactory to the directors has been given for any lost certificates, and subject to a lien equivalent to the company's lien for any money payable (whether payable immediately or at some time in the future) as existed over the shares before the sale in respect of all shares registered in the name of such person (whether as the sole registered holder or as one of several joint holders) after the date of the lien enforcement notice.
24.5    A statutory declaration by a director or the company secretary (if any) that the declarant is a director or the company secretary (as the case may be) and that a share has been sold to satisfy the company's lien on a specified date:
      24.5.1    is conclusive evidence of the facts stated in it as against all persons claiming to be entitled to the share, and
      24.5.2    subject to compliance with any other formalities of transfer required by the articles or by law, constitutes a good title to the share.

## 25 Call notices

25.1    Subject to the articles and the terms on which shares are allotted, the directors may send a notice (**call notice**) to a shareholder requiring the shareholder to pay the company a specified sum of money (**call**) which is payable by that member to the Company at the date when the directors decide to send the call notice.
25.2    A call notice:
      25.2.1    must be in writing;
      25.2.2    may not require a shareholder to pay a call which exceeds the total amount of his indebtedness or liability to the company;
      25.2.3    must state when and how any call to which it relates it is to be paid; and
      25.2.4    may permit or require the call to be paid by instalments.
25.3    A shareholder must comply with the requirements of a call notice, but no shareholder is obliged to pay any call before fourteen days have passed since the notice was sent.
25.4    Before the company has received any call due under a call notice the directors may:
      25.4.1    revoke it wholly or in part, or
      25.4.2    specify a later time for payment than is specified in the notice,
    by a further notice in writing to the shareholder in respect of whose shares the call is made.

## 26 Liability to pay calls

26.1    Liability to pay a call is not extinguished or transferred by transferring the shares in respect of which it is required to be paid.
26.2    Joint holders of a share are jointly and severally liable to pay all calls in respect of that share.
26.3    Subject to the terms on which shares are allotted, the directors may, when issuing shares, provide that call notices sent to the holders of those shares may require them:
      26.3.1    to pay calls which are not the same, or
      26.3.2    to pay calls at different times.

## 27 When call notice need not be issued

27.1    A call notice need not be issued in respect of sums which are specified, in the terms on which a share is issued, as being payable to the company in respect of that share:
      27.1.1    on allotment;
      27.1.2    on the occurrence of a particular event; or
      27.1.3    on a date fixed by or in accordance with the terms of issue.
27.2    But if the due date for payment of such a sum has passed and it has not been paid, the holder of the share concerned is treated in all respects as having failed to comply with a call notice in respect of that sum, and is liable to the same consequences as regards the payment of interest and forfeiture.

## 28 Failure to comply with call notice: automatic consequences

28.1    If a person is liable to pay a call and fails to do so by the call payment date:
      28.1.1    the directors may issue a notice of intended forfeiture to that person, and
      28.1.2    until the call is paid, that person must pay the company interest on the call from the call payment date at the relevant rate.

- 28.2 For the purposes of this Article 28:
    - 28.2.1 the **call payment date** is the time when the call notice states that a call is payable, unless the directors give a notice in writing specifying a later date, in which case the **call payment date** is that later date;
    - 28.2.2 the relevant rate is:
        - 28.2.2.1 the rate fixed by the terms on which the share in respect of which the call is due was allotted;
        - 28.2.2.2 such other rate as was fixed in the call notice which required payment of the call, or has otherwise been determined by the directors; or
        - 28.2.2.3 if no rate is fixed in either of these ways, five per cent. (5%) per annum.
- 28.3 The relevant rate must not exceed by more than five percentage points the base lending rate most recently set by the Monetary Policy Committee of the Bank of England in connection with its responsibilities under Part 2 of the Bank of England Act 1998.
- 28.4 The directors may waive any obligation to pay interest on a call wholly or in part.

## 29 Notice of intended forfeiture

- 29.1 A notice of intended forfeiture:
    - 29.1.1 must be in writing;
    - 29.1.2 may be sent in respect of any share in respect of which a call has not been paid as required by a call notice;
    - 29.1.3 must be sent to the holder of that share (or, in the case of joint holders of a share in accordance with Article 56.3) or to a transmittee of that holder in accordance with Article 56.4;
    - 29.1.4 must require payment of the call and any accrued interest and all expenses that may have been incurred by the company by reason of such non-payment by a date which is not less than fourteen days after the date of the notice;
    - 29.1.5 must state how the payment is to be made; and
    - 29.1.6 must state that if the notice is not complied with, the shares in respect of which the call is payable will be liable to be forfeited.

## 30 Directors' power to forfeit shares

If a notice of intended forfeiture is not complied with before the date by which payment of the call is required in the notice of intended forfeiture, the directors may decide that any share in respect of which it was given is forfeited, and the forfeiture is to include all dividends or other moneys payable in respect of the forfeited shares and not paid before the forfeiture.

## 31 Effect of forfeiture

- 31.1 Subject to the articles, the forfeiture of a share extinguishes:
    - 31.1.1 all interests in that share, and all claims and demands against the company in respect of it, and
    - 31.1.2 all other rights and liabilities incidental to the share as between the person whose share it was prior to the forfeiture and the company.
- 31.2 Any share which is forfeited in accordance with the articles:
    - 31.2.1 is deemed to have been forfeited when the directors decide that it is forfeited;
    - 31.2.2 is deemed to be the property of the company; and
    - 31.2.3 may be sold, re-allotted or otherwise disposed of as the directors think fit in accordance with Article 32.5.
- 31.3 If a person's shares have been forfeited:
    - 31.3.1 the company must send that person written notice that forfeiture has occurred and record it in the register of members;
    - 31.3.2 that person ceases to be a shareholder in respect of those shares;
    - 31.3.3 that person must surrender the certificate for the shares forfeited to the company for cancellation;
    - 31.3.4 that person remains liable to the company for all sums payable by that person under the articles at the date of forfeiture in respect of those shares, including any interest (whether accrued before or after the date of forfeiture); and
    - 31.3.5 the directors may waive payment of such sums wholly or in part or enforce payment without any allowance for the value of the shares at the time of forfeiture or for any consideration received on their disposal.
- 31.4 At any time before the company disposes of a forfeited share, the directors may decide to cancel the forfeiture on payment of all calls and interest due in respect of it and on such other terms as they think fit.

