UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FEDERAL TRADE COMMISSION,

        Plaintiff,

vs.                                             Case no. 6:18-cv-862-ORL-37DCI

MOBE LTD., et al.

        Defendants.
                                             /

### RECEIVER'S VERIFIED FIRST APPLICATION FOR PAYMENT FOR SERVICES RENDERED AND REIMBURSEMENT FOR COSTS INCURRED BY AKERMAN LLP

Mark J. Bernet (the "Receiver"), as receiver for MOBE, Ltd., MOBEProcessing.com, Inc., Transaction Management USA, Inc., MOBETraining.com, Inc., 9336-0311 Quebec, Inc., MOBE Pro Limited, MOBE Inc., and MOBE Online Ltd. (collectively the "Receivership Entities" or "MOBE"), files his verified first application for payment for services rendered and reimbursement for costs incurred by his attorneys, the law firm of Akerman LLP ("Akerman"). As discussed in more detail below, the Receiver requests authority to pay Akerman $69,182.50 as fees for services rendered, and to reimburse Akerman $1,473.08 for costs incurred, during the period beginning June 4, 2018, and continuing through July 31, 2018 (the "First Interim Fee Period"). **The Receiver reports to the Court that the relief requested herein is not opposed.** The Receiver submits the following in support of his application.

46092676;1

I. INTRODUCTION

    A. The Relief Requested

        1. By this First Application the Receiver requests authority from this Court to pay his law firm, Akerman, $69,182.50 for its services rendered as counsel for the Receiver herein during the First Interim Fee Period. The Receiver also requests authority to reimburse Akerman $1,473.08 for costs and expenses incurred. The fees represent 214.7 hours expended by Akerman over the First Interim Fee Period at a blended hourly rate of approximately $322.23. The fess requested also reflect the Receiver's write-off of 39.1 hours of recorded time, having a value of $10,893.60.

        2. The services rendered by Akerman during the First Interim Fee Period are discussed in greater detail in Section II below. Additionally, the Receiver has filed a summary of the billable time expended by Akerman on this case, together with a detailed billing log, recorded in tenths of an hour, for all tasks undertaken by Akerman. *See* Exhibit "A."

        3. All of the services for which the Receiver requests compensation for Akerman were rendered solely in connection with this case and solely at the request and under the supervision of the Receiver. All of the services that are the subject hereof were rendered during the First Interim Fee Period.

        4. Akerman received no retainer for professional fees and costs in connection with its services herein. Akerman has agreed to wait for a Court order authorizing payment before taking payment. This is the Receiver's first request for authority to pay Akerman.

5. The Receiver is a partner with Akerman. The Receiver has separately accounted for the time he personally has expended on this matter and has separately sought compensation. By this application, the Receiver seeks authority to pay Akerman for the services it rendered at the Receiver's instruction. All of the services rendered by Akerman, as reflected in Exhibit "A" to this First Interim Application, were rendered by attorneys and professionals other than the Receiver.

6. The Receiver respectfully submits, in light of the difficult and complex nature of this case, that the requested compensation for Akerman is fair and reasonable.

B. <u>The Background of the Case</u>.

1. The Federal Trade Commission (the "FTC") commenced this case by filing its Complaint on June 4, 2018, alleging that the Defendants had engaged in unfair and deceptive acts and practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. §45(a). (doc. no. 1). The same day, the FTC filed *Plaintiff's Ex Parte Motion and Memorandum of Law in Support of a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue* (doc. no. 3) ("Motion for TRO") and a separate *Plaintiff's Application for a Temporary Receiver* (doc. no. 6) ("Application for Receiver").

2. In the lawsuit, the FTC alleged that the defendants operated a fraudulent internet business education program called "My Online Business Education," or "MOBE," through which the Defendants claimed they would reveal a "simple 21-step system that will show consumers how to quickly and easily start their own online business and make

substantial income." However, the FTC further alleged that, contrary to the Defendants' representations, "the vast majority of consumers who join the MOBE program and purchase . . . costly MOBE memberships lose money." According to the FTC, the "internet business" is nothing more than charging consumers thousands of dollars to watch online videos that ultimately advise consumers to go and recruit other consumers to pay thousands of dollars to watch the same videos. The FTC further alleged that by operating the business in the fashion they operated it, the Defendants violated Section 5(a) of the FTC Act, 15 U.S.C.A. §45(a).

