No. 16-17197

# In the United States Court of Appeals for the Ninth Circuit

FEDERAL TRADE COMMISSION,

*Plaintiff-Appellee*,

v.

AMG CAPITAL MANAGEMENT, LLC; BLACK CREEK CAPITAL CORPORATION; BROADMOOR CAPITAL PARTNERS, LLC; LEVEL 5 MOTORSPORTS, LLC; SCOTT A. TUCKER; PARK 269 LLC; AND KIM C. TUCKER,

*Defendant-Appellants*.

On Appeal from the United States District Court
for the District of Nevada
No. 2:12-cv-00536
Hon. Gloria M. Navaro, Chief Judge

## BRIEF FOR THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS AMICUS CURIAE IN SUPPORT OF PETITIONER

Ilana H. Eisenstein
DLA Piper LLP (US)
One Liberty Place
1650 Market Street,
Suite 5000
Philadelphia, PA 19103-7300
ilana.eisenstein@dlapiper.com
T: (215) 656-3351
F: (215) 606-3351

Adam Pierson
DLA Piper LLP (US)
1900 N. Pearl Street
Suite 2200
Dallas, Texas 75201
adam.pierson@dlapiper.com
T: (214) 743-4512
F: (214) 743-4545

Daryl Joseffer
Janet Galeria
U.S. Chamber Litigation Center
1615 H Street, NW
Washington, DC 20062
djoseffer@uschamber.com
jgaleria@uschamber.com

*Attorneys for Amicus Curiae United States Chamber of Commerce*


# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ..................................................................... 1

SUMMARY OF ARGUMENT ............................................................................ 1

ARGUMENT ......................................................................................................... 3

    I.    THE COMMISSION'S POWER TO ENJOIN VIOLATIONS OF THE FTC ACT DOES NOT PERMIT IT TO SEEK MONETARY RELIEF FOR PAST ACTIONS ........................................................ 3

    II.   CORRECTING THE FTC'S AUTHORITY TO COLLECT MONETARY RELIEF UNDER SECTION 13(B) IS AN INCREASINGLY IMPORTANT ISSUE. ........................................... 6

        A.   The FTC Increasingly Uses Section 13(b) to Obtain Substantial Restitution and Disgorgement Awards. ................................... 6

        B.   The Commission's Use of Section 13(b) to Extract Large Monetary Awards Harms Businesses. ................................... 9

   III.  OTHER FEDERAL AGENCIES FREQUENTLY SEEK SIMILARLY EXPANSIVE MONETARY AWARDS UNDER THE GUISE OF INJUNCTIVE RELIEF. ................................................ 10

CONCLUSION ................................................................................................... 11

# **TABLE OF AUTHORITIES**


**Page(s)**

**Cases**

*Commodity Futures Trading Comm'n v. Wilshire Inv. Mgmt Corp.*,
  531 F.3d 1339 (11th Cir. 2008)..................................................................11

*FTC v. Commerce Planet, Inc.*,
  815 F.3d 593 (9th Cir. 2017)..............................................................3, 4, 9

*FTC v. Shire ViroPharma, Inc.*,
  No. 18-1807, 2019 WL 908577 (3d Cir. Feb. 25, 2019)..............................4

*Kokesh v. SEC*,
  137 S. Ct. 1635 (2017).......................................................................*passim*

*United States v. Lane Labs-USA Inc.*,
  427 F.3d 219 (3d Cir. 2005)......................................................................10

*United States v. Philip Morris USA Inc.*,
  396 F.3d 1190 (D.C. Cir. 2005) ................................................................11

*United States v. Rx Depot, Inc.*,
  438 F.3d 1052 (10th Cir. 2006).................................................................10

*United States v. Universal Mgmt. Servs., Inc.*,
  191 F.3d 750 (6th Cir. 1999).....................................................................10

**Statutes**

15 U.S.C. § 45(a)(2).........................................................................................3

15 U.S.C.§ 57b(a)(1)-(2).................................................................................5

21 U.S.C. § 332(a) .........................................................................................10

**Other Authorities**

FTC, *A Recap of 2017: FTC's Annual Highlights* (Apr. 10, 2018),
  https://www.ftc.gov/news-events/blogs/business-
  blog/2018/04/recap-2017-ftcs-annual-highlights....................................8

