No. 16-17197

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

FEDERAL TRADE COMMISSION

*Plaintiff-Appellee,*

v.

AMG CAPITAL MANAGEMENT, LLC, *et al.,*

*Defendants-Appellants*

On Appeal from the United States District Court
for the District of Nevada
No. 2:12-cv-00536-GMN-VCF
Hon. Gloria M. Navarro

---

## BRIEF OF *AMICUS CURIAE* CAUSE OF ACTION INSTITUTE IN
## SUPPORT OF DEFENDANTS-APPELLANTS' PETITION FOR
## REHEARING EN BANC

---

John J. Vecchione
Michael Pepson
Jessica Thompson
CAUSE OF ACTION INSTITUTE
1875 Eye Street, NW, Suite 800
Washington, D.C. 20006
Phone: 202.499.6937
Fax: 202.330.5842

March 14, 2019                    *Attorneys for Amicus Curiae*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* Cause of Action Institute is a nonprofit corporation. It has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.

# TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ........................................ i

TABLE OF CONTENTS ............................................................................... ii

TABLE OF AUTHORITIES ......................................................................... iii

INTEREST OF AMICUS CURIAE ................................................................. 1

SUMMARY OF ARGUMENT ........................................................................ 2

ARGUMENT ............................................................................................. 4

   I.   FTC's "EXPANSION" OF SECTION 13(B) VIOLATES SEPARATION OF POWERS4

     A.  Congress Established Multi-Step Process for Recovery of Money Damages
        ............................................................................................ 4

     B.  FTC Rejects Congress's Statutory Scheme ..................................... 7

     C.  FTC Uses "Test Cases" to Expand Its Section 13(b) Powers ............ 9

     D.  Inapposite Precedent Interpreting Different Statutes Enforced By Different
        Agencies Cannot Override Plain Language ................................... 11

     E.  Separation of Powers Principles Necessitate En Banc Review ......... 15

   II.   FTC's SECTION 13(B) POWER-GRAB DESERVES NO DEFERENCE ............ 16

   III.  "NET IMPRESSION" TEST FATALLY FLAWED ................................... 17

CONCLUSION ....................................................................................... 18

Form 8.   CERTIFICATE OF COMPLIANCE FOR BRIEFS

Form 15. CERTIFICATE OF SERVICE FOR ELECTRONIC FILING

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Ass'n des Eleveurs v. Becerra,*
   870 F.3d 1140 (9th Cir. 2017) ........................................................... 16

*City of Arlington v. Federal Communications Commission,*
   569 U.S. 290 (2013) ............................................................................ 11

*Common Cause v. Federal Election Commission,*
   842 F.2d 436 (D.C. Cir. 1988) .......................................................... 12

*Connecticut National Bank v. Germain,*
   503 U.S. 249 (1992) ............................................................................ 12

*Consumer Product Safety Commission  v. GTE Sylvania, Inc.,*
   447 U.S. 102 (1980) ............................................................................ 15

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and*
   *Construction Trades Council,*
   485 U.S. 568 (1988) ............................................................................ 15

*Encino Motorcars, LLC v. Navarro,*
   138 S. Ct. 1134 (2018) ....................................................................... 15

*Federal Trade Commission v. Commerce Planet, Inc.,*
   815 F.3d 593 (9th Cir. 2016) ............................................................. 16

*Federal Trade Commission v. Dalbey,*
   No. 11-cv-1396-RBJ-KLM, 2012 WL 1694602 (D. Colo. May 15,
   2012) .................................................................................................... 9

*Federal Trade Commission v. Figgie International, Inc.,*
   994 F.2d 595 (9th Cir. 1993) ............................................................... 7

*Federal Trade Commission v. H. N. Singer, Inc.,*
   668 F.2d 1107 (9th Cir. 1982) .......................................................... 13

*Federal Trade Commission v. Hornbeam Special Situations, LLC,*
   No. 1:17-cv-3094-TCB, 2018 WL 6254580 (N.D. Ga. Oct. 15,
   2018) .................................................................................................. 10

iii

*Federal Trade Commission v. National Health Aids, Inc.,*
   108 F. Supp. 340 (D. Md. 1952)............................................................................4

*Federal Trade Commission v. Shire Viropharma, Inc.,*
   No. 18-1807, 2019 WL 908577 (3d Cir. Feb. 25, 2019)........................13, 14, 15

*Federal Trade Commission v. Southwest Sunsites, Inc.,*
   665 F.2d 711 (5th Cir. 1982) .............................................................................5, 7

*Federal Trade Commission v. Wellness Support Network, Inc.,*
   No. 10-cv-04879-JCS, 2014 WL 644749 (N.D. Cal. Feb. 19, 2014).................18

*Finnegan v. Leu,*
   456 U.S. 431 (1982).............................................................................................12

