UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION | ) |
| *Plaintiff,* | ) ) ) ) Case No. 6:18-cv-862-ORL-37DCI |
| v. | ) |
| MOBE LTD., et al., | ) ) |
| *Defendants.* | ) ) |
| _____ | ) |
| SYNOVUS BANK | ) ) |
| *Intervenor, Counter-Plaintiff*, | ) ) |
| v. | ) ) |
| BURTON W. WIAND, SPECIAL RECEIVER, and QUALPAY, INC., | ) ) ) |
| *Counter-Defendants.* | ) |
| _____ | ) |

**COUNTER-DEFENDANT QUALPAY, INC.'S ANSWER, DEFENSES, AND CROSS-CLAIM TO THE CLAIMS AND DEFENSES OF INTERVENOR SYNOVUS BANK**

Counter-Defendant Qualpay, Inc. ("Qualpay") respectfully submits this, its Answer and Cross-Claim to the Claims and Defenses of Intervenor Synovus Bank ("Synovus").

**RESPONSE TO ENUMERATED ALLEGATIONS OF
SYNOVUS BANK'S CLAIMS AND DEFENSES**

Responding to the enumerated allegations of Synovus's Claims and Defenses, Qualpay states as follows:

1. Admitted.

2. Qualpay admits that the FTC purports to seek the referenced relief under Section 13(b) of the FTC Act, but denies any implication that Section 13(b) authorizes the relief sought (other than an injunction). Qualpay admits the remaining facts contained in paragraph 2 of the Claims and Defenses.

3. Admitted.

4. In response to paragraph 4, Qualpay states that the Court's Order is a written document that speaks for itself.

5. In response to paragraph 5, Qualpay states that the Court's Order is a written document that speaks for itself.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Qualpay admits that the enumerated defenses are asserted by Synovus.

12. Paragraph 12 of the Claims and Defenses sets forth legal contentions to which no response is required.

13. Qualpay admits that Synovus seeks the declaratory and/or final judgment specified in paragraph 13 of the Claims and Defenses.

14. Admitted.

15. Admitted.

JOHNSON DABOLL ANDERSON, PLLC

16. Paragraph 16 of the Claims and Defenses sets forth legal contentions to which no response is required.

17. Qualpay admits the allegations contained in paragraph 17(a). With respect to paragraph 17(b), Qualpay states that the Merchant Agreement is a written document that speaks for itself.

18. With respect to paragraph 18(a), Qualpay states that the Merchant Agreement is a written document that speaks for itself. Qualpay admits the allegations contained in paragraph 18(b).

19. In response to paragraph 19, Qualpay states that the Merchant Agreement is a written document that speaks for itself.

20. In response to paragraph 20, Qualpay states that the Merchant Agreement is a written document that speaks for itself.

21. Qualpay admits that it is a party to a Sponsorship Agreement with Synovus. In response to the remaining allegations set forth in paragraph 21, Qualpay states that the Sponsorship Agreement is a written document that speaks for itself.

22. In response to paragraph 22, Qualpay states that the Visa and MasterCard rules are written documents that speak for themselves.

23. In response to paragraph 23, Qualpay states that the Sponsorship Agreement is a written document that speaks for itself.

24. Admitted.

25. Admitted.

26. In response to paragraph 26, Qualpay states that the Merchant Agreement is a written document that speaks for itself.

27. Qualpay admits the allegations contained in paragraphs 27(a) and 27(c). With respect to paragraph 27(b), Qualpay states that the card brand rules are written documents that speak for themselves.

28. Admitted.

29. In response to paragraph 29, Qualpay states that the Merchant Agreement is a written document that speaks for itself.

30. In response to paragraphs 30(a) and (b), respectively, Qualpay states that the Merchant Agreement and the Sponsorship Agreement are written documents that speak for themselves.

31. In response to paragraph 31, Qualpay states that the Merchant Agreement and the Sponsorship Agreement are written documents that speak for themselves.

