UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FEDERAL TRADE COMMISSION,

                    Plaintiff,

v.                                                        Case No:  6:18-cv-862-Orl-37DCI

MOBE LTD.,
MOBEPROCESSING.COM, INC.,
TRANSACTION MANAGEMENT USA,
INC., MOBETRAINING.COM, INC.,
9336-0311 QUEBEC INC., MOBE PRO
LIMITED, MOBE INC., MOBE
ONLINE LTD., MATT LLOYD
PUBLISHING.COM PTY LTD.,
MATTHEW LLOYD MCPHEE, SUSAN
ZANGHI and INGRID WHITNEY,

                    Defendants.

_____

REPORT AND RECOMMENDATION

      This cause comes before the Court for consideration without oral argument on the

following motion:

| | |
|---|---|
| **MOTION:** | **MOTION TO INTERVENE BY SYNOVUS BANK** (Doc. 219) |
| **FILED:** | **September 3, 2019** |
| | |
| **THEREON** it is **RECOMMENDED** that the motion be **DENIED**. | |

I.      Background

a.  *Prior Proceedings*

      On June 4, 2018, the Federal Trade Commission (the FTC), brought this action against

Defendants – MOBE Ltd. and its related entities (collectively, MOBE), Matthew Lloyd McPhee

and a related entity, Susan Zanghi, and Ingrid Whitney – for alleged violations of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a).  Doc. 1 (the Complaint).  Neither Synovus Bank (Synovus) nor Qualpay, Inc. (Qualpay) were named as defendants in that action.  *Id.*  In the Complaint, the FTC alleged, in sum, that Defendants operated a fraudulent internet business education program called "My Online Business Education," or the "MOBE" program, through which Defendants claimed they would reveal a "simple 21-step system that will show consumers how to quickly and easily start their own online business and make substantial income."  Doc. 1 at 2.  The FTC further alleged that contrary to Defendants' representations, "the vast majority of consumers who join the MOBE program and purchase . . . costly MOBE memberships lose money."  *Id.* at 3.  According to the FTC, Defendants defrauded thousands of consumers who collectively paid Defendants over $125,000,000.00 based on misrepresentations by Defendants concerning the MOBE program.  *Id.* at 3-4.

Contemporaneous with the filing of the Complaint, the FTC also moved – pursuant to Federal Rule of Civil Procedure 65(b) – for a temporary restraining order, asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Defendants.  Doc. 3.  At the same time, the FTC made an application for a temporary receiver.  Doc. 6.  The next day, the Court granted the FTC's motions, issued a temporary restraining order, and appointed Mark J. Benet as temporary receiver (the Receiver).  Doc. 13 (the TRO).  The TRO imposed an asset freeze on Defendants and certain third parties, directing them to "[h]old, preserve, and retain":

> (a) . . . any Asset that has been (i) owned or controlled, directly or indirectly, by any Defendant; (ii) held, in part of in whole, for the benefit of any Defendant; (iii) in the actual or constructive possession of any Defendant; or (iv) owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant[.]

(b) . . . Asset[s] associated with credits, debits, or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities[.]

Doc. 13 at 8.  Qualpay and Synovus claimed an ownership interest in the frozen assets, and on June 22, 2018 and July 10, 2018, respectively, filed motions for relief from the TRO and, "to the extent necessary," to intervene for the purpose of obtaining the release of "their" funds.  *See* Doc. 32 at 2-4; Doc. 57 at 14.  Neither of those motions were accompanied by a pleading that set out the claim or defense for which intervention was sought.  *See* Fed. R. Civ. P. 24(c); *see also* Doc. 214 at 2.

The Court allowed a limited intervention to the extent that the Court considered the merits of the motions, but the motions were denied in full.  Doc. 83 (the August 2018 Order).  In the August 2018 Order, the Court provided a clear explanation of the credit card processing industry and its relationship to Synovus and Qualpay's (collectively, the Intervenors) arguments that they had a claim to the frozen funds.[1]  *See* Doc. 83 at 4-6.  The Court explained:

Qualpay is a credit card processing company that processed MOBE's transactions. Synovus is the bank where Qualpay maintains accounts for funds received on behalf of merchants during credit card processing. Qualpay and Synovus' ownership claim to MOBE's proceeds is predicated on the convoluted relationship between the parties as part of the credit card payment processing industry. . . [T]he system revolves around "payment networks" (i.e. Visa and MasterCard), but there are intermediaries to ensure no direct interaction between payment networks and the consumer and merchant. On one side, a consumer or "cardholder" obtains a credit card from an "issuing bank."  On the other side, the "merchant" is required to sign up with a credit card "processor" (i.e. Qualpay), the intermediary between the payment network and the merchant so that the payment network does not have to directly contract with the merchant. The processor must have a "sponsoring bank" (also known as an "acquiring bank"), which is a trusted entity approved by Visa or MasterCard.

---

[1] Synovus and Qualpay appealed this order, but they voluntarily dismissed the appeal in November 2018.

When properly functioning, this process functions like a circuit: (1) a consumer swipes his card at a merchant's store; (2) the processor seeks authorization from the issuing bank; (3) if authorized, the issuing bank approves the card's acceptance and sends the issuing bank's own funds to the processor's bank account at the acquiring bank; (4) within a few days the processor pays the merchant the cost of the transaction, minus fees; and (5) the consumer pays the issuing bank. However, if a cardholder does not pay the issuing bank, but rather decides to challenge the transaction, a "chargeback" is initiated. If that occurs, the issuing bank will obtain the money from the processor's account at the acquiring bank, leaving the processor to turn to the merchant for its share.