## 32 Procedure following forfeiture

- 32.1 If a forfeited share is to be disposed of by being transferred, the company may receive the consideration for the transfer and the directors may authorise any person to execute the instrument of transfer.
- 32.2 A statutory declaration by a director or the company secretary (if any) that the declarant is a director or the company secretary (as the case may be) and that a share has been forfeited on a specified date:
    - 32.2.1 is conclusive evidence of the facts stated in it as against all persons claiming to be entitled to the share, and
    - 32.2.2 subject to compliance with any other formalities of transfer required by the articles or by law, constitutes a good title to the share.
- 32.3 A person to whom a forfeited share is transferred is not bound to see to the application of the consideration (if any) nor is that person's title to the share affected by any irregularity in or invalidity of the process leading to the forfeiture or transfer of the share.

PX 42    FTC-MOBE-003449

32.4 If the company sells a forfeited share, the person who held it prior to its forfeiture is entitled to receive from the company the proceeds of such sale, net of any commission, and excluding any amount which:
    32.4.1 was, or would have become, payable, and
    32.4.2 had not, when that share was forfeited, been paid by that person in respect of that share,
but no interest is payable to such a person in respect of such proceeds and the company is not required to account for any money earned on them.

32.5 All shares to be sold in the enforcement of the company's lien or rights of forfeiture shall be offered in accordance with Article 37 (Voluntary Transfers) as if they were Sale Shares in respect of which a Transfer Notice had been given and treating as the Seller the holder of those shares save that the Sale Price shall be the Market Value of those shares and the Transfer Notice shall be deemed not to contain a Total Transfer Condition.

33 **Surrender of shares**
  33.1 A shareholder may surrender any share:
    33.1.1 in respect of which the directors may issue a notice of intended forfeiture;
    33.1.2 which the directors may forfeit; or
    33.1.3 which has been forfeited.
  33.2 The directors may accept the surrender of any such share.
  33.3 The effect of surrender on a share is the same as the effect of forfeiture on that share.
  33.4 A share which has been surrendered may be dealt with in the same way as a share which has been forfeited.

34 **Payment of commission on subscription for shares**
  34.1 The company may pay any person a commission in consideration for that person:
    34.1.1 subscribing, or agreeing to subscribe, for shares; or
    34.1.2 procuring, or agreeing to procure, subscriptions for shares.
  34.2 Any such commission may be paid:
    34.2.1 in cash, or in fully paid or partly paid shares or other securities or partly in one way and partly in the other; and
    34.2.2 in respect of a conditional or an absolute subscription.

35 **Share certificates**
  35.1 Article 24(2)(c) of the Model Articles shall be amended by:
    35.1.1 the deletion of the word "fully" and the insertion of the words "extent to which" before the word "shares"; and
    35.1.2 the word "up" at the end of this Article 24(2)(c).

36 **Transfer of shares- general**
  36.1 In these articles, a reference to the **transfer** of or **transferring** shares shall include any transfer, assignment, disposition or proposed or purported transfer, assignment or disposition:
    36.1.1 of any share or shares of the company; or
    36.1.2 of any interest of any kind in any share or shares of the company; or
    36.1.3 of any right to receive or subscribe for any share or shares of the company.
  36.2 The directors shall not register the transfer of any share or any interest in any share unless the transfer is made in accordance with Article 37 (Voluntary Transfers), and, in any such case, is not prohibited under Article 38 (Prohibited Transfers).
  36.3 If the directors refuse to register a transfer of a share they shall, as soon as practicable and in any event within two months after the date on which the transfer was lodged with the company, send to the transferee notice of, and the reasons for, the refusal.
  36.4 An obligation to transfer a share under these articles shall be deemed to be an obligation to transfer the entire legal and beneficial interest in such share free from any lien, charge or other encumbrance.
  36.5 Article 26(1) of the Model Articles shall be amended by the insertion of the words "and (if any of the shares is partly paid) the transferee" at the end of that article.

37 **Voluntary Transfers**
  37.1 Any shareholder who wishes to transfer any share (**Seller**) shall before transferring or agreeing to transfer such share or any interest in it, serve notice in writing (**Transfer Notice**) on the company of his wish to make that transfer.
  37.2 In the Transfer Notice the Seller shall specify:
    37.2.1 the number and class of shares (**Sale Shares** and each one a **Sale Share**) which he wishes to transfer;
    37.2.2 the identity of the person (if any) to whom the Seller wishes to transfer the Sale Shares;
    37.2.3 the price per share at which the Seller wishes to transfer the Sale Shares (**Proposed Sale Price**);
    37.2.4 any other terms relating to the transfer of the Sale Shares; and
    37.2.5 whether the Transfer Notice is conditional upon all (and not part only) of the Sale Shares being sold pursuant to the following provisions of this Article 37 (**Total Transfer Condition**).
  37.3 Each Transfer Notice shall:
    37.3.1 relate to one class of shares only;

PX 42   FTC-MOBE-003450