        3.        On June 5, 2018, the Court granted the Motion for TRO and approved the Application for Receiver by entering its *Order Granting Ex Parte Temporary Restraining Order* (the "TRO") (doc. no. 13). Among other things, the TRO (i) enjoined the Defendants from violating Section 5(a) of the FTC Act, (ii) enjoined the Defendants from transferring, liquidating or otherwise encumbering or disposing of any of their assets, and (iii) appointed the Receiver as the temporary receiver of the "Receivership Entities," which is defined to include MOBE "as well as any other entity that has conducted any business related to Defendants' marketing and sale of purported money-making opportunities to consumers . . . that the Receiver determines is controlled or owned by any Defendant." TRO, pp. 5 & 13. At the request of all of the parties, the Court has extended the TRO through September 13, 2018.

        4.        On August 16, 2018, the Receiver filed his *Receiver's Initial Report* (doc. no. 90), which details the Receiver's activities, opinions and preliminary conclusions as of the filing date. The *Receiver's Initial Report* is hereby adopted and made a part of this First Application.

5. Section XII.E. of the TRO specifically authorizes the Receiver to "[c]hoose, engage, and employ attorneys . . . as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by [the TRO]." In this regard, the Receiver employed his law firm, Akerman to assist him.

6. Akerman has kept detailed time records of its activities during the First Interim Fee Period. Annexed as Composite Exhibit "A" are detailed statements showing (i) the time spent on each task undertaken, recorded in tenth-of-an-hour increments, (ii) the date of the activity, and (iii) a description of the particular tasks performed.

II.  SUMMARY OF SERVICES RENDERED

The Court appointed the Receiver as receiver for 9 separate companies. These companies, which engaged in business in Australia, New Zealand, Malaysia, Mauritius, Fiji, Hong Kong, Costa Rica, Panama, Mexico, the United States, Canada, the United Kingdom, France, Germany, and Bulgaria, operated as an enterprise pitching the MOBE online educational product. The scope of the engagement required the Receiver to hire Akerman to assist him with various of his duties. Specifically, the Receiver utilized the services of Akerman professionals Richard Martin, Serena Vasquez, Tamara S. Malvin, Brooke Rollins, Frank Cordero, Kimberly Shinder, Amanda M. Herrera, Jennifer Meehan and Kimberly Abbate, who assisted in the following respects:

- <u>Richard Martin</u>. Mr. Martin is an experienced litigation attorney resident in Akerman's Tampa office. Mr. Martin assisted the Receiver to recover credit card reserves held by credit card payment processors and/or acquiring banks. In particular, Mr. Martin analyzed motions filed by Qualpay and Synovus Bank, both

of which sought a declaration that the Court's TRO did not require them to turn over $6.3 million of MOBE's credit card receipts they held as reserves. Mr. Martin conducted legal research on the subject and prepared memoranda opposing the relief. Mr. Martin appeared at the hearing on the motions and presented oral argument on behalf of the Receiver. Based, at least in part, on these efforts, the Court denied the motions of Qualpay and Synovus and ordered them to turn over the funds. Mr. Martin also assisted the Receiver with similar issues involving Allied Wallet. Allied Wallet held approximately $2.5 million in credit card reserves that it resisted turning over. The Receiver discovered that Allied Wallet utilizes a series of shell companies to mask its business operations (*see How a Business Serving Bettors, Porn Donated to Dems, Trump*, August 2, 2018, located at https://www.thenewstribune.com/news/business/article215963140.html). Allied Wallet claimed that MOBE had contracted with Allied Wallet, Ltd., a UK entity. It also claimed that its acquiring bank was Wirecard, a German bank, and that Wirecard refused to honor the Court's TRO, and that Allied Wallet was powerless to do anything about it. Mr. Martin successfully negotiated and documented a compromise, under which Allied Wallet paid approximately $2.1 million to the Receiver. During the First Interim Fee Period Mr. Martin recorded a total of 64.0 hours. His hourly rate is $525, and the total fees charged for his services therefore is $33,600.00.

- <u>Tamara S. Melvin</u>. Ms. Melvin is an experienced litigation attorney resident in Akerman's Ft. Lauderdale office. Early in the lawsuit the parties held depositions of the Defendants Zanghi and Whitney in Fort Lauderdale. Ms. Melvin

participated in these depositions on behalf of the Receiver (the Receiver was unable to attend both depositions due to a schedule conflict). Both depositions lasted for an entire day. Ms. Melvin recorded 23.8 hours in connection with preparing for and participating in the depositions. Her hourly rate is $430.00, and the total fees charged for her services therefore is $10,234.00.