*Policy Statement on Monetary Equitable Remedies in Competition Cases*, 68 Fed. Reg. 45821 (Aug. 3, 2003), 2003 WL 21780660 ........................ 7

Press Release, FTC, *U.S. Court Finds in FTC's Favor and Imposes Record $1.3 Billion Judgment Against Defendants Behind AMG Payday Lending Scheme* (Oct. 4, 2016), https://www.ftc.gov/news-events/press-releases/2016/10/us-court-finds-ftcs-favor-imposes-record-13-billion-judgment ........................ 6

*Withdrawal of the Comm'n Policy Statement on Monetary Equitable Remedies in Competition Cases*, 77 Fed. Reg. 47071 (Aug. 7, 2012), 2012 WL 3163476 ........................ 7, 8

## INTEREST OF AMICUS CURIAE[1]

The Chamber of Commerce of the United States of America is the world's largest business federation. It represents 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in each industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases that raise issues of concern to the nation's business community.

The appropriate scope of enforcement powers granted by Congress to the Federal Trade Commission ("FTC" or "Commission") is an important issue to the Chamber's members. Clearly defining and enforcing the limits of these powers ensures that industries and markets function effectively.

## SUMMARY OF ARGUMENT

Section 13(b) of the Federal Trade Commission Act ("FTC Act"), which allows the Commission to seek only injunctive relief, provides no basis for the expansive power to seek substantial monetary awards in the form of restitution or disgorgement. That reading of the statute is inconsistent with the statutory text, its

---

[1] No party's counsel authored any part of this brief. No one, apart from United States Chamber of Commerce and its counsel, contributed money intended to fund the brief's preparation or submission. All parties have consented to the filing of this brief.

structure and purpose, as well as the Supreme Court's decision in *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), which concluded that such monetary remedies are not equitable in nature.

The unprecedented $1.3 billion restitution award in this case is the high-water mark of the Commission's aggressive pursuit of monetary awards under Section 13(b). The Commission recently withdrew its prior guidance that limited the circumstances in which it would pursue such awards. Instead, the Commission has declared that it will seek restitution and disgorgement for common industry practices, even without a clear violation of the FTC Act. This change has caused an increasing surge of monetary remedies recovered by the FTC under the guise of "injunctive" relief. Other federal agencies have similarly pursued billions of dollars in monetary awards in the name of equity, giving this issue an even greater and broader importance. The harm to businesses from this expanding liability makes this question a critical one.

The Court should grant the petition for rehearing en banc and reverse the decision of the prior panel.

2

# ARGUMENT

## I. THE COMMISSION'S POWER TO ENJOIN VIOLATIONS OF THE FTC ACT DOES NOT PERMIT IT TO SEEK MONETARY RELIEF FOR PAST ACTIONS.

Amicus agrees with petitioner that en banc review is warranted because this Court's prior precedent failed to properly construe the FTC Act's statutory language, particularly in light of the Supreme Court's decision in *Kokesh v. SEC*, 137 S. Ct. 1635 (2017).

Section 5 of the FTC Act broadly empowers the Commission "to prevent" the use of "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(2). The Commission may seek to prevent allegedly unfair practices through administrative adjudications or by rulemaking to define specifically unfair and deceptive acts. *See Id.* §§ 45(b), 57a(a)(1)(B). Section 13(b) permits the Commission to seek an injunction in federal district court when it "has reason to believe" a person "is violating, or about to violate" Section 5 of the Act. *Id.* § 53(b). Even though Section 13(b) is limited to injunctive relief, this Court in *FTC v. Commerce Planet, Inc.*, 815 F.3d 593 (2017), adopted a broad view of that equitable power and held that Section 13(b) allows the court to award "ancillary relief," including restitution. *Id.* at 598.