*Fogerty v. Fantasy, Inc.,*
   510 U.S. 517 (1994).............................................................................................14

*Food and Drug Administration v. Brown & Williamson Tobacco Corp.,*
   529 U.S. 120 (2000).............................................................................................13

*Grace v. Collector of Customs,*
   79 F. 315 (9th Cir. 1897) ....................................................................................14

*Heater v. Federal Trade Commission,*
   503 F.2d 321 (9th Cir. 1974) ................................................................................5

*John Hancock Mutual Life Insurance Co. v. Harris Trust & Savings Bank,*
   510 U.S. 86 (1993)...............................................................................................17

*Kokesh v. Securities and Exchange Commission,*
   137 S. Ct. 1637 (2017).....................................................................................3, 16

*Ledbetter v. Goodyear Tire & Rubber Co.,*
   550 U.S. 618 (2007).............................................................................................14

*Louisiana Public Service Commission v. Federal Communications Commission,*
   476 U.S. 355 (1986)..........................................................................................4, 12

*Lyng v. Payne,*
    476 U.S. 926 (1986) ................................................................................ 4

*Payne v. Tennessee,*
    501 U.S. 808 (1991) .............................................................................. 16

*Pennington v. United States.,*
    48 Ct. Cl. 408 (1913) ............................................................................. 5

*Porter v. Warner Holding Co.,*
    328 U.S. 395 (1946) ........................................................................ 13, 14

*Railway Labor Executives' Ass'n v. National Mediation Bd.,*
    29 F.3d 655 (D.C. Cir. 1994)(en banc) .............................................. 12

*Sullivan v. Finkelstein,*
    496 U.S. 617 (1990) .............................................................................. 15

*United States v. Approximately 64,695 Pounds of Shark Fins,*
    520 F.3d 976 (9th Cir. 2008) .............................................................. 15

*United States v. Parkinson,*
    240 F.2d 918. (9th Cir. 1956) ............................................................. 14

*United States v. Philip Morris USA, Inc.,*
    396 F.3d 1190 (D.C. Cir. 2005) ......................................................... 13

*Whitman v. American Trucking Ass'ns.,*
    531 U.S. 457 (2001) .............................................................................. 13

*Yith v. Nielsen,*
    881 F.3d 1155 (9th Cir. 2018) ............................................................ 15

*Zabriskie v. Federal National Mortgage Association,*
    912 F.3d 1192 (9th Cir. 2019) ............................................................ 16

**Procedural Rules**

FRAP 29(a)(4)(E) .................................................................................... 1

**Regulations**

16 C.F.R. §1.98(c) .................................................................................. 6

v

**Statutes**

15 U.S.C. §45 ..............................................................................................6

15 U.S.C. §45(c) .........................................................................................7

15 U.S.C. §45(g) .........................................................................................7

15 U.S.C. §45(l) ..........................................................................................6

15 U.S.C. §45(m) ........................................................................................6

15 U.S.C. §53(a) .........................................................................................4

15 U.S.C. §53(b) ..................................................................................passim

15 U.S.C. §57(b) ..................................................................................passim

15 U.S.C. §57b(a)(1) ...................................................................................6

15 U.S.C. §57b(a)(2) ...........................................................................6, 7, 9

15 U.S.C. §57b(b) .......................................................................................7

15 U.S.C §57b(d) .........................................................................................9

15 U.S.C. §57b(e) .......................................................................................5

**Other Authorities**

A Brief Overview of the Federal Trade Commission's Investigative
    and Law Enforcement Authority, FTC (July 2008),
    https://www.ftc.gov/about-ftc/what-we-do/enforcement-authority .....................9

David FitzGerald, The Genesis of Consumer Protection Remedies
    Under Section 13(b) of the FTC Act, FTC,
    https://www.ftc.gov/sites/default/files/documents/public_events/FT
    C%2090th%20Anniversary%20Symposium/fitzgeraldremedies.pdf ..........10, 11

Federal Trade Commission Fiscal Year 2020 Congressional Budget
    Justification, FTC (March 11, 2019),
    https://www.ftc.gov/system/files/documents/reports/fy-2020-
    congressional-budget-justification/fy_2020_cbj.pdf.........................................17

<u>Federal Trade Commission Operating Manual Chapter 11 Judicial
  Enforcement</u>, FTC,
  https://www.ftc.gov/sites/default/files/attachments/ftc-
  administrative-staff-manuals/ch11judiciaryenforcement.pdf ..........................7, 8

<u>Injunctions, Divestiture and Disgorgement</u>, FTC,
  https://www.ftc.gov/sites/default/files/documents/public_events/ftc
  -90th-anniversary-symposium/040923transcript007.pdf ...............................8, 10

J. Howard Beales & Timothy Muris, *Striking the Proper Balance:
  Redress Under Section 13(b) of the FTC Act*, 79 ANTITRUST L.J. 1
  (2013) ..........................................................................................................11