32. With respect to paragraph 32(a), Qualpay states that the Sponsorship Agreement is a written document that speaks for itself. With respect to paragraph 32(b), Qualpay states that the card brand rules are written documents that speak for themselves, and that the remaining assertions are matters of law to which no response is required.

33. Admitted.

34. With respect to paragraph 34, Qualpay states that the Merchant Agreement is a written document that speaks for itself.

35. Admitted.

36. With respect to paragraph 36, Qualpay states that the Merchant Agreement is a written document that speaks for itself.

37. With respect to paragraph 37(a), Qualpay admits that the Receiver and the FTC have alleged that the Defendants had ownership or other rights in the Reserve Account. With respect to paragraph 37(b), Qualpay states that the Court's Order is a written document that speaks for itself. The remaining allegations of paragraph 37, including the remainder of paragraph 37(a) and paragraph 37(c), contain legal contentions to which no response is required.

38. Admitted.

39. In response to paragraph 39, Qualpay states that the Sponsorship Agreement is a written document that speaks for itself.

40. In response to paragraph 40, Qualpay states that the Sponsorship Agreement is a written document that speaks for itself.

41. In response to paragraph 41, Qualpay states that the Sponsorship Agreement is a written document that speaks for itself. The final sentence of paragraph 41 contains legal contentions to which no response is required.

42. Paragraph 42 of the Claims and Defenses sets forth legal contentions to which no response is required.

43. Admitted.

44. Admitted.

45. Admitted.

JOHNSON DABOLL ANDERSON, PLLC

46. Qualpay admits that, under the Sponsorship Agreement, it has certain liabilities and indebtedness to Synovus.

47. Admitted.

48. Qualpay incorporates its responses to paragraphs 13 through 47 of the Claims and Defenses by reference.

49. Qualpay admits that Synovus seeks the declaration contained in paragraph 49 of the Claims and Defenses.

50. Paragraph 50 of the Claims and Defenses sets forth legal contentions to which no response is required.

51. Admitted.

52. Paragraph 52 of the Claims and Defenses sets forth legal contentions to which no response is required.

53. Admitted.

Any allegation contained in Synovus's enumerated paragraphs not expressly admitted above is denied.

## DEFENSES

Pursuant to Federal Rule of Civil Procedure 24, Qualpay asserts the following defenses against the Special Receiver and the Federal Trade Commission (the "FTC") related to the reserve funds held by Synovus and Qualpay related to transactions associated with Defendants, which have been provisionally turned over to the receivership estate pursuant to the direction of this Court:

### First Defense

Section 13(b) of the FTC Act does not permit the relief sought by the FTC in this case insofar as it relates to the seizure and/or turnover of reserve funds held by non-party payment processors and acquiring banks or the subjugation of security interests in such funds.

### Second Defense

Qualpay has a property interest in the reserve funds.

### Third Defense

Qualpay has a valid security interest in the reserve funds, the priority of which cannot be subordinated to any rights of the receivership estate.

### Fourth Defense

Qualpay is a holder in due course of the reserve funds.

### Fifth Defense

Qualpay has a right to recoup chargebacks from the reserve funds.

### Sixth Defense

The receivership estate has no equitable powers to deny or avoid the rights of Qualpay.

### Seventh Defense

The receivership estate stands in the shoes of, and has no greater rights in the reserve funds than would, the Defendants. Defendants, in turn, have no legal or equitable rights to the reserve funds, including, if the allegations of the FTC's Complaint are credited, on account of Defendants' own inequitable conduct and unclean hands.

## CROSS-CLAIM AGAINST THE SPECIAL RECEIVER

For its cross-claim against Burton W. Wiand, Special Receiver (the "Special Receiver"), and pursuant to Federal Rules of Civil Procedure 13(g) and 24, Qualpay states as follows:

### Jurisdiction and Venue

1. The Court has subject-matter jurisdiction over Qualpay's cross-claim pursuant to 28 U.S.C. § 1367(a) because they are so related to Synovus's Claims and Defenses that they form part of the same case or controversy under Article III of the United States Constitution.