Reserve accounts are typically contractually defined, and, generally speaking, permit the processor to keep a portion of the money from a transaction in a separate reserve account before directing the remaining credit card settlement to the merchant. It is customary for processors to hold the reserve funds in accounts at the acquiring bank in order to protect against liability from credit card chargebacks. Thus, the reserve accounts contain a certain predetermined percentage from each transaction which the processor withholds from the merchant until the potential exposure associated with a transaction expires.

*Id. (internal citations omitted).*  The Court then articulated the primary issue in the motions for temporary restraining order: who owns the funds in the MOBE reserve account (the Reserve Fund). *Id.* at 5.  The Court found that MOBE owns the Reserve Fund and ordered the funds turned over to the Receiver and placed in a constructive trust.  *Id.* at 13.

Approximately nine months after Synovus was ordered to turn over the funds in the Reserve Fund, the Receiver filed a motion for appointment of a special receiver regarding potential claims against Qualpay and Synovus.  Doc. 181.  In that motion, the Receiver explained that Synovus asserted that the Receiver was in a position of conflict of interest and further that Synovus had threatened to move to disqualify the Receiver.  *Id.* at 1.  The Receiver explained that he did not believe a conflict existed which would prevent him from investigating and prosecuting claims against Qualpay and Synovus, but he expressed concern that "Synovus's threat to 'litigate the litigation'" would delay the proceedings and cause the receivership estate needless expense.  *Id.* at 2. The Receiver therefore asked the Court to appoint a special receiver to handle the receivership

estate's potential claims against Qualpay and Synovus.  *Id.*  On May 23, 2019, the Court entered an order appointing Burt Wiand as special receiver (the Special Receiver).  Doc. 182.

Approximately two weeks later – almost a year after intervention was first attempted – on June 3, 2019, Synovus filed a pleading seeking the return of funds that Synovus conditionally paid to the Receiver.  The pleading asserted "defenses" to the FTC and the Receiver and a "claim" for affirmative relief against Qualpay and the Special Receiver.  Doc. 189 (the Claims and Defenses).

On June 11, 2019, the Court entered a case management and scheduling order (CMSO) setting various deadlines in this action.  Doc. 191.  Neither the CMSO nor the Case Management Report upon which it was based addressed Synovus or Qualpay.

On June 25, 2019, Qualpay filed its answer to Synovus's pleading and a cross-claim against the Special Receiver.  Doc. 196 (the Answer and Cross-Claim).  Four motions were then filed attacking the propriety of those pleadings.  The FTC filed a motion to limit Synovus's intervention (Doc. 194) and a motion to set aside the Answer and Cross-Claim (Doc. 208).  The Special Receiver filed a motion to dismiss the Claims and Defenses (Doc. 195) and a motion to strike or dismiss the Answer and Cross-Claim (Doc. 210).

On July 26, 2019, the parties (i.e. the FTC, the Receiver, and Matthew Lloyd McPhee) filed a joint motion to stay all case proceedings.  Doc. 209 (the Joint Motion).  In the Joint Motion, the parties asked the Court to stay all deadlines in the CMSO until the Court ruled on a then yet-to-be-filed motion to approve an agreement between the parties, or, in the alternative, for sixty days.  *Id.*

On August 2, 2019, the Court held a hearing on the Joint Motion.  Doc. 212.  At the hearing, the parties explained that they had not conferred with the Intervenors concerning the Joint Motion because they only sought to stay the CMSO deadlines, none of which involved the Intervenors.

*See* Doc. 214 at 3.  The Intervenors stated that they had no objection to the Court staying the CMSO deadlines, so long as the Court did not stay the proceedings concerning the Intervenors. *See id.*  In turn, the parties had no objection to the Court continuing to consider the four pending motions directed to the Intervenors' claims.  *See id.*  In other words, all those potentially affected – the parties and the Intervenors – agreed to the stay requested in the Joint Motion but also agreed to the Court continuing consideration of the propriety of the Intervenors' claims. *Id.*

The Court then raised *sua sponte* the issue of the Intervenors' compliance with Federal Rule of Civil Procedure 24 (Rule 24) in filing the Claims and Defenses and the Answer and Cross-Claim and gave the Intervenors an opportunity to address that issue.  *See id.*  In sum, the Intervenors did not argue that they complied fully with Rule 24.  *Id.*  The Court found that Synovus and Qualpay failed to comply with Rule 24(a) and (c) when seeking to intervene in this action.  *Id.* In particular, the Court found that the Intervenors never obtained leave to intervene by filing the Claims and Defenses or the Answer and Cross-Claim and never filed a "motion accompanied by a pleading that sets out the claim or defense for which intervention is sought."  *Id.* (quoting Fed. R. Civ. P. 24(c)).  Thus, the Court ordered the Claims and Defenses and the Answer and Cross-Claim stricken.  *Id.* at 4.  However, the Court also granted Synovus and Qualpay leave to file motions to intervene, provided that they fully complied with the Federal Rules of Civil Procedure. *Id.* at 3-4.

### b. *The Motion to Intervene*

On September 3, 2019[2], Synovus filed the motion to intervene that is now before the Court. Doc. 219 (the Motion).[3]  On September 17, 2019, the FTC filed a response in opposition to the Motion (Doc. 224, the FTC Response), as did the Special Receiver (Doc. 225, the Special Receiver's Response).