- Serena Vasquez. In addition to the attorneys identified above, the Receiver utilized the services of Akerman paralegal Serena Vasquez. During the First Interim Fee Period, Ms. Vasquez: (i) contacted all of the hotel facilities that were scheduled to hold or were holding live seminars and instructed them to cancel the live events; (ii) assisted with locating contact information for banks, financial institutions, payment processors and others so that the Receiver could take steps to recover receivership assets in their possession; (iii) assisted with preparing demand letters to banks and payment processors, and others, for the turnover of funds and property and records; (iv) assisted with obtaining and analyzing ESI; (v) secured, monitored and coordinated all communications sent to the Receivership Defendants from thousands of consumer victims and other creditors of the Receivership Defendants; (vi) prepared discovery materials, including, but not limited to, deposition outlines, document requests and subpoenas to obtain relevant files and information related to the business operations and finances of the Receivership Defendants[1]; and (vii) accessed, reviewed, analyzed and summarized for the Receiver the various documents, data and electronically stored information from the

---

[1] The discovery materials included subpoenas for deposition and/or documents issued to credit card payment processors Qualpay and Allied Wallet.

Receivership Defendants. During the First Interim Fee Period, Ms. Vasquez recorded a total of 109.6 hours on this matter. At her hourly billing rate of $195.00, her fees total $21,372.00.

- **Kimberly Shinder, Amanda Herrera, Jennifer Meehan and Kimberly Abbate**. Ms. Shinder, Ms. Herrera, Ms. Meehan and Ms. Abbate are paralegals resident in Akerman's Fort Lauderdale, Los Angeles, Jacksonville, and Fort Lauderdale offices, respectively. Each assisted with serving subpoenas on third parties or with registering the case in other jurisdictions as required under 28 U.S.C. §754. Combined, they billed 4.3 hours, at an average hourly rate of approximately $244.53, for total fees of 1,051.50.

### III.  STANDARD FOR AWARDING COMPENSATION

In determining the reasonableness of fees, the Court must calculate the lodestar, which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). Once the Court has calculated the lodestar, it may adjust the fee awarded upward or downward based upon other considerations, including (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment due to the attorney's acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the amount involved and the results obtained; (8) the experience, reputation, and ability of the attorneys;

(9) the undesirability of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974); *S.E.C. v. Aquacell Batteries, Inc.*, 2008 WL 276026 (M.D. Fla. 2008); *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).[2]

    A. <u>The Time and Labor Required</u>. The time and labor required are summarized above and completely described in the attached Exhibit "A." As discussed above, after certain adjustments by the Receiver,[3] Akerman attorneys and paralegals recorded a total of 214.7 hours on this matter.

    B. <u>The Novelty and Difficulty of the Question</u>. Investigating the business practices of the Receivership Defendants and locating and securing their assets presented unique challenges that required considerable skill, and Akerman's assistance was valuable to the Receiver. In particular, Mr. Martin prepared two briefs directed toward Qualpay/Synovus on unique, complex issues involving the credit card processing industry, and based in part on those briefs the Court directed the turnover of $6.3 million in credit card reserves.

    C. <u>The Skill Necessary to Perform the Services Properly</u>. Again, analyzing, evaluating and ultimately shutting down MOBE's operations, and attempting to unravel thousands of transfers of funds between the Defendants and third parties, presented unique challenges. Moreover, Akerman demonstrated considerable skill handling the

---

[2] Decisions from the former Fifth Circuit Court of Appeals entered prior to September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981).
[3] The Receiver wrote off 39.1 hours of recorded time.

Qualpay/Synovus issues, through which it obtained the Court's turnover order pertaining to $6.3 million in credit card reserves.

        D.      <u>The Preclusion of Other Employment</u>.  Ms. Vasquez devoted significant portions of her available time to this case, and therefore was not able to handle other matters.  Otherwise, this factor need be given no extraordinary consideration.

        E.      <u>The Customary Fee</u>.  The fees requested by Akerman are those that are charged for similar services.

        F.      <u>Whether the Fee is Fixed or Contingent</u>.  The fees requested are not contingent; however, they are subject to this Court's approval prior to being paid.

        G.      <u>Time Limitations Imposed by the Client</u>.  Immediately after the entry of the TRO, the Receiver moved quickly to secure MOBE's assets.  The Receiver relied heavily on Akerman to assist with taking these actions.