The *Commerce Planet* decision expanded the relief available under Section 13(b) far beyond what the statute's text or purpose may bear. As Judge

3

O'Scannlain noted in his special concurrence, the plain statutory language of Section 13(b) "anticipates that a court may award relief to prevent an *ongoing* or *imminent* harm—but not to deprive a defendant of 'unjust gains from *past* violations.'" Concurrence at 23 (quoting *Commerce Planet*, 815 F.3d at 598). The plain language of Section 13(b), which is limited to the power to "enjoin" current or imminent Section 5 violations, supports Judge O'Scannlain's conclusion that injunctive relief under Section 13(b) is limited to "a simple stop-gap measure that allows the Commission to act quickly to prevent harm" – and not to provide monetary relief (such as the restitution at issue here) for past actions. *Id.* at 25-26; *see also FTC v. Shire ViroPharma, Inc.*, No. 18-1807, 2019 WL 908577, at *7, 9 (3d Cir. Feb. 25, 2019) (holding that Section 13(b) is "unambiguous" that it only "prohibits existing or impending conduct" and thus "a violation in the distant past and a vague and generalized likelihood of recurrent conduct" was not sufficient).

As the petition explains, the expansive view of equitable remedies adopted by this Court in *Commerce Planet* is inconsistent with the Supreme Court's ruling in *Kokesh*, which, as Judge O'Scannlain noted, "undermines a premise in [this Court's] reasoning: that restitution under [Section] 13(b) is an 'equitable' remedy at all." Concurrence at 22.

Moreover, the FTC Act as a whole draws a sharp distinction between forward-looking injunctive relief and backward-looking monetary relief—a

4

distinction central to Congress's design. Permitting monetary restitution awards under Section 13(b) "fails to give unique effect" to Section 19 of the Act, which provides for monetary relief. *Id.* at 27. In essence, Congress created a two-tiered standard for relief when it passed the FTC Act, with one standard for injunctive relief as to ongoing or prospective harm, and a higher standard, with additional procedural protections, for backward-looking monetary relief for past violations. That distinction is important to the regulated public. Because the FTC Act's general prohibitions are vague, it is necessary that the FTC provide the public with fair notice of prohibited conduct *before* it imposes monetary sanctions for past conduct.

Specifically, Section 19 requires that, to obtain monetary relief, the Commission must either 1) prove that the defendant "violate[d] any rule under this subchapter respecting unfair or deceptive acts or practices" (*i.e.*, a rule promulgated by the Commission), or (2) if no such violation exists, obtain a "final cease and desist order" through an administrative proceeding, and then prove to a trial court that the defendant's conduct was such that a "reasonable man" would know it was "dishonest or fraudulent." 15 U.S.C.§ 57b(a)(1)-(2); *see also* Concurrence at 26.

In short, as Judge O'Scannlain explained, Section 19 "requires the Commission either to promulgate rules that define unlawful practices *ex ante*, or

5

first to prosecute a wrongdoer in an administrative adjudication that culminates in a cease and desist order." Concurrence at 27. Although, those protections as to the prospect of monetary penalties are central to Congress's design and to basic fairness to defendants, they are completely eviscerated by *Commerce Planet*'s expansive reading of the scope of Section 13(b).

## II. CORRECTING THE FTC'S AUTHORITY TO COLLECT MONETARY RELIEF UNDER SECTION 13(B) IS AN INCREASINGLY IMPORTANT ISSUE.

This is an issue of substantial and growing importance as the Commission increasingly pursues aggressive awards of disgorgement and restitution despite having no statutory authority to do so. The escalating use of the FTC's most drastic remedy is, in turn, harming businesses that face the risk of potential liability for common industry practices.

### A. The FTC Increasingly Uses Section 13(b) to Obtain Substantial Restitution and Disgorgement Awards.

The staggering, record-setting $1.3 billion restitution award in this case exemplifies the Commission's recent expansion of its so-called equitable powers under Section 13(b). The Commission itself declared that the award here is "the largest litigated judgement ever obtained by the FTC."[2] If left to stand, this extension of the Commission's power will only continue to grow.

---

[2] Press Release, FTC, *U.S. Court Finds in FTC's Favor and Imposes Record $1.3 Billion Judgment Against Defendants Behind AMG Payday Lending Scheme* (Oct.