Michael D. Pepson & John N. Sharifi, *Lego v. Twomey: The
  Improbable Relationship Between an Obscure Supreme Court
  Decision and Wrongful Convictions*, 47 AM. CRIM. L. REV. 1185
  (2010) ..........................................................................................................16

Peter C. Ward, *Restitution for Consumers Under the Federal Trade
  Commission Act: Good Intentions or Congressional Intentions*, 41
  AM. U. L. REV. 1139 (1992) ......................................................................6

S. Rep. 93-151 (1973) ..................................................................................5

<u>Statement of Commissioner Maureen K. Ohlhausen Dissenting from
  the Commission's Decision to Withdraw its Policy Statement on
  Monetary Equitable Remedies in Competition Cases</u>, FTC (July
  31, 2012),
  https://www.ftc.gov/sites/default/files/documents/public_statement
  s/statement-commissioner-maureen-
  k.ohlhausen/120731ohlhausenstatement.pdf ...........................................9

<u>Stats & Data 2017</u>, FTC, https://www.ftc.gov/reports/annual-
  highlights-2017/stats-and-data ..............................................................11

## INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* Cause of Action Institute ("CoA") is a nonprofit, nonpartisan government oversight organization that uses investigative, legal, and communications tools to educate the public on how government accountability, transparency, the rule of law, and principled enforcement of the separation of powers protect liberty and economic opportunity. As part of this mission, it works to expose and prevent government and agency misuse of power by appearing as *amicus curiae* before federal courts. *See, e.g., McCutcheon v. FEC*, 134 S. Ct. 1434, 1460 (2014).

CoA has a particular interest in challenging the Federal Trade Commission's ("FTC" or "Commission") ultra vires "expansion" of its enforcement powers by bringing "test cases," and curtailing FTC's pattern and practice of separation-of-powers violations in pursuit of its regulatory ambitions. In order to fulfill this mission, CoA has defended businesses, *pro bono publica*, against FTC enforcement actions in federal courts, *see, e.g., LabMD v. FTC*, 1:14-cv-00810-WSD, 2014 WL 1908716 (N.D. Ga. May 12, 2014), *aff'd*, 776 F.3d 1275 (11th Cir. 2015); *FTC v. D-Link Systems*, 17-cv-00039-JD (N.D. Cal.), and before the Commission, *see, e.g.,*

---

[1]    Pursuant to FRAP 29(a)(4)(E), *amicus curiae* states that no counsel for a party other than CoA authored this brief in whole or in part, and no counsel or party other than CoA made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *amicus curiae* or its counsel made a monetary contribution to its preparation or submission. All parties have consented to the filing of this brief.

*In re: LabMD, Inc.*, FTC Dkt. No. 9357. *See also FTC v. Vylah Tec*, 727 F. App'x 998 (11th Cir. 2018)(vacating injunction in part).

CoA has also represented *amici* who chose to speak out against FTC overreach, *see LabMD, Inc. v. FTC*, 891 F.3d 1286 (11th Cir. 2018)(vacating FTC order), and participated as an *amicus* in FTC matters in this Circuit, *see FTC v. AT&T Mobility*, 883 F.3d 848 (9th Cir. 2018)(en banc).

## SUMMARY OF ARGUMENT

FTC has conscripted the courts to transmogrify the limited purpose of Section 13(b), restraining conduct pending administrative proceedings before the Commission, to the broadest possible grant of power to administrative agencies, ranging from shutting down businesses, imposing receiverships, seizing citizens' entire personal assets and disgorging them—all without express or even implied grant of Congressional authority. FTC has convinced courts, including this one, to bless its invented Section 13(b) powers via a sophisticated long-term litigation strategy through which it slowly and methodically advanced novel, atextual legal arguments in "test cases" involving egregious facts.

Bad facts make bad law. Once FTC got its foot in the door by convincing one district court to buy the changes to Section 13(b), it just kept on expanding its powers by suing garden-variety fraudsters and then citing back to this precedent to incrementally develop caselaw and dicta legitimizing its power-grab. FTC's

calculated litigation strategy for evading carefully crafted congressional limitations on its authority worked: courts accepted FTC's new power claims in these cases based primarily on the fact that other courts had done so, without analyzing the underlying basis of Congress's grant of powers to FTC. These successes cannot retroactively alter Section 13(b)'s statutory text and should not be permitted to stand. Neither the plain language nor the legislative history of the FTC Act support this extraordinary use of power by an administrative agency.

As set forth in AMG's Petition and Judge O'Scannlain's special concurrence, joined by Judge Bea, the panel decision is at odds with the Supreme Court's decision in *Kokesh v. SEC*, 137 S. Ct. 1637 (2017),[2] and contrary to the plain language, structure, purpose, and history of Section 13(b). This case also raises questions of exceptional importance that come up dozens of times every year, burdening this Circuit with litigation that Congress intended to be pursued instead through FTC's administrative process. For these reasons, this Court should grant AMG's Petition.