2. Furthermore, venue and jurisdiction are proper in this Court based on its creation of, and oversight over, the receivership, as well as the reserve funds the Court directed Synovus and Qualpay to preliminarily turn over to the receivership estate.

### The Merchant Agreement

3. Qualpay, Synovus, and Defendant MOBEProcessing, Inc. a/k/a MOBE USA ("MOBE") are parties to a Merchant Card Processing Agreement (the "Merchant Agreement"), a copy of which is attached to Synovus's Claims and Defenses as Exhibit D. Pursuant to that Merchant Agreement, Qualpay agreed to process MOBE's payment card transactions.

4. Under the Merchant Agreement, Qualpay and Synovus agreed to provisionally credit the proceeds of authorized transactions to MOBE. MOBE, however, agreed that each such "provisional credit . . . [was] subject to Adjustment, including revocation," and that a "[p]rovisional credit . . . for a Charge disputed by a Cardholder for

8

any reason [was] not final." Indeed, MOBE "acknowledge[d] that all payments and credits provided to [it] [were] provisional and subject to suspension, to Chargebacks and to Adjustments in accordance with this Agreement and the Operating Rules."

5. Furthermore, MOBE agreed to be responsible, and to pay Synovus and Qualpay, for all chargebacks associated with its processing activity.

6. The Merchant Agreement further provided that, "As a condition for providing Card Program services, Merchant [*i.e.*, MOBE] may be required to provide additional collateral security for Merchant's obligations hereunder, which additional collateral security shall be of a kind, and in amounts, satisfactory to Bank [*i.e.*, Synovus and Qualpay] in Bank's sole discretion[.]"

7. Among the forms of security contemplated was the creation of a reserve account. With respect to that reserve account, the Merchant Agreement provided:

> The Reserve Account will be separate from the [Merchant's] Settlement Account. **Merchant shall have no right of withdrawal from the Reserve Account.** The Reserve Account shall be under the sole control of Merchant Bank [*i.e.*, Synovus Bank], and Processor [*i.e.*, Qualpay] shall not have access to or hold funds in the Reserve Account. Any and all earnings from deposits of the Merchant to the Reserve Account shall be the sole property of the Bank [*i.e.*, Qualpay and Synovus].
>
> . . .
>
> Bank without prior notice to Merchant may deduct from the Reserve Account any obligation of Merchant to Bank under this Agreement, including all Processing Fees, Chargebacks, Credit Vouchers, damages, and any and all additional fees, and sums sufficient to reimburse Bank for the amount of any fines, penalty amounts and charges due the Card Networks.
>
> . . .
>
> **Merchant Bank may continue to hold or deposit funds in the Reserve Account after termination of this Agreement, regardless of whether**

**termination is by Merchant or Bank.** Upon termination of the Agreement by Merchant or Bank, Bank may retain sufficient funds to satisfy any and all Processing Fees, Chargebacks, Credit Vouchers, damages, and any and all additional fees, and sums sufficient to reimburse Bank for the amount of any fines, penalty amounts and charges due the Card Networks . . . . The funds will be held by Bank or its designated agent for a period of not less than one hundred eighty (180) days from the date of the last Card Transaction processed under the Agreement, plus the period of any warranty, guarantee, and/or return policy on goods and/or services sold. **Bank will return the balance in the Reserve Account to Merchant after Bank reasonably determines that the risk of Chargebacks and other Processing Fees has ended and after deducting all amounts that Merchant owes to Bank under this Agreement or any other agreement.**

8.  The Merchant Agreement also conferred certain security interests on Synovus and Qualpay, including in the Reserve Account:

To secure Merchant's performance of its obligations under this Agreement, and any other agreement with Bank, Merchant grants Bank a security interest in each Charge and its proceeds, the Settlement Account, the Reserve Account and any other deposit account of Merchant with a financial institution, whether now existing or established in the future, and in the proceeds of all those accounts, any funds due Merchant from Bank and any of Merchant's property held by Bank. Bank may enforce these security interests without notice or demand. The security interests granted under this Agreement will continue after this Agreement terminates, until Merchant satisfies all its obligations to Bank.