In the Section I of the Motion, Synovus argues that it is entitled to intervene as of right. Doc. 219 at 4-8.  In Section II, Synovus argues that it is entitled to permissive intervention.  *Id.* at at 8-10.

However, Section III ("The Complaint is the Practical Way to Proceed") does not appear relevant to the issue of intervention; Synovus does not mention intervention or cite any case law related to intervention in this section.  *See id.* at 10-12.  The undersigned therefore considers Section III of the Motion inapposite and will not address it further.

In Section IV ("There is No Stay"), Synovus appears to argue that there is no stay of proceedings in this case that requires Synovus to obtain the Court's leave to intervene.  *See id.* at 12-13.  Synovus asserts that "it makes no sense to require a party obtain leave of this Court where that party is asking this Court (rather than another forum) render judgment on the issues raised." *Id.* at 13.  Because Rule 24 explicitly requires Synovus to obtain the Court's leave to intervene, and because the undersigned intends to address the Motion's Rule 24 arguments (i.e. Sections I

---

[2] This motion is technically an amended version of a prior motion filed earlier on the same day; the Receiver filed the amended version to correct page numbering.  *See* Doc. 222 at 1, n.1.

[3] Three days after Synovus filed the Motion, the Receiver filed a motion to approve settlement with Matthew Lloyd McPhee (Doc. 222) that is currently pending before the Court.

and II), the undersigned finds Section IV of the Motion inapposite and will not address it further. *See* Fed. R. Civ. P. 24.

Section V ("The Special Receiver is Subject to the Complaint") also appears unrelated to intervention; Synovus does not mention intervention or cite any case law related to intervention in this section. *See id.* at 13-14. The undersigned therefore also considers Section V of the Motion inapposite and will not address it further.

Thus, the undersigned will address Sections I and II of Synovus's Motion – intervention as of right and permissive intervention, respectively – as well as the corresponding responses from both the FTC and the Special Receiver.

**II.    Discussion**

As the acquiring bank with a purported interest in the Reserve Fund, Synovus moves to intervene to determine Synovus's rights and interest with respect to the Reserve Fund. An intervenor may move to intervene as of right under Rule 24(a) or join the case via permissive intervention under Rule 24(b). Fed. R. Civ. P. 24. Synovus claims the right to intervene or, in the alternative, requests permission to intervene. Doc. 219 at 1-2. In their respective responses to the Motion, the FTC and the Special Receiver challenge Synovus's entitlement to both intervention as of right and permissive intervention. *See generally* Doc. 224; Doc. 225.

*a.  Intervention as of Right.*

In the Eleventh Circuit, a party seeking to intervene as of right must: 1) timely move to intervene; 2) show that it has an interest relating to the subject matter of the suit; 3) show that its ability to protect that interest may be impaired or impeded by the disposition of the suit; and 4)

show that the existing parties to the suit cannot adequately represent that interest.[4]  *See Chiles v. Thornburgh,* 865 F.2d 1197, 1213 (11th Cir. 1989); *Georgia v. United States Army Corps of Eng'rs,* 302 F.3d 1242, 1249 (11th Cir. 2002) (same); *Huff v. Comm'r of IRS*, 743 F.3d 790, 796 (11th Cir. 2014) (same).  The applicant bears the burden of establishing its right to intervene by satisfying all four elements.  If the applicant establishes each of the four requirements, the district court must allow intervention.  *Chiles* at 1213.

### 1. Timeliness of the Motion to Intervene.

Intervention as of right requires a motion be "timely" filed. Fed. R. Civ. P. 24.  However, Rule 24 does not set forth actual time limits.  Fed. R. Civ. P. 24.  Courts have relatively broad discretion in assessing timeliness and generally consider four factors: 1) the length of time during which the intervenor knew, or reasonably should have known, of his interest in the case before he petitioned for leave to intervene; 2) the extent of prejudice to existing parties as a result of the intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; 3) the extent of prejudice to the intervenor if the petition is denied; and 4) the existence of unusual circumstances militating either for or against a determination that the application is untimely.

---

[4] Rule 24(a) reads in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by the existing parties. (Fed. R. Civ. P. 24(a)).

*United States v. Jefferson Cty.*, 720 F.2d 1511, 1516 (11th Cir. 1983) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977)).[5]

No one factor is dispositive, and the Eleventh Circuit urges courts to "keep in mind that '[t]imeliness is not a word of exactitude or of precisely measurable dimensions. . . .'" *Chiles*, 865 F.2d at 1213 (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)). Further, "[t]imeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion . . . ." *Nat'l Ass'n for Advancement of Colored People v. N.Y.*, 413 U.S. 345, 366 (1973). In light of the foregoing factors and all the circumstances of this case, the undersigned finds that Synovus has not demonstrated that the Motion is timely.

The undersigned finds that the first factor, the length of delay, weighs against a finding of timeliness. Synovus knew or reasonably should have known of its interest in this case by at least July 10, 2018, when Synovus filed its "Motion for Emergency Relief from Ex Parte Temporary Restraining Order and, to the Extent Necessary, to Intervene." Doc. 57. Yet Synovus did not properly petition the Court for leave to intervene pursuant to Rule 24 until September 3, 2019, through the filing of the Motion now before the Court. Thus, Synovus knew or reasonably should have known of its interest in the case for more than a year before it petitioned for leave to intervene pursuant to Rule 24.[6]

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[6] Even if the Court could construe the Court's August 2018 Order (denying Synovus's emergency motion for relief from the TRO and, "to the extent necessary," to intervene) as the point at which Synovus knew or reasonably should have known it had an interest in this action, this Motion is still not timely: Synovus waited almost a year after the August 2018 Order was entered (on August, 8, 2018) to file the Claims and Defenses (on June 3, 2019). *See* Doc. 83; Doc. 189.