        H.      <u>The Amount Involved and the Results Obtained</u>.  Excluding the Qualpay/Synovus reserve funds of $6.3 million, the Receiver, with Akerman's assistance, has recovered over $8 million for the Receivership estates.  The Receiver has good prospects for further recoveries.  The funds recovered will be used to fund the receivership estates, and for consumer redress, assuming that the Plaintiff obtains final judgments.

        I.      <u>The Experience, Reputation and Ability of Akerman</u>.  The Akerman firm is a national law firm with offices in 12 states.  It has an outstanding reputation as a litigation and business firm.  Its reputation is well known to the Court.

        J.      <u>The "Undesirability" of the Case</u>.  The case involved a very significant time commitment, but otherwise this factor need be given no extraordinary consideration.

K.  <u>The Nature and Length of the Professional Relationship</u>.  The Receiver is a partner with Akerman, although the Receiver has recorded no time on this particular file (the Receiver's time has been recorded separately).  The Receiver, of course, reports to the Court on this matter, and accordingly there is no "professional relationship" within the usual meaning of the phrase.  However, as noted above, the Receiver has regularly utilized his firm, Akerman, as needed in his receivership matters.

L.  <u>Awards in Similar Cases</u>.  It is customary for a court to award a receiver's attorneys the fees they request, particularly where the attorneys have performed as directed and have requested a reasonable amount.

IV.  <u>EXPENSES</u>

During the First Interim Fee Period Akerman incurred reimbursable expenses totaling $1,473.08.  These are itemized on the attached Exhibit "A."  They include customary charges for copying ($0.20 per page for black and white, $0.50 for color), charges for serving subpoenas, Federal Express delivery charges and $63.75 for Westlaw research expenses.

V.  <u>CONCLUSION</u>

As set forth above, during the First Interim Fee Period Akerman recorded 214.7 hours of billable time.  At a blended hourly rate of approximately $322.23, this would result in fees of $69,182.50.  Additionally, during the First Interim Fee Period Akerman incurred reimbursable expenses of $1,473.08.  No parties have objected to the entry of an order authorizing payment of these fees and expenses, and the Receiver accordingly requests entry of such an order.

## LOCAL RULE 3.01(g) CERTIFICATION

The Receiver certifies that prior to filing this motion he made a reasonable effort to confer with all parties who may be affected by the relief requested herein. Counsel for all parties have indicated that they do not object to the entry of an order awarding Akerman the fees and expenses set forth herein.

## RECEIVER'S VERIFICATION

The Receiver certifies that Exhibit "A" is a true and correct copy of an invoice generated by Akerman, at the Receiver's direction, for services rendered by Akerman during the First Interim Fee Period. The Receiver certifies that he examined and reviewed an earlier draft of Exhibit "A" and reduced certain time entries, to satisfy himself that the fees charged by Akerman are reasonable and appropriate for the services rendered. The Receiver further certifies that all of the expenses listed on Exhibit "A" accurately reflect actual costs incurred by Akerman during the First Interim Fee Period or, in the case of copies, represent Akerman's usual charges to its clients.

Dated:    Tampa, Florida
          August 17, 2018

/s/ Mark J. Bernet
Mark J. Bernet, Receiver
401 E. Jackson Street, Suite 1700
Tampa, Florida  33602
Telephone:  (813) 223-7333
Facsimile:  (813) 218-5495
Email:  mark.bernet@akerman.com
Secondary:  judy.barton@akerman.com

## CERTIFICATE OF SERVICE

I CERTIFY that a copy of the foregoing was served by CM/ECF to Benjamin R. Davidson, Esquire, Bikram Bandy, Esquire and Sung W. Kim, Esquire, Federal Trade Commission, Mail Stop CC-8528, 600 Pennsylvania Avenue NW, Washington, DC 20580, e-mail bdavidson@ftc.gov, bbandy@ftc.gov & skim6@ftc.gov, and David Lawrence Ferguson, Esquire, Kopelowitz Ostrow et al., One West Olas Boulevard, suite 500, Fort Lauderdale, Florida 33301, e-mail ferguson@kolawyers.com, this 17th day of August, 2018.

/s/ Mark J. Bernet, Receiver

cc: Andrew N. Cove, Esquire (via e-mail to ANC@covelaw.com) (Mr. Cove has not appeared in this case on behalf of any party)