The Commission did not always take this expansive view of its equitable authority. Until 2012, the FTC took the position—through a Policy Statement—that it would seek disgorgement and/or restitution only in "exceptional cases" where there is, among other things, a "clear violation" of the law (such that the defendant was on proper notice) and if other remedies are insufficient.[3] *Policy Statement on Monetary Equitable Remedies in Competition Cases*, 68 Fed. Reg. 45821 (Aug. 3, 2003), 2003 WL 21780660. But in recent years, the Commission has moved aggressively to pursue monetary remedies under the guise of equity.

In 2012, the Commission withdrew its prior statement claiming that the Policy Statement took "an overly restrictive view" of its discretion to seek monetary relief. *Withdrawal of the Comm'n Policy Statement on Monetary Equitable Remedies in Competition Cases*, 77 Fed. Reg. 47071 (Aug. 7, 2012), 2012 WL 3163476. The Commission also expanded its powers in other ways, contending that it could seek such monetary remedies regardless of whether the violation was "clear" or not, and has declared itself free to demand disgorgement and/or restitution even where the alleged conduct is "common." *Id.* Under the

---

4, 2016), https://www.ftc.gov/news-events/press-releases/2016/10/us-court-finds-ftcs-favor-imposes-record-13-billion-judgment.

[3] Although the FTC's Policy Statement and subsequent withdrawal of that statement specifically address monetary remedies in antitrust cases, the power for such remedies also arises from Section 13(b). The FTC's statements thus relate directly to its perceived authority to seek monetary remedies under the authority to seek "injunctions."

7

Commission's new view, it sees no need for a "heightened standard for disgorgement." *Id.*

The effects of this change have been clear. In recent years, the FTC has increasingly pursued actions in federal court, where it can pursue disgorgement and restitution, as opposed to administrative actions before an FTC administrative law judge ("ALJ"), where it cannot. In 2017 alone, the FTC obtained **$5.29 billion** through court orders for restitution and disgorgement.[4] By contrast, immediately before its policy change, the FTC sought and obtained in 2011 only $223.7 million.[5] The Commission's newly aggressive stance to restitution thus has exploded the value of such awards **by more than 23 times** over the span of only a few years.

Given the FTC's mounting campaign to seek monetary relief under Section 13(b), it is critical that this Court determine whether the Commission possesses such expansive powers.

---

[4] FTC, *A Recap of 2017: FTC's Annual Highlights* (Apr. 10, 2018), https://www.ftc.gov/news-events/blogs/business-blog/2018/04/recap-2017-ftcs-annual-highlights.

[5] FTC, Annual Highlights 2011: *Stats & Data* (Feb. 29, 2012), https://www.ftc.gov/reports/annual-report-standard/ftc-2012/stats-data.

8

### B. The Commission's Use of Section 13(b) to Extract Large Monetary Awards Harms Businesses.

As the 2012 Policy Statement Withdrawal makes clear, the FTC will not hesitate to punish "common" industry practice by seeking substantial monetary awards. That means businesses could face potential liability for millions or, as here, *billions* of dollars for common industry practices that may not even clearly violate the FTC Act. The danger to business is heightened by the FTC's failure to issue guidance as to when it will seek such remedies. In 2015, two FTC Commissioners criticized the Commission for the lack "meaningful guidance on when [businesses] will be forced to disgorge their profits for an antitrust violation," and noted that "[t]his uncertainty and lack of predictability faced by firms is unacceptable."[6]

This uncertainty is magnified because, under Section 13(b), the Commission need not prove the amount of restitution with precision, and may simply seek an award that "reasonably approximates the defendant's unjust gains." *Commerce Planet*, 815 F.3d at 603. The burden then falls to the defendant to show the FTC has overstated the harm. *Id.* at 604. Under that rubric, "[a]ny risk of uncertainty . . . falls on the wrongdoer." *Id.* (citation and internal quotation marks omitted).