---

[2] CoA agrees with but will not repeat AMG's (and WLF's) arguments here. Nor will CoA burden this Court with repetition of the well-reasoned special concurrences authored by Judge O'Scannlain and Judge Bea. However, CoA notes that the issues raised by AMG's Petition overlap with those raised by another fully briefed Petition for Rehearing En Banc in this Circuit, which remains pending. *See* Pet. for Rehearing En Banc, Dkt. 51, *FTC v. Publishers Business Services,* No. 17-15600 (9th Cir., filed Oct. 15, 2018); PBS Reply, Dkt. 61 (filed Jan. 10, 2019).

## ARGUMENT

I.   **FTC's "Expansion" of Section 13(b) Violates Separation of Powers**

   **A. Congress Established Multi-Step Process for Recovery of Money Damages**

FTC is a creature of statute, which possesses only those powers that Congress chooses to confer upon it. *See La. Pub. Serv. Com v. FCC*, 476 U.S. 355, 374 (1986) ("agency literally has no power to act…unless and until Congress confers power upon it."); *Lyng v. Payne*, 476 U.S. 926, 937 (1986).

In 1938, Congress enacted Section 13, which for the first time delegated to FTC authority to seek preliminary (*but not permanent*) injunctive relief related to violations of Section 12 of the FTC Act, 15 U.S.C. §52, which prohibits deceptive advertising related to food, drugs, devices, services, or cosmetics. Wheeler-Lea Act of 1938, ch. 49, 52 Stat. 111,115 (codified as amended at 15 U.S.C. §53(a)). This stop-gap allowed FTC to temporarily halt such practices pending completion of the administrative process. *See, e.g., FTC v. Nat'l Health Aids*, 108 F. Supp. 340, 341 (D. Md. 1952)(applying former version of §53).

In 1973, Congress amended Section 13 to provide FTC authority to put an immediate stop to other deceptive practices by seeking a TRO or preliminary injunction in federal court pending completion of the administrative process. Trans-Alaska Pipeline Authorization Act, §408(b),(f), Pub. L. No. 93-153, 87 Stat. 576, 591-92 (1973)(codified at 15 U.S.C. §53(b)). *See, e.g., FTC v. Sw. Sunsites, Inc.,*

4

665 F.2d 711, 720 (5th Cir. 1982)(Section 13 authorizes enjoining ongoing alleged deception while freezing assets pending completion of administrative and Section 19 judicial processes). Congress also added a "proviso" authorizing issuance of a "permanent injunction" in "proper cases" after "proper proof." 15 U.S.C. §53(b).[3] *Cf. Pennington v. U.S.*, 48 Ct. Cl. 408, 415 (1913)(applying "proviso" canon).

In 1974, this Court held that FTC was not allowed to obtain restitution through an administrative cease-and-desist order. *See Heater v. FTC,* 503 F.2d 321, 323-24 (9th Cir. 1974)(rejecting FTC's attempt to impose monetary liability *"before giving notice* that the prior conduct was within the statutory purview." (emphasis added)). Then in 1975, against the backdrop of *Heater*—and *before* FTC first claimed that Section 13(b) authorized "equitable monetary relief"—Congress responded by enacting Section 19 of the FTC Act.[4]

Section 19 for the first time provided FTC with statutory authorization to obtain "restitution" and other backward-looking remedies under limited

---

[3]     *See* S. Rep. 93-151, 30-31 (1973)("The purpose of [Section 13(b)] is to permit...[FTC] to bring an immediate halt to unfair or deceptive acts or practices when...[a]t the present time such practices might continue for several years until agency action is completed." FTC "will have the ability, in the routine fraud case, to merely seek a permanent injunction....").

[4]     Contrary to FTC, Section 19 does not express any intention of expanding FTC's injunction powers under Section 13. *See* 15 U.S.C. §57b(e)("Nothing in this section shall be construed to affect any authority of the Commission under any other provision of law."). Instead, its purpose was to preserve FTC's litigating position in *Heater*. *See* Ward, *infra*, at 1193-94.

5

circumstances, subject to a three-year statute of limitations. *See* FTC Act, §19, tit.

II, §206(a), Pub. L. No. 93-637, 88 Stat. 2183, 2201 (1975)(codified at 15 U.S.C.

§57b). *See generally* Peter Ward, *Restitution for Consumers Under the Federal*

*Trade Commission Act: Good Intentions or Congressional Intentions,* 41 AM. U. L.

REV. 1139 (1992). This reflected Congress' carefully considered decision to balance

FTC's desire to obtain monetary relief against basic fair-notice due process

principles: To recover damages, FTC would have to prove that "a reasonable man

would have known under the circumstances" that the conduct subject to the cease-

and-desist order "was dishonest or fraudulent." 15 U.S.C. §57b(a)(2).