9.  Synovus and Qualpay exercised their contractual rights to retain reserve funds associated with MOBE's processing activity.

10. On June 5, 2019, the FTC obtained an order granting an *ex parte* temporary restraining order appointing a receiver over Defendants' assets. As of that date, Qualpay and Synovus held approximately $6.3 million in reserve funds (the "Reserve Funds") associated with MOBE's transactions.

11. Since that time, Synovus has been forced to pay over $20 million in chargebacks associated with MOBE's transactions, for which Qualpay is liable to pay

Synovus under a Sponsorship Agreement between the parties. Payment of those chargebacks is ultimately among MOBE's obligations under the Merchant Agreement, which, to date, it has not performed.

12.  Neither Qualpay nor Synovus has been able to use the Reserve Funds to satisfy those chargebacks, however, because the *ex parte* temporary restraining order ostensibly froze reserve funds that were held by payment processors and acquiring banks (such as Qualpay and Synovus, respectively), and because the Court thereafter ordered Qualpay and Synovus to preliminarily turn over the Reserve Funds to the receivership estate.

13.  Without challenging Synovus's superior security interest, Qualpay asserts that the Reserve Funds should be used to satisfy chargebacks as contemplated by the Merchant Agreement and the rules promulgated by the card brands.

14.  Upon information and belief, the Special Receiver disagrees with Qualpay's position, and instead asserts that any property or security interest in the Reserve Funds belonging to Synovus and/or Qualpay should be disregarded in favor of expanding the pool of assets available for distribution to former customers of MOBE.

15.  Consequently, an actual and justiciable controversy exists within the meaning of 28 U.S.C. § 2201.

WHEREFORE, Qualpay respectfully requests:

(a)  a declaration from the Court that (a) Synovus and Qualpay are entitled to use the Reserve Funds to satisfy chargeback liabilities attributable to MOBE's processing activity; and (b) as between Qualpay and the receivership estate,

        Qualpay has a superior right to the Reserve Funds, whether by virtue of its security interest in the same or otherwise; and

(b)    such other and further relief as the Court finds necessary and proper pursuant to 28 U.S.C. § 2202.

Respectfully submitted this 24th day of June, 2019.

                                    /s/ *David S. Johnson*
                                    Bonnie C. Daboll    FBN 730521
                                    David S. Johnson    FBN 096423
                                    JOHNSON DABOLL ANDERSON, PLLC
                                    2011 W. Cleveland Street, Suite F
                                    Tampa, Florida 33606
                                    Tel. 813.377.2499
                                    Fax. 813.330.3156
                                    bdaboll@jdalegal.com
                                    djohnson@jdalegal.com

                                    Edward A. Marshall, Ga Bar No. 471533
                                    (*appearing pro hac vice*)
                                    Theresa Y. Kananen, Ga Bar No. 478998
                                    (*appearing pro hac vice*)
                                    ARNALL GOLDEN GREGORY LLP
                                    171 17th St. NW, Suite 2100
                                    Atlanta, Georgia 30363
                                    Tel. 404.873.8536
                                    Fax. 404.873.8537
                                    edward.marshall@agg.com
                                    theresa.kananen@agg.com

                                    *Counsel for Qualpay, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed on this 24th day of June, 2019, using the Court's CM/ECF system, which will send electronic notification to all counsel of record.

/s/ David S. Johnson

13585919v1

JOHNSON DABOLL ANDERSON, PLLC