Synovus asserts that the Motion is timely despite this delay, and apparently in support of that assertion, states that the Motion was filed "following the Court's directive and following discussion with the FTC and Special Receiver regarding the disposition of the Reserve Fund." *Id.* The undersigned notes that the Court did not direct either Synovus or Qualpay to file a motion to intervene in this case.  Rather, the Court simply "provide[d] Synovus and Qualpay an opportunity to file motions that comply with Rule 24" and, thereby, seek to intervene; the Court made no comment on whether intervention was appropriate or timely.  *See* Doc. 214 at 3-4.  Thus, any suggestion that the Motion is timely because Synovus filed the Motion in response to an instruction from the Court is not well taken.

Synovus also justifies a year-long delay by asserting that "[m]ultiple events have occurred that make this motion timely."  Doc. 219 at 5.  Synovus then describes a series of actions that have occurred since the Court entered the August 2018 Order and which appear wholly unrelated to the timeliness of this Motion: (a) Synovus filed and subsequently withdrew an appeal regarding an order in this case; (b) Synovus and Qualpay engaged in document production related to this case; and (c) Synovus acquired Florida Community Bank, which apparently created a conflict that necessitated the appointment of the Special Receiver.  *Id.*  Synovus provides no argument in support of the contention that these events make this Motion timely, and the undersigned sees no such relationship between these events and the timeliness of this Motion.  In their respective Responses, the FTC and the Special Receiver assert that any delay is a result of Synovus's own conduct – an assertion Synovus's list of events seems to support – and the FTC in particular argues that "Synovus was aware of its security interest claim since at least August 2018 and offers no reason why it waited until June 2019 (when it first filed its untimely pleading) to seek this intervention."  Doc. 224 at 8, n. 8 (citing Doc. 189).  In sum, Synovus appears to imply that a year

passed before Synovus could file this Motion because Synovus was otherwise engaged, but that the delay should be excused because Synovus followed a directive from the Court in filing its Motion. The undersigned does not find this justification persuasive.

Upon consideration, the undersigned finds that the second factor, the extent of prejudice to existing parties, also weighs against a finding of timeliness. As a result of waiting more than a year to file this petition, Synovus seeks to intervene at a point in this case where the primary Receiver has filed a motion to approve a settlement with Matthew Lloyd McPhee (*see* Doc. 222) (the FTC has reached a settlement in principal with Matthew Lloyd McPhee, the only remaining defendant who is in active litigation with the FTC (*see* Doc. 209)) and the Court has granted a stay of all proceedings related to the Estate of Russel W. Whitney pending the approval of a settlement agreement with the Estate. *See* Doc. 227. Thus, Synovus seeks to intervene while the receivership proceeding appears to be nearing its end.

Synovus offers no argument related to the prejudice its intervention stands to effect on the existing parties to the case other than the conclusory statement that "[n]either the FTC nor the Special Receiver can claim prejudice due to the passage of time." Doc. 219 at 5. In fact, both the FTC and the Special Receiver can and do claim prejudice due to the passage of time. *See* Doc. 225 at 3-4; Doc. 224 at 8. The FTC asserts that allowing Synovus to intervene at this point will prolong discovery, prolong the resolution of the underlying suit, and drive up receivership expenditures since all deadlines have been stayed due to proposed settlements with individual defendants. *See* Doc. 224 at 9, n. 8. The Special Receiver also notes that there are settlement agreements pending approval and asserts that Synovus's intervention at this stage, when "the enforcement stage of this matter is nearing conclusion, and the claims administration process can begin soon after outstanding settlements are approved[,]" is not timely. Doc. 225 at 4. The Special

Receiver further asserts that Synovus's intervention "would only serve to derail much of what the Receivership has already achieved . . . Synovus's Complaint would ignite a flurry of litigation, complete with anticipated pleading-stage motion practice, full-scale discovery, and dispositive motion filings." *Id.*

The undersigned finds that allowing Synovus to intervene at this juncture stands to prolong discovery, prolong the resolution of the underlying case, and increase receivership expenditures, and further that Synovus knew or reasonably should have known of its interest in this case early enough that it could have avoided significant prejudice to the existing parties by moving to intervene prior to the wrapping up of the receivership proceedings. Accordingly, the undersigned finds that the extent of prejudice to the existing parties as a result of the Synovus's failure to move to intervene as soon as it knew or reasonably should have known of its interest in the case is significant.

With respect to the third factor, none of the briefing before the undersigned addresses, as it relates to timeliness, the extent of prejudice to Synovus if the Motion is denied. Upon consideration, the undersigned finds that denying Synovus's motion would not significantly prejudice Synovus. Synovus seeks to protect its alleged interest in the Reserve Fund; denying this Motion would place Synovus in a position similar to that of all other parties with an alleged interest in the Reserve Fund – subject to the receivership process or in a position to seek some other kind of relief. The undersigned therefore finds that consideration of the third factor weighs against a finding of timeliness.