---

[6] FTC, *Separate Statement of Commissioners Maureen K. Ohlhausen and Joshua D. Wright*, Federal Trade Commission v. Cephalon, Inc. 2-3 (May 28, 2015), https://www.ftc.gov/public-statements/2015/05/separate-statement-commissioners-maureen-k-ohlhausen-joshua-d-wright.

9

The Commission's expanded use of monetary remedies, and the uncertainty and breadth of those awards, underscores the importance of the issues at stake in the petition for rehearing en banc.

### III. OTHER FEDERAL AGENCIES FREQUENTLY SEEK SIMILARLY EXPANSIVE MONETARY AWARDS UNDER THE GUISE OF INJUNCTIVE RELIEF.

The importance of this issue extends beyond the FTC Act. Other federal agencies rely on their power to obtain injunctive relief to seek substantial awards of restitution, disgorgement and other forms of monetary relief.

The Food, Drug, and Cosmetic Act ("FDCA"), for example, grants the Food and Drug Administration (FDA) the power to "restrain" violations. 21 U.S.C. § 332(a). The FDA, however, has repeatedly used this limited equitable power to demand substantial disgorgement and restitution awards. *See, e.g., United States v. Lane Labs-USA Inc.*, 427 F.3d 219, 234 (3d Cir. 2005) (discussing consent decrees ordering disgorgement with Abbott Labs ($100 million), Wyeth-Ayerst ($30 million), and Schering-Plough ($500 million)). Before *Kokesh*, courts generally affirmed the FDA's ability to seek these remedies despite noting it is "a close call" because "the FDCA does not specifically authorize restitution." *Id.* at 223; *see also United States v. Rx Depot, Inc.*, 438 F.3d 1052, 1061 (10th Cir. 2006); *United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750, 764 (6th Cir. 1999).

10

Other agencies similarly seek disgorgement or restitution where only the power for injunctions is granted by Congress. For example, the D.C. Circuit rejected an attempt by the Department of Justice to seek disgorgement under the civil RICO statute because the statute's authorization of injunctive relief is "limited to forward-looking remedies." *United States v. Philip Morris USA Inc.*, 396 F.3d 1190, 1198 (D.C. Cir. 2005). But the Eleventh Circuit held, in another pre-*Kokesh* decision, that the Commodity Futures Trading Commission could recover restitution under a provision of the Commodity Exchange Act that authorizes injunctions. *Commodity Futures Trading Comm'n v. Wilshire Inv. Mgmt Corp.*, 531 F.3d 1339, 1345 (11th Cir. 2008).

Resolving this issue is thus critically important as the FTC is not alone in using the power to obtain injunctive relief to seek disgorgement or restitution. Especially after *Kokesh*, this Court should bring that ever-expanding overreach to an end.

## CONCLUSION

For the foregoing reasons, the Court should grant the petition for rehearing en banc.

Dated: March 14, 2019

Respectfully submitted,

/s/ *Ilana H. Eisenstein*

Ilana H. Eisenstein
DLA Piper LLP (US)
One Liberty Place
1650 Market Street,
Suite 5000
Philadelphia, PA 19103-7300
ilana.eisenstein@dlapiper.com
T: (215) 656-3351
F: (215) 606-3351

Adam Pierson
DLA Piper LLP (US)
1900 N. Pearl Street
Suite 2200
Dallas, Texas 75201
adam.pierson@dlapiper.com
T: (214) 743-4512
F: (214) 743-4545

Daryl Joseffer
Janet Galeria
U.S. Chamber Litigation Center
1615 H Street, NW
Washington, DC 20062
djoseffer@uschamber.com
jgaleria@uschamber.com

***Attorneys for Amicus Curiae United States Chamber of Commerce***

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the lengths permitted by Ninth Circuit Rule 29-2(c)(2). The brief contains fewer than 2600 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f). The brief complies with Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared using Microsoft Office Word 2016 and has a typeface of 14-point Times New Roman.

Dated:  March 14, 2019                    /s/ *Ilana H. Eisenstein*
                                          Ilana H. Eisenstein

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2019, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: March 14, 2019　　　　　　　　　　*/s/ Ilana H. Eisenstein*
　　　　　　　　　　　　　　　　　　　　Ilana H. Eisenstein