Congress also deliberately imposed additional procedural hurdles on FTC.

Unless FTC first used its Magnuson-Moss rulemaking authority to ban a particular

"unfair or deceptive" act or practice, *see* 15 U.S.C. §57b(a)(1), FTC could only

obtain money damages under Section 19 through a multi-step process: first, FTC

would need to obtain a final cease-and-desist order against an alleged violator

through the FTC's in-house administrative process,[5] *see* 15 U.S.C. §§45,57b(a)(2).

Next, subject to judicial review, *see* 15 U.S.C. §45(c), and only after the order

---

[5]     If a respondent violates a final order, it is liable for a civil penalty for each
violation. *See* 16 C.F.R. §1.98(c). The penalty is assessed by a district court in a suit
brought to enforce the Commission's order. 15 U.S.C. §45(l),(m). Section
5(m)(1)(B) provides that penalties may be imposed if the individual acted with
"actual knowledge" that the conduct was unlawful. Like Section 19, Congress
similarly prohibited imposition of exemplary or punitive damages. 15 U.S.C. §57(b).

became final, *see* 15 U.S.C. §45(g), FTC could obtain monetary relief for conduct related to the final cease-and-desist order if it could also prove a reasonable person would understand such conduct to be dishonest or fraudulent.[6] 15 U.S.C. §57b(a)(2),(b); *see Sw. Sunsites*, 665 F.2d at 719 ("a consumer redress action as a continuous two-phase process, the first phase being administrative adjudication, and the second judicial determination of appropriate redress").

### B. FTC Rejects Congress's Statutory Scheme

Initially, FTC seemingly accepted that Section 19 allowed it to obtain consumer redress, but Section 13(b) did not. Particularly compelling evidence of this can be found in a version of FTC's own Operating Manual predating "judicial precedents regarding permanent injunctions under S [sic] 13 (b)." Judicial Enforcement, Ch. 11, §.5.7, p.25, FTC Operating Manual, at https://www.ftc.gov/sites/default/files/attachments/ftc-administrative-staff-manuals/ch11judiciaryenforcement.pdf. There, FTC discussed at length and drew a sharp distinction between "Consumer redress following the issuance of a final adjudicated cease and desist order under FTCA § 19(a)(2)" and "Temporary and permanent injunctions under FTCA § 13." *See id.* §.1.1, p.2. Yet, it says nothing

---

[6] This effectively prevented FTC from obtaining monetary relief in cases where it announced for the first time in the administrative action that the conduct at issue violates Section 5. *See FTC v. Figgie Int'l*, 994 F.2d 595, 603 (9th Cir. 1993)("Section 19 liability must not be a rubber stamp of Section 5 liability.").

7

whatsoever about FTC seeking disgorgement, restitution, or any other "equitable monetary relief" under Section 13(b). Nor does it mention "asset freezes" or "receivers."

But FTC eventually balked at Section 19's procedural hurdles and sought a "shortcut." As a former FTC official would later highlight, "the problem" with Section 19 was the procedural protections Congress chose to provide respondents:

> You needed three separate lawsuits to get final relief. You had to bring a preliminary injunction in federal court and you had to bring a complete Section 5 case, administrative case, all the way through, and then you have to go for a Section 19 case. That is time consuming, and it is very inefficient.
>
> So, actually by ... [1982], the Commission was already looking at alternatives, because at the very tail end of Section 13(b)...there are 14 key words, in proper cases the Commission may seek, and after proper proof the court may issue a permanent injunction.
>
> And so, as a practical matter, today those 14 words are the basis for the 13(b) program. This legislative history doesn't mention very much about what that little proviso was intended to do, except that it was thought that, well, the Commission could go to court in routine fraud cases and get a permanent injunction....[7]

FTC's current website echoes this: "Section 13(b) is preferable to the adjudicatory process because, in such a suit, the court may award both prohibitory and monetary equitable relief in one step." *See* https://www.ftc.gov/about-ftc/what-we-do/enforcement-authority.

---

[7]     Transcript, Injunctions, Divestiture and Disgorgement, FTC at 90 Symposium,                                                           pp.12-13, https://www.ftc.gov/sites/default/files/documents/public_events/ftc-90th-anniversary-symposium/040923transcript007.pdf.

8

This "shortcut" also relieved FTC of its burden of proving up Section 19's scienter requirement,[8] *see* 15 U.S.C. §57b(a)(2), and untethered FTC from Section 19's 3-year statute of limitations, *see id.* §57b(d).[9] (This case illustrates why this matters: FTC initiated its investigation in 2002 but did not sue until 2012, thereby artificially inflating its damages calculations, in litigation announcing for the first time that a payday lending company's literally true contractual terms could be "deceptive." FTC therefore could not have obtained monetary relief under Section 19, even if it obtained a cease order via FTC's administrative process.)