As to the last factor, the undersigned finds that there are no "unusual circumstances militating either for or against a determination that the [request to intervene] is timely," barring,

perhaps, the efficacy with which settlement agreements were reached in this case, which weighs against a finding of timeliness.

Synovus knew or reasonably should have known of its interest in this case at least by July 2018 (*see* Doc. 57), and thus delayed petitioning for leave to intervene under Rule 24 for more than a year.  As a result of Synovus's delay in filing, the existing parties to the case stand to be prejudiced if intervention is allowed at this juncture.  Further, Synovus does not stand to be significantly prejudiced if this Motion is denied.  Given the forgoing, and considering all the circumstances of this case, the undersigned finds that the Motion is not timely.

**2. Whether Synovus has a legally protectable interest relating to the property or transaction that is the subject of the action.**

If the Court finds that Synovus's Motion is timely, Rule 24(a)(2) provides that Synovus must also show that it has "an interest relating to the property or transaction that is the subject of the action."  Fed. R. Civ. P. 24 (a) (2).  The Eleventh Circuit has clarified that an interest is sufficient when it is "direct, substantial and legally protectable."  *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002).  The analysis of an interest "is 'a flexible one, which focuses on the particular facts and circumstances surrounding each [motion for intervention].'"  *Chiles*, 865 F.2d at 1214 (quoting *United States v. Perry Cnty. Bd. of Educ.*, 567 F.2d 277, 279 (5th Cir. 1978)).  Essentially, the court is determining whether the potential intervenor is "at least a real party in interest in the transaction which is the subject of the proceeding."  *Athens Lumber Co., Inc. v. Fed. Election Com'n*, 690 F.2d 1364, 1366 (11th Cir. 1982).  Further, an "economic interest" alone is insufficient to establish legal protection.  *See U.S. v. South Florida Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991).  Rather, the interest must "be one which the substantive law recognizes as belonging to or being owned by the applicant."  *Id.* (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984)).

The entirety of Synovus's argument relevant to establishing that it has an interest in the Reserve Fund[7] in this subsection, entitled "Synovus Has an Interest in The Reserve Fund," is as follows:

> Synovus has an interest relating to the property or transactions that are the subject of the action, the Reserve Fund. The TRO expanded the breadth of the original complaint beyond MOBE; it imposed obligation on non-party litigants. And, the August 2018 Order directed Synovus to turn over the Reserve Fund. Synovus complied with the August 2018 Order. Synovus squarely has an interest in the property – the Reserve Fund.

Doc. 219 at 6. To the extent that these statements contain any argument, that argument is perfunctorily made. The undersigned fails to see how any of these statements demonstrate that Synovus has a direct, substantial, or legally protectable interest in the Reserve Fund – Synovus has simply declared that it has an interest in the Reserve Fund, noted that it complied with a Court order, and reiterated that it has an interest in the Reserve Fund.

Four paragraphs later, in the middle of a separate subsection ("Impairment of Synovus's Rights in the Reserve Fund"), Synovus appears to continue the argument that it has an interest in the Reserve Fund, and further that its interest is not purely economic. *See id.* at 7. In an abundance of caution, the undersigned will address that argument here.

Synovus cites *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.* for the proposition that the interest necessary for intervention must "be one which substantive law recognizes as belonging to or being owned by the applicant. Thus, a legally protectable interest is an interest that derives from a legal right." *Id.* at 7 (quoting *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.,* 425 F.3d

---

[7] The remainder of this subsection consists of one additional sentence that states, in sum, that Synovus's ability to protect its purported interest in the Reserve Fund may be impaired by the disposition of this case. *See* Doc. 219 at 6. To the extent that this statement relates to the separate subsection dedicated to addressing impairment, any argument it sets forth is perfunctorily made and the undersigned will not address it.

1308, 1311 (11th Cir. 2005).  Synovus then declares, without citation to any of the documents filed in this case and without argument, that "As detailed in the proposed Complaint, Synovus has state law rights in the Reserve Fund."  *Id.*

Accepting the proposition set forth in *Mt. Hawley*, the undersigned does not find that Synovus's unsupported declaration that it has a legal right to the Reserve Fund establishes such a right.  Synovus has not directed the undersigned to any particular section of the proposed Complaint, has not explained what type of "state law rights" Synovus purports to hold in the Reserve Fund, has not indicated the basis for its purported rights, and has not provided case law, or, frankly, argument, in support of the assertion that Synovus has a legal right to the Reserve Fund.

Synovus also asserts that its purported interest is in "funds" but that such an interest does not run afoul of the insufficiency of a purely economic interest as the basis for intervention "because the funds to which Synovus has a right are the same funds that are a subject of the Action."  *See* Doc. 219 at 7.  Synovus then points to *Chiles* as an analogous example: "For instance, in *Chiles,* the Eleventh Circuit stated that a legal property interest like the one at issue here was one that would be impaired absent intervention."  *Id.*  Synovus offers no argument on this point.

Given that the legally protectable interest in *Chiles* was identified by the court as detainees' interest in a lawsuit challenging the government's operation of a federal detention center – specifically, "[the government's] practice of keeping alien felons along with nonviolent alien detainees and its hiring of untrained security personnel" – the undersigned fails to see how Synovus's unexplained assertion of similarity between Synovus's purported interest in this case and the detainees' interest in *Chiles* supports, in any way, the contention that Synovus's purported

interest in this case is anything other than an economic interest standing alone.   *See Chiles* at 1213-14.[8]

For the forgoing reasons, the undersigned finds that Synovus has not demonstrated that it has a direct, substantial, and legally protectable interest relating to the property or the transaction that is the subject of this action.