### C. FTC Uses "Test Cases" to Expand Its Section 13(b) Powers

Given the absence of any language in the actual text of Section 13(b) authorizing monetary relief, "equitable" or otherwise, how is it, then, that FTC convinced the courts to adopt its policy preferences over those mandated by Congress?[10] A former Assistant Director for Litigation in FTC's Bureau of

---

[8] FTC has now abandoned any pretense of limiting its use of Section 13(b) to circumstances involving knowingly wrongful conduct. *See also* Statement of Commissioner Maureen Ohlhausen Dissenting from the Commission's Decision to Withdraw its Policy Statement on Monetary Equitable Remedies in Competition Cases (July 31, 2012), *at* https://www.ftc.gov/sites/default/files/documents/public_statements/statement-commissioner-maureen-k.ohlhausen/120731ohlhausenstatement.pdf

[9] Courts have held that Section 13(b) actions are not subject to *any* statute of limitations. *See FTC v. Dalbey*, 11-cv-1396-RBJ-KLM, 2012 WL 1694602, at *2-3 (D. Colo. May 15, 2012).

[10] *Cf. FTC v. Hornbeam Special Situations*, 1:17-cv-3094-TCB, 2018 WL 6254580, at *5 (N.D. Ga. Oct. 15, 2018)("[I]gnoring the clearly distinct statutory

Consumer Protection ("BCP"), who was a key architect of the FTC's expansion of its Section 13(b) powers, has offered insights into FTC's long-term strategic litigation campaign to invade the legislative domain. *See* David Fitzgerald, *The Genesis of Consumer Protection Remedies Under Section 13(b) of the FTC Act*, at https://www.ftc.gov/sites/default/files/documents/public_events/FTC%2090th%20 Anniversary%20Symposium/fitzgeraldremedies.pdf. He advised:

- "*Step cautiously when proceeding boldly.* In exploring its Section 13(b) authority, the Commission moved warily, selecting cases with compelling facts…before pursuing a more ambitious agenda."[11] *Id.* at 21-22.

- "*Don't overlook the value of basic research. Neither the text of Section 13(b) nor its legislative history disclosed a basis to argue for broad equitable relief. Instead of stopping there*, however, research into the case law interpreting statutes conferring *similar injunctive authority on other agencies led to the Porter line of cases*, providing critical support for a broad interpretation of Section 13(b)." *Id.* at 22 (emphasis added).

- "*Being out of the spotlight can be an advantage.…*For those of us who saw the development of Section 13(b) as important…it allowed us to pursue our efforts with little interference." *Id.*

- "*Don't let naysayers discourage pursuit of a promising theory or approach.* When the early cases were proposed, *many people within the Commission predicted they would be unsuccessful, because Section 13(b) authorized only injunctive relief.*" *Id.* (emphasis added).

---

language risks making the Court a super-legislature; it would be substituting its own judgment for Congress's.").

[11]     *Accord* Transcript, Injunctions, Divestiture and Disgorgement, FTC at 90 Symposium, p.17 (FTC "went from a statute that basically provides a one-sentence permanent injunction proviso…and it has on a step-by-step basis expanded that."), https://www.ftc.gov/sites/default/files/documents/public_events/ftc-90th-anniversary-symposium/040923transcript007.pdf

Echoing this, a former FTC Chairman and Director of the FTC BCP have explained: "Admittedly, this use of Section 13(b) was something of a 'stretch.' … [T]here was some internal opposition, arguing, with considerable force, that the 1975 amendments provided the exclusive road to financial relief." J. Howard Beales & Timothy Muris, *Striking the Proper Balance: Redress Under Section 13(b) of the FTC Act*, 79 ANTITRUST L.J. 1, 2 (2013).

FTC proceeded anyway, moving warily like a fox sneaking into the henhouse—with staggering success.[12] According to FTC, in 2017 alone it obtained $5.29 billion in redress and disgorgement, without including amounts suspended due to defendants' inability to pay. *See* FTC 2017 Annual Report, *at* https://www.ftc.gov/reports/annual-highlights-2017/stats-and-data. All of this was obtained without the safeguards Congress granted defendants under Section 19.

### D. Inapposite Precedent Interpreting Different Statutes Enforced By Different Agencies Cannot Override Plain Language

FTC's mansion of favorable Section 13(b) precedent is built upon statutory quicksand. There is no textual foundation for FTC's claimed Section 13(b) powers. 15 U.S.C. §53(b). It is black-letter law that agencies only possess powers Congress *affirmatively chooses* to delegate to them. *La. Pub. Serv. Com.*, 476 U.S. at 374.

---

[12] *But cf. City of Arlington v. FCC*, 569 U.S. 290, 307 (2013)("The fox-in-the-henhouse syndrome is to be avoided…by taking seriously, and applying rigorously, in all cases, statutory limits on agencies' authority.").