### 3. Whether Synovus's ability to protect its interest may be impaired or impeded by the disposition of the suit.

If the Court finds that Synovus's Motion is timely, and further that Synovus has demonstrated that it has a sufficient interest in this case, Rule 24(a)(2) also requires that Synovus show that its ability to protect its interest may be impaired or impeded by the disposition of the suit.  Fed. R. Civ. P. 24 (a) (2).   The Eleventh Circuit has clarified that "[a]ll that is required under Rule 24(a)(2) is that the would-be intervener be practically disadvantaged by his exclusion from the proceedings."  *Huff v. Comm'r of IRS*, 743 F.3d 790, 800 (11th Cir. 2014) (citing *Chiles*, 865 F.2d at 1214).

The crux of Synovus's argument on this point is that should this Motion be denied, Synovus's purported interest in the Reserve Fund would be subject to risk of impairment because Synovus would be "forced" to participate in a claims process.  *See* Doc. 219 at 6.  In support of this argument, Synovus offers several conclusory statements, one hypothetical question, little argument, and no case law.

---

[8] Synovus does include a quote from *Chiles* that references "the potential *stare decisis* effect [that] may supply that practical disadvantage which warrants intervention as of right," but to the extent that this quotation is relevant to any potential impairment, and to the extent that Synovus makes argument related to this quotation on that point, such argument is perfunctory at best.   The paragraph containing this reference to *Chiles* is unclear in terms of what it relates to, what point(s) it intends to establish with relation to *Chiles*, and where it fits in the analysis of an intervention as of right claim, and the undersigned will not address it further.

First, Synovus explains that it is so situated that its rights are now subject to a risk of impairment because "it is axiomatic that the FTC and receivership stand directly in opposition to Synovus." Synovus offers no explanation for this assertion, and in his Response, the Special Receiver directly controverts Synovus's characterization of the relationship between the parties. *See* Doc. 225 at 5. The Special Receiver denies that there is any adversity between the parties that would impair the ability of the FTC, the Special Receiver, or the Court to adequately address Synovus's alleged interest through the claims process. *Id.* The Special Receiver further notes that neither the FTC nor the Special Receiver has asserted any claims against Synovus. *Id.*

Second, Synovus states that "impairment is ongoing as Synovus's rights included a right to apply in the past the Reserve Fund to chargeback liabilities." Doc. 219 at 6. Again, Synovus offers no explanation for its assertion nor any explanation of the nature of the rights it alleges are currently being impaired. *See id.* The Special Receiver argues that Synovus is not prejudiced by "the fact that the Receiver is holding the Reserve Funds pending the resolution of the claims process. It is similarly situated to other creditors as practical necessity for equitable treatment of all claimants." Doc 225 at 5. The Special Receiver and the FTC both note that the Court has ordered the Reserve Fund placed in a separate, interest-bearing receivership account and further ordered that the funds are not available to pay the expenses of the receivership estate such that any dissipation of the MOBE reserves is prevented for the duration of this case. *See* Doc. 225 at 5; Doc. 224 at 7; *see also* Doc. 83 at 3-4.

Third, Synovus asserts that the elements of the claims process remain undefined, and "given the adversity of the FTC and the receivership," that process may expose Synovus to "infirmities or obstacles." Doc. 219 at 7. Synovus then asks, "Otherwise, why would the FTC and the receivership so adamantly wish to interfere with Synovus's day in court?" *Id.* The

undersigned interprets Synovus's hypothetical question as a presumption that, because the FTC and the Special Receiver are allegedly diametrically opposed to Synovus and its purported interest in the Reserve Fund, the FTC and the Special Receiver must wish to subject Synovus to a process that may present obstacles. Again, Synovus offers no support for its assertion, and the Special Receiver denies any adversity between the parties. *See* Doc. 225 at 5. Further, with respect to Synovus's day in court resulting from an intervention in this proceeding, both the FTC and the Special Receiver describe the prejudice they argue such an intervention would effect on the existing parties to the case, including prolonging discovery and any resolution as well as increasing costs. *See* Doc. 224 at 8, n. 8; Doc. 225 at 4.

Finally, Synovus states that "delay in resolution of disputes in a receivership undoubtedly results in more time and expense, to the detriment of all concerned persons." Doc. 219 at 7. The undersigned does not follow the connection between this conclusory statement and any assertion that Synovus's purported rights stand to be impeded or impaired by the disposition of the underlying case. Delays may generally result in more time and expense, but Synovus has presented no evidence of any such delays, nor that such delays – if they exist – support the proposition that Synovus's ability to protect its interest may be impaired or impeded by the disposition of this suit.

In their respective responses, both the FTC and the Special Receiver challenge the proposition that if Synovus were subject to the claims process, Synovus's ability to protect its purported interest in the Reserve Fund would be impaired or impeded. In his response, the Special Receiver argues that Synovus's "unfounded fear" that it will be prejudiced by the claims process ignores the actual claims procedure. Doc. 225 at 5. The Special Receiver asserts that if Synovus were subject to the claims procedure, Synovus's ability to protect its purported interest in the Reserve Fund would not be impaired or impeded because the claims process must be approved by

the Court and ensures that creditors are treated equally and fairly.  *Id.*  The Special Receiver

explains that the Receiver is charged with investigating, collecting, and ultimately distributing

assets to creditors pursuant to the claims process and cites several cases that note, in general, that

summary procedures used in a receivership were proper where such procedures afforded claimants

an opportunity to be heard.  Doc. 225 at 5-6; *see, e.g., Securities and Exchange Commission v.