11

Congress did not do so. That should end the matter. *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

Congress need not expressly negate an agency's claimed administrative powers, as FTC appears to assume; "[w]ere courts to *presume* a delegation of power absent an express *withholding* of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the Constitution as well." *Ry. Labor Executives' Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 671 (D.C. Cir. 1994)(en banc).

Nor is there any indication in Section 13(b)'s sparse legislative history that Congress intended to provide FTC with broad authority to obtain "equitable monetary relief" or even considered the possibility.[13] That watchdog of congressional intent didn't bark here. *See Common Cause v. FEC*, 842 F.2d 436, 447-48 (D.C. Cir. 1988); *see also Finnegan v. Leu*, 456 U.S. 431, 441 n.12 (1982). If it were otherwise, there would have been no reason to enact Section 19, a more specific statute, only two years later. A contrary result renders Section 19 a nullity

---

[13]     *See* Beales & Muris, *supra*, at 4 ("[T]here is no hint in the legislative history that Congress intended to grant the FTC broad authority to seek monetary relief when it enacted Section 13(b)....[T]wo years *after* it enacted Section 13(b), Congress did grant the FTC authority to seek monetary relief in carefully circumscribed cases. This authority would have been wholly unnecessary under the current Commission's new reading of Section 13(b), raising questions about the validity of this interpretation.").

12

and does violence to the statutory scheme. *See FDA v. Brown & Williamson*, 529
U.S. 120, 132-33 (2000); *see also U.S. v. Philip Morris*, 396 F.3d 1190, 1200 (D.C.
Cir. 2005)(rejecting disgorgement as relief under RICO).

Undeterred, FTC uncovered a hidden "elephant" of new powers within the
legislative "mousehole" of Section 13(b)'s permanent injunction proviso. *But see
Whitman v. Am. Trucking Ass'ns.*, 531 U.S. 457, 468 (2001)("Congress, we have
held, does not alter the fundamental details of a regulatory scheme in vague terms or
ancillary provisions...."). The vehicle FTC used to do this was judicial precedent
interpreting other statutes enforced by other agencies (in particular, a seventy-year-
old Supreme Court case, *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946)). *Cf.
FTC v. Shire Viropharma, Inc.*, 18-1807, 2019 WL 908577, at *9 n.16 (3d Cir. Feb.
25, 2019)(rejecting this line of argument "[g]iven the unique history and structure of
the FTC Act").[14] FTC effectively admits this. *See, e.g.*, FTC Opp. to Pet. for
Rehearing En Banc, Dkt. No. 57, *FTC v. PBS*, at 10-11 (filed Dec. 20, 2018)("*Porter*
and *Mitchell* form the foundation of this Court's long established holding that
equitable monetary relief is available under Section 13(b)....").

This should not be permitted to stand. Judicial precedent interpreting different
statutes (enforced by different agencies) cannot trump plain language and structure.

---

[14]     Appellate courts have primarily relied on *Porter* as authority for this dramatic
expansion of FTC's powers. *See FTC v. Singer*, 668 F.2d 1107, 1111 (9th Cir.
1982).

See, e.g., *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 640 (2007)(rejecting "analogies to other statutory regimes"); *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 522-25 (1994)(same); *see Shire*, 2019 WL 908577, at *8 ("We 'look to other statutes pertaining to the same subject matter which contain similar terms' only if 'the ordinary meaning of a statute and the statute's legislative history fail to provide sufficient guidance to a term's meaning.'" (citation omitted)); *see also Grace v. Collector of Customs*, 79 F. 315, 319 (9th Cir. 1897).

*Porter* should also be viewed in context. Congress granted the Price Controls Board broad powers under the Emergency Price Control Act to limit profiteering during wartime. Unlike the language in Section 13(b) allowing injunctive relief only, Section 205(a) allowed that agency to apply for a "permanent or temporary injunction restraining order, ***or other order***...." *Porter*, 328 U.S. at 397 (emphasis added); *see id.* at 405 (Rutledge, J., dissenting)(rejecting broad construction of "other order" to include restitution). *Porter* "constru[ed] the statutory language 'other order' to include the remedy of restitution." *U.S. v. Parkinson*, 240 F.2d 918, 920 n.6. (9th Cir. 1956).

FTC may also seek to elide the lack of any textual basis for its claimed 13(b) powers by advancing a "congressional ratification" argument based on "subsequent legislative history." This should be rejected out-of-hand. "Arguments based on subsequent legislative history, like arguments based on antecedent futurity, should

14

not be taken seriously...." *Sullivan v. Finkelstein*, 496 U.S. 617, 631-32 (1990) (Scalia, J., concurring in part); *see CPSC v. GTE Sylvania*, 447 U.S. 102, 117 (1980)("views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one").