Callahan,* 193 F. Supp 3d 177, 204-05 (E.D.N.Y. 2016) (denying intervention by claimants

because (among other reasons) they had an opportunity to be heard in the summary claims

process).[9]  The Special Receiver asserts that Synovus would be afforded just such an opportunity:

> Once the claims process is established, all creditors, including Synovus, will have
> the opportunity to file proofs of claims and to explain their merits. The receiver will
> then evaluate those claims and make recommendations to the court to either
> approve, modify, or deny them. Each claimant will be afforded a full and fair
> opportunity to accept the receiver's recommendations or challenge them with the
> right to be heard. The receivership process allows Synovus – and all creditors – the
> same rights and protections. It also contemplates the avoidance of preferential
> treatment.

Doc. 225 at 6-7.  The FTC makes a similar argument in its response, pointing out that even if

intervention is denied, there will be a claims process where Synovus can bring its present claim or

file its objections to a dispersal plan.  Doc. 224 at 8.  The FTC also provides case law along the

same lines as that provided by the Special Receiver – examples of cases where courts have denied

intervention of right "in instances where a summary claims process, used by the receiver, and

---

[9] Citing *S.E.C. v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1146 (9th Cir. 1996) ("For the
claims of nonparties to property claimed by receivers, summary proceedings satisfy due process
so long as there is adequate notice and opportunity to be heard."), abrogated on other grounds by
*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998);
*Elliott,* 953 F.2d at 1567 ("[A] district court does not generally abuse its discretion if its summary
procedures permit parties to present evidence when the facts are in dispute and to make arguments
regarding those facts."); *S.E.C. v. Credit Bancorp, Ltd.*, No. 99 CIV. 11395 RWS, 2000 WL
1752979, at *33 (S.D.N.Y. Nov. 29, 2000), aff'd, 290 F.3d 80 (2d Cir. 2002) (finding that summary
procedures used in a receivership satisfied due process because they afforded claimants an
opportunity to be heard regarding the validity of their interest in the receivership estate).

reviewed by the district court, offered adequate due process to other interested parties." Doc. 224 at 8 (quoting *U.S. v. Alisal Water*, 370 F.3d 915, 921 (9th Cir. 2004); citing *CFTC v. Chilcott Portfolio Mgmt.*, Inc., 725 F.2d 584, 586 (10th Cir. 1984) (investor not foreclosed from asserting his claim under claims procedure set up by the receiver)).

Synovus has not substantiated the claims of adversity between itself and the FTC and the Special Receiver, nor has it established a basis for the general claim that the receivership process will inherently impair Synovus's ability to protect its purported interest.  The Special Receiver and the FTC both point out that Synovus will have a full and fair opportunity to make its claims to the Reserve Fund, and present any supporting argument, as part of the claims procedures.  The FTC and the Special Receiver have also provided decisions by several courts that suggest such summary proceedings are appropriate in similar circumstances.

Thus, in light of the foregoing, the undersigned finds that, even if Synovus had established that it has a sufficient interest in the Reserve Fund, Synovus has not demonstrated that refusing to allow intervention in this case may practically impede or impair Synovus's ability to protect that interest.  *See Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 134 n.3 (1967) ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." (citation omitted)).

### 4.  Whether the existing parties to the suit can adequately represent that interest.

If the Court finds that Synovus's Motion is timely, that Synovus has demonstrated that it has a sufficient interest in this case, and that Synovus has shown that its ability to protect its interest may be impaired or impeded by the disposition of the suit, Rule 24(a)(2) also requires that Synovus show that its interest cannot be adequately represented by existing parties to the suit.  Fed. R. Civ. P. 24 (a) (2).  The inadequate representation requirement "is satisfied if the [proposed intervenor]

shows that representation of his interest 'may be' inadequate" and that "the burden of making that showing should be treated as minimal." *Chiles*, 865 F.2d at 1214 (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). Additionally, courts "presume adequate representation when an existing party seeks the same objectives as the would-be interveners," however, this presumption is "weak" and only requires that the proposed intervenor "com[es] forward with some evidence" that representation is inadequate. *Clark v. Putnam Cnty.*, 168 F.3d 458, 461 (11th Cir. 1999); *see Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007).

Synovus states that its purported interest is not adequately represented by the existing parties to the lawsuit, that no party is similarly situated to Synovus, and that the FTC, the Receiver, and the Special Receiver actively oppose the rights Synovus seeks to enforce. Doc. 219 at 9. Synovus also states that the receivership "argues that Synovus 'should be treated like any other claimant, despite [Synovus's] secured interest in the Reserve Fund.'" Doc. 219 at 8 (citing Doc. 77 at 7).

Synovus has not established that it has an interest in the Reserve Fund sufficient to warrant intervention, and for that reason alone its argument that existing parties to the case cannot adequately represent its purported interest must fail. Assuming that Synovus had established a sufficient interest, Synovus still has not established what that interest is. To the extent that Synovus's interest is repaying (via chargebacks) customers who have been defrauded by MOBE, the FTC and the Special Receiver have the same interest and can therefore adequately protect Synovus's interest as well as their own. Synovus has not presented any evidence to the contrary and thus cannot overcome the presumption of adequate representation. *See Clark v. Putnam Cnty*, *supra*.