This Court should likewise reject any attempt by FTC to trot out the old adage that remedial statutes should be broadly construed. *See, e.g., Shire*, 2019 WL 908577, at \*9; *see also Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018). If anything, Section 13(b) should be *narrowly* construed to protect defendants' due-process rights. *See Edward J. DeBartolo Corp. v. FGCBCTC*, 485 U.S. 568, 575-78 (1988)(constitutional avoidance canon); *U.S. v. Approx. 64,695 Pounds of Shark Fins*, 520 F.3d 976, 980 (9th Cir. 2008)("Due process requires that an agency provide 'fair notice...before a sanction can be imposed.'").

### E. Separation of Powers Principles Necessitate En Banc Review

FTC is not a legislative body unto itself, but instead must carry out Congress's intent. FTC has not done so here. "FTC's understandable preference for litigating under Section 13(b), rather than in an administrative proceeding, does not justify its expansion of the statutory language." *Shire*, 2019 WL 908577, at \*9. FTC's litigation preferences must yield to 13(b)'s actual text. *See Yith v. Nielsen*, 881 F.3d 1155, 1164-65 (9th Cir. 2018); *see also Zabriskie v. Fannie Mae*, 912 F.3d 1192, 1199-200 (9th Cir. 2019)(rejecting purpose-driven construction of consumer-

15

protection statute). If FTC wishes to expand its enforcement options, "that is within Congress's bailiwick, not" the judiciary. *See Ass'n des Eleveurs v. Becerra*, 870 F.3d 1140, 1149 (9th Cir. 2017).

## II.     FTC'S SECTION 13(B) POWER-GRAB DESERVES NO DEFERENCE

Even if the Supreme Court did not fatally undermine FTC's misinterpretation of Section 13(b) in *Kokesh, FTC v. Commerce Planet*, 815 F.3d 593 (9th Cir. 2016), should still be overruled.

Because this Circuit's Section 13(b) precedent rests on mistaken reliance on FTC's wayward *Porter*-based arguments unsupported by any textual foundation, any presumption in favor of stare decisis should be deemed rebutted.[15] *See Payne v. Tennessee*, 501 U.S. 808, 827-28 (1991). FTC's ultra vires preference for seeking monetary damages under Section 13(b) also unworkably burdens federal courts with litigation that belongs in FTC's administrative process, further counseling in favor of overruling *Commerce Planet*. Underscoring this, the only entity that relies on this erroneous interpretation of Section 13(b) is FTC, which uses it for budget-justification purposes, consistently highlighting to Congress the *amount* of the monetary judgments it obtains. *See, e.g.*, FTC FY 2020 Congressional Budget

---

[15]    *See generally* Pepson & Sharifi, Lego v. Twomey*: The Improbable Relationship Between an Obscure Supreme Court Decision and Wrongful Convictions*, 47 AM. CRIM. L. REV. 1185, 1245-49 (2010)(discussing factors).

Justification, p.7 ("In FY 2018, the FTC filed 48 new complaints in federal district court and obtained 84 permanent injunctions and orders requiring defendants to pay more than $226.8 million in consumer redress or disgorgement of ill-gotten gains."), *at* https://www.ftc.gov/system/files/documents/reports/fy-2020-congressional-budget-justification/fy_2020_cbj.pdf.[16]

Nor can FTC's litigation positions interpreting Section 13(b) save it. No deference is due where, as here, the agency's interpretation is contrary to the statute's plain language and structure. *See also John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 109 (1993).

### III. "NET IMPRESSION" TEST FATALLY FLAWED

This Court should also revisit this Circuit's "net impression" test for the reasons set forth in Judge Bea's special concurrence. As a practical matter, it authorizes imposition of "deception" liability without evidence of actual "deception," harm to even a single identifiable person, expert survey evidence, or even expert *ipse dixit* testimony, particularly when coupled with various extrastatutory "presumptions" in favor of liability, which can effectively relieve FTC of its burden of proving elements of the offense. *See, e.g., FTC v. Wellness Support*

---

[16]    Judgments obtained without congressionally mandated due process ought to be a source of shame, rather than pride for the agency.

*Network,* 10-cv-04879-JCS, 2014 WL 644749, at *17 (N.D. Cal. Feb. 19, 2014)(materiality presumption). That is exactly what happened here.

## CONCLUSION

This Court should grant AMG's Petition.

Respectfully submitted,[17]

/s/ Michael Pepson
John J. Vecchione
Michael Pepson
Admitted only in Maryland.
Practice limited to federal matters.
Jessica Thompson [application pending]
CAUSE OF ACTION INSTITUTE
1875 Eye Street, NW, Suite 800
Washington, D.C. 20006
Phone: 202.499.6937
Fax: 202.330.5842

---

[17]     Amicus thanks Litigation Support Analyst Elizabeth Rudolf for her aid in preparing this brief.

18