To the extent that Synovus's interest is some kind of secured interest with priority that requires the entirety of the Reserve Fund being paid to Synovus above all other claimants, Synovus is correct that that is not an interest that the FTC or the Special Receiver seek to protect.  Thus, under that definition of Synovus's interest, the existing parties to the case cannot adequately protect Synovus's interest because, by virtue of the receivership process, the FTC and the Special Receiver protect the interests of all claimants and ensure their fair treatment without preference. The undersigned, however, does not agree that such an approach by the FTC and the Special Receiver warrants intervention.

Accordingly, the undersigned finds that Synovus's conclusory argument regarding the existing parties' ability to protect any interest Synovus has in the Reserve Fund (whatever that interest may be) does not meet even the minimal burden required to establish that representation of its interest may be inadequate.

### 5.    Conclusion as to Intervention as of Right

A party seeking to intervene as of right bears the burden of establishing its right to intervene by establishing all four of the following elements: timeliness, sufficient interest, an ability to protect that interest that may be impaired or impeded by the disposition of the suit, and the existing parties' inability to adequately represent that interest.  *See* Fed. R. Civ. P. 24 (a); *Chiles* at 1213; *Georgia v. United States Army Corps of Eng'rs* at 1249; *Huff v. Comm'r of IRS* at 790. Thus, failure to establish any one of these four factors is fatal to a motion to intervene as of right.  Here, the undersigned finds that Synovus has failed to meet all four elements and thus does not have a right to intervene in the present case under Rule 24(a)(2).   Accordingly, the undersigned respectfully recommends that the Motion be denied as to intervention as of right.

### B.  *Permissive Intervention*

A party seeking to intervene under Rule 24(b) must show that "(1) its application to intervene is timely, and (2) its claim or defense and the main action have a question of law or fact in common." *See Cox Cable Communications v. United States*, 992 F.2d 1178, 1180 n. 2 (11th Cir.1993).  A court may, in its discretion, deny intervention even if these requirements are met. *See id.*  Rule 24(b)(3) provides that, "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24.

For the reasons addressed under Section A of this Report, the undersigned finds that the Motion is not timely and therefore does not satisfy the first element of the test for permissive intervention.  With respect to the second element, Synovus argues that the question of "who is entitled to the Reserve Fund" is an issue of fact or law common to the underlying action.  *See* Doc. 219 at 8.  Synovus asserts that although the original complaint in this case was filed against MOBE for defrauding customers, the main action involves more than claims against MOBE since it also involves the imposition of a receivership and the transfer of the Reserve Fund to the receivership in a constructive trust.  *See id.*  In sum, Synovus argues that the determination of entitlement to the Reserve Fund shares common questions of law and fact with the main action.

In response to this argument, the Special Receiver asserts that if the test for intervention by a receivership claimant was simply having a common question of law or fact regarding entitlement to receivership assets, any creditor with a potential claim in any receivership would be entitled to intervene.  Doc. 225 at 8.  The Special Receiver argues that "[t]his is not and cannot be the standard in a Receivership, in which the Court is granted wide discretion to fashion equitable procedures." *Id.*  The FTC, on the other hand, argues that there is no common question of law or fact between

the FTC's claim "that MOBE engaged in deception. . . and Synovus' contracts with MOBE or its alleged security interest arising therefrom."  Doc. 224 at 9.

Even if there is some overlap between the FTC's case and Synovus's claims, the existing parties would suffer prejudice and undue delay if Synovus was permitted to intervene in this case. Permitting intervention would force the parties to litigate factual questions not presently at issue, and discovery, which closed twenty days after Synovus filed the Motion, would necessarily expand in scope to include Synovus's claims.  *See Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.,* No. 17-80495-CIV, 2018 WL 4922457, at *3 (S.D. Fla. Sept. 27, 2018) (acknowledging potential overlap between the proposed intervenors' claims and the plaintiff's case and finding that permissive intervention was not warranted due to prejudice to the existing parties).

The Eleventh Circuit has consistently upheld the denial of permissive intervention on the grounds that the addition of the proposed intervenors as parties would needlessly protract the litigation.  *See*, *e.g., United States v. S. Fla. Water Mgt. Dist.*, 922 F. 2d 704, 711-12 (11th Cir. 1991) ("Although we express no opinion as to the merits of plaintiff's claims, an action which seeks to preserve the environment from further deterioration deserves refuge from ... undue delay.") (emphasis in original) (internal citations omitted).  Here, Synovus's intervention does not stand to add anything of substance to the resolution of this case.  In fact, this case has been almost entirely resolved already – proceedings are stayed pending approval of settlement agreements from all remaining parties.  Therefore, in the interest of avoiding prejudice to the existing parties and undue delay, the undersigned respectfully recommends that the Motion be denied with respect to permissive intervention.

### III.      Conclusion

Based upon the foregoing, the undersigned finds that the Motion (Doc. 219) is due to be denied because Synovus has not met its burden of showing that it has met the requirements for intervention as of right under Rule 24.   The undersigned finds that Synovus's request for permissive intervention also fails because intervention at this time would prejudice the parties and unduly delay the proceedings.

Accordingly, it is respectfully **RECOMMENDED** that the Motion (Doc. 219) be **DENIED**.

<u>**NOTICE TO PARTIES**</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida on October 23, 2019.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties