UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.                                         Case No. 6:18-cv-862-Orl-37DCI

MOBE LTD.;
MOBEPROCESSING.COM, INC.;
TRANSACTION MANAGEMENT
USA, INC.; MOBETRAINING.COM,
9336-0311 QUEBEC INC.; MOBE PRO
LIMITED; MOBE INC.; MOBE ONLINE
LTD.; MATT LLOYD
PUBLISHING.COM PTY LTD.;
MATTHEW LLOYD MCPHEE; SUSAN
ZANGHI; and INGRID WHITNEY,

    Defendants.
_____

## ORDER

Before the Court are Synovus Bank's ("**Synovus**") Motion to Intervene (Doc. 219) and Receiver's Amended Motion to Approve Settlement with Matthew Lloyd McPhee and Related Entities (Doc. 222 ("**Settlement Motion**")). The Federal Trade Commission ("**FTC**") and the Special Receiver both oppose Synovus' Motion to Intervene. (Docs. 224, 225.) The Settlement Motion is unopposed. United States Magistrate Judge Daniel C. Irick prepared reports and recommendations ("**R&Rs**") for both motions. (Docs. 228, 229.) Synovus objected to the R&R on the Motion to Intervene (Doc. 232 ("**Objection**")); the FTC and the Special Receiver both responded (Docs. 235, 236). No objections were filed

-1-

to the R&R on the Settlement Motion. All motions ripe, the Court denies the Motion to Intervene and grants the Settlement Motion. In so doing, the Court adopts both R&Rs in full and overrules the Objection.

## I. BACKGROUND

The FTC sued MOBE Ltd. and its related entities (collectively, "**MOBE**"), Matthew Lloyd McPhee and a related entity, Susan Zanghi, and Ingrid Whitney (collectively, "**Defendants**") for alleged violations of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a). (Doc. 1 ("**Complaint**").) The Complaint alleged Defendants operated a fraudulent internet business education program called "My Online Business Education" or "MOBE" for short. (*Id.*) Defendants claimed the MOBE program would "reveal a simple 21-step system that will show consumers how to quickly and easily start their own online business and make substantial income." (*Id.* at 2.) Alas, like most get rich quick schemes, MOBE failed to deliver on its promises. (*See id.* at 3.) According to the FTC, "the vast majority of consumers who join the MOBE program and purchase the costly MOBE memberships lose money." (*Id.*) The FTC claimed Defendants defrauded thousands of consumers who collectively paid Defendants over $125,000,000. (*Id.* at 3–4.)

With the Complaint, the FTC moved for a temporary restraining order ("**TRO**") and a temporary receiver. (Docs. 3, 6.) The Court granted the motions and appointed Mark J. Benet as temporary receiver ("**Receiver**"). (Doc. 13.) The TRO: (i) enjoined the Defendants from violating Section 5(a) of the FTC Act; (ii) imposed an asset freeze on Defendants and certain third parties; and (iii) appointed the Receiver as temporary

receiver of the "Receivership Entities." (*Id.*)[1]

Two third parties, Qualpay and Synovus ("**Proposed Intervenors**"), were unhappy with the TRO. Qualpay is the credit card processing company that processed MOBE's transactions. (Doc. 38, p. 3.) Synovus is the bank where Qualpay maintains accounts on behalf of merchants during credit card processing. (*See id.*) They claimed an ownership interest in a portion of the frozen assets ("**Reserve Fund**"). (Doc. 32, pp. 1–4; Doc. 57, pp. 7–8, 14.).

The dispute over the Reserve Fund arises from the convoluted structure credit card companies employ to avoid direct interaction with consumers and merchants.[2] (Doc. 83, pp. 4–5.) The ownership of the MOBE Reserve Fund, held in Qualpay's Reserve Account at Synovus Bank, was hotly contested during the TRO. And the stakes weren't small—the Reserve Fund contained about $6.3 million. (Doc. 57, pp. 6–7.) So who did that money belong to?

Synovus and Qualpay claimed the money belonged to them, while the FTC insisted it was MOBE's. (*Id.*) Synovus and Qualpay filed motions for relief from the TRO and, "to the extent necessary," to intervene to obtain the release of the Reserve Fund. (Doc. 32, pp. 1–4; Doc. 57, pp. 7–8, 14.) The Court allowed them to appear and argue the merits of their objections to the TRO (*see* Docs. 32, 42, 60, 89, 98), then denied both motions

---

[1] The TRO was converted into a series of preliminary injunctions, containing essentially the same terms. (*See* Docs. 94, 95, 107.)

[2] This structure was described in the Court's Order on August 8, 2018. (*See* Doc. 83, pp. 4–5.)

in full (Doc. 83 ("**August 2018 Order**")). The Court concluded "MOBE is the rightful owner of the reserve account" and Qualpay and Synovus were merely "'middleman' processors without additional entitlement to the funds." (*Id.* at 9.) The undersigned ordered the funds turned over to the Receiver and placed in a constructive trust.[3] (*Id.* at p. 13–14.)

Approximately nine months after Synovus was ordered to turn over the Reserve Fund, the Receiver moved for appointment of a special receiver regarding potential claims against Qualpay and Synovus. (Doc. 181.) The Receiver explained Synovus had threatened to move to disqualify the Receiver, alleging he was in a position of conflict. (*Id.* at 1.) The Court appointed Burton Wiand ("**Special Receiver**") to handle the receivership estate's potential claims against Qualpay and Synovus. (*Id.*)

On June 3, 2019, almost a year after intervention was first attempted, Synovus moved for return of the $6.3 million Synovus had "conditionally paid" to the Receiver. (Doc. 189 ("**Claims and Defenses**").) Synovus asserted "defenses" to the FTC and the Receiver and a "claim" for affirmative relief against Qualpay and the Special Receiver. (*Id.* at 1.) Qualpay filed its "answer" to Synovus' Claims and Defenses. (Doc. 196 ("**Qualpay's Reply**").) No less than four motions were filed attacking the propriety of these pleadings. The FTC moved to limit Synovus's intervention (Doc. 194) and a motion to set aside Qualpay's Reply (Doc. 208). The Special Receiver moved to dismiss the Claims

---

[3] Synovus and Qualpay sought to appeal the Order, but the appeal was voluntarily withdrawn. (Docs. 96, 97, 129.)

and Defenses (Doc. 195) and a motion to strike or dismiss Qualpay's Reply (Doc. 210).

At a hearing on a separate matter,[4] U.S. Magistrate Judge Irick, *sua sponte*, turned his attention to Qualpay's and Synovus' appearance. Both Proposed Intervenors had filed motions with the Court and appeared at the hearing—but compliance with Rule 24 for intervention was questionable. *See* Fed. R. Civ. P. 24. The Proposed Intervenors had moved for a "special appearance" and, "to the extent necessary, to intervene" to challenge the TRO (*see* Docs. 32, 57) but (1) after allowing Qualpay and Synovus to appear to argue, the motions were *denied* (*see* Doc. 83); and (2) these latest filings and appearances far exceeded the scope of challenging the TRO. (*See* Doc. 219; Doc. 219-1.)

When U.S. Magistrate Judge Irick pressed the Proposed Intervenors, neither contended they complied with Rule 24. (Doc. 214, p. 3.) Neither had obtained leave to intervene to file their latest pleadings (Docs. 189, 196) nor filed a "motion accompanied by a pleading that sets out the claim or defense for which intervention is sought." (Doc. 214, p. 3 (quoting Fed. R. Civ. P. 24(c)).) U.S. Magistrate Judge Irick struck the Claims and Defenses and Qualpay's Reply with leave to file motions to intervene. (*Id.* at 3–4.)

On September 3, 2019, almost one year and three months after the Complaint had been filed, Synovus moved to intervene, arguing both intervention as of right and for

---

[4] The parties filed a joint motion to stay all case proceedings (Doc. 209 ("**Joint Motion to Stay**")) and a hearing was held before U.S. Magistrate Judge Irick, where the parties explained they had not conferred with Qualpay or Synovus because they only sought to stay the Case Management and Scheduling Order ("**CMSO**") deadlines, none of which involved the Proposed Intervenors. (Doc. 212; Doc. 214, p. 3.) The court granted the Joint Motion to Stay, extending the deadlines in the CMSO. (Doc. 214.)

permissive joinder. (Doc. 219 ("**Motion to Intervene**").) Both the FTC and the Special Receiver oppose intervention. (Docs. 224, 225.)

Meanwhile, the parties made great strides towards resolution. On September 6, 2019, the Receiver moved for the approval of a settlement between the FTC and Defendants Matthew Lloyd McPhee and related entities. (Doc. 222.) And on December 6, 2019, the FTC filed a Consent Motion for Approval and Entry of Stipulated Order for Monetary Judgment as to Russell W. Whitney's Estate. (Doc. 239.) U.S. Magistrate Judge Irick recommends denying the Motion to Intervene and granting the Settlement Motion. (Docs. 228, 229.) The Court agrees.

## II.  LEGAL STANDARDS

When a party objects to a magistrate judge's findings, the district court must "make a *de novo* determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988) (citation omitted). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The district court must consider the record and factual issues based on the record independent of the magistrate judge's report. *Ernest S. ex rel. Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990).

### III. ANALYSIS

The objected-to R&R on the Motion to Intervene is reviewed *de novo*. The R&R on the Settlement Motion is reviewed only for clear error.

#### A. R&R on Motion to Intervene

Synovus claims the right to intervene or requests permission to intervene under Federal Rule of Civil Procedure 24(a), (b). (Doc. 219, pp. 1–2.) Synovus argues it has a legal interest in the Reserve Fund and disposing of this action "may, as a practical matter, impair or impede Synovus's ability to protect that interest." (*Id.*) Synovus also argues permissive intervention is appropriate because it seeks to assert a claim and defense that shares common questions of law or facts with the action, namely who is entitled to the Reserve Fund. (*Id.* at 2.) The FTC opposes the motion, arguing the sole purpose of Synovus's present intervention "is to retrieve the $6.3 million . . . — the same funds this Court already ordered be frozen and held by the Receiver until resolution of the FTC's underlying lawsuit against the MOBE defendants." (Doc. 224, p. 2.) And Synovus' claim should be "assessed through a claims process that can determine the validity and priority of every claim held by MOBE's numerous creditors and victims," pointing out Synovus, through its processing agent Qualpay, "enabled MOBE to process nearly $80 million in consumer credit card payments over an 18-month period." (*Id.*)

The Special Receiver also opposes intervention, arguing Synovus cannot satisfy the requirements of Rule 24 and "Synovus' proposed plenary litigation would undermine the orderly administration of the Receivership by the Court." (Doc. 225, p. 2.) Like the

FTC, the Special Receiver claims Synovus is attempting to use the intervention process to "circumvent the claims process," to the exclusion of other MOBE creditors. (*Id.*)

On referral, U.S. Magistrate Judge Irick found the Motion to Intervene was untimely and failed to comply with the requisites of Rule 24(a)(2). (*See* Doc. 228, pp. 8–23); *see also* Fed. R. Civ. P. 24(a)(2). He recommended permissive intervention be denied, finding even *if* there was "some overlap" between the FTC's case and Synovus' claims, "the existing parties would suffer prejudice and undue delay" if intervention was permitted. (*Id.* at 25.)

Synovus objected to the entire R&R. (*See* Doc. 232.) Synovus claims it has a constitutional right to appear, litigate, and present argument and evidence to support its rights to the Reserve Fund, relying heavily on two Eleventh Circuit cases, *SEC v. Torchia*, 922 F.3d 1307 (11th Cir. 2019), and *SEC v. Wells Fargo Bank, N.A.*, 848 F.3d 1339 (11th Cir. 2017). (Doc. 232, p. 1.) Synovus also argues it complied with the requirements of Rule 24. (*Id.*); *see also* Fed. R. Civ. P. 24. The FTC and the Special Receiver both responded to the Objection. (Docs. 235, 236.) The Motion to Intervene is denied; the Objection overruled.

### 1. Background Objections

Synovus first argues it already intervened, with its appearance in the TRO dispute, and should have been permitted to proceed via its Claims and Defenses. (Doc. 232, pp. 4–7, 13–14.) While Synovus was permitted to appear to argue the merits of its relief from the TRO, the Court determined the Reserve Fund belonged to MOBE, was properly frozen, and ordered it turned over to the receivership. (Docs. 32, 57, 83.) At that point,

Synovus' permission for its limited intervention ended. Synovus' *own* description of these events reflects as much: "Synovus is a non-party who made a special appearance to contest the Court's [TRO]." (Doc. 85, p. 1.) Synovus was never granted full throated intervention.

Next, Synovus "objects" to the portrayal of Synovus in the R&R's recitation of the facts. (*See, e.g.* Doc. 232, p. 6.) But characterization aside, the recitation of events is accurate. (*See supra*, Section I (with citations); *cf.* Doc. 228, pp. 2–8.) Next, at some length, Synovus disputes the use of the word "purported" in Magistrate Judge Irick's description of Synovus' interest in the introduction section of the R&R. (*See* Doc. 232, pp. 10–13; *cf.* Doc. 228, p. 8.) This imagined slight is not only unwarranted—some might say petty—but unfounded. "Purported" means "reputed, alleged." *Purported*, MERRIAM-WEBSTER (online). This is an accurate description of Synovus' interest—it has repeatedly *alleged* an interest in the Reserve Fund. (*See, e.g.*, Doc. 219-1.) The use of the word "purported" here is of no consequence. Objection is overruled. (Doc. 232, pp. 3–10.)

    2.    **Constitutional Arguments**

Synovus objects to the R&R's treatment of its constitutional arguments and Eleventh Circuit precedent in *Torchia* and *Wells Fargo*. (Doc. 232, 1, 7–9, 13–14, 16, 21–24.) U.S. Magistrate Judge Irick did not address these cases as they were contained in Section III of the Motion to Intervene, titled "The Complaint is the *Practical* Way to Proceed," (emphasis added) and neither *Torchia* nor *Wells Fargo* is relevant to intervention. (Doc. 228, p. 7). Synovus now argues *Torchia* and *Wells Fargo* give Synovus a constitutional right

to intervene. (Doc. 232, 1, 7–9, 13–14, 16, 21–24; *see also* Doc. 219, pp. 10–12.) This argument is not well taken.

*SEC v. Torchia* stands for the proposition that once a claims process is begun, claimants have some entitlement to due process in the summary procedures used to adjudicate claims over assets held by the receiver. 922 F.3d 1307, 1316, 1319–20. (11th Cir. 2019). *SEC v. Wells Fargo* similarly deals with the claims process, holding a federal court, during its supervision of a receivership, "does not have the authority to extinguish a creditor's pre-existing state law security interest." 848 F.3d 1339, 1344 (11th Cir. 2017). Nothing in *Torchia* or *Wells Fargo* implicates intervention much less a constitutional right to intervene.

By denying this Motion to Intervene, the Court is not extinguishing Synovus' claim. Synovus can choose whether to participate in the claims process, and if it does, it will have certain constitutional protections. *See Torchia*, 922 F.3d 1307; *Wells Fargo*, 848 F.3d 1339. But, as the Special Receiver pointed out, "Synovus cannot merely hypothesize that the claims process will be inadequate to address its claims *before that claims process even occurs.*" (Doc. 225, p. 7.). Synovus is not entitled to intervene as of right in agency enforcement actions where the summary claims process provides adequate due process. *See, e.g.*, *CFTC v. Heritage Capital Advisory Servs., Ltd.*, 736 F.2d 384, 386–87 (7th Cir. 1984).

At heart, Synovus wants special treatment—it wants to cut the line of the other creditors and scheme victims. But a desire for special treatment is not a factor for determining whether a would-be intervener satisfies the dictates of Rule 24, nor does it

transform a Rule 24 motion into a constitutional right. *See* Fed. R. Civ. P. 24. Finding no error in the R&R as it pertains to the holdings of *Torchia* and *Wells Fargo*, the Court overrules these objections. (*See* Doc. 232, pp. 1, 7–9, 13–14, 16, 21–24.)

### 3. Rule 24 and Intervention as of Right

A party seeking to intervene as of right must: (1) timely move to intervene; (2) show it has an interest relating to the subject matter of this suit; (3) show that its ability to protect that interest may be impaired or impeded by the disposition of the suit; and (4) show that the existing parties to the suit cannot adequately represent that interest. *See* Fed. R. Civ. P. 24(a); *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). The applicant must establish its right to intervene by satisfying all four elements. *Chiles*, 865 F.2d at 1213. Magistrate Judge Irick found Synovus failed to establish every element. (Doc. 228, pp. 9–23.) Synovus claims it met its burden. (Doc. 232, 14–24.)

#### a. Timeliness

Rule 24 requires a motion to be "timely" but does not set forth actual time limits. *See* Fed. R. Civ. P. 24. Courts have broad discretion in assessing timeliness and consider four factors: (1) the length of time during which the intervenor knew, or reasonably should have known, of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to existing parties because of the intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the intervenor if the petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is

untimely. *United States v. Jefferson Cty.*, 720 F.2d 1511, 1516 (11th Cir. 1983) (citations omitted). No one factor is dispositive, and "[t]imeliness is to be determined from all the circumstances." *Nat'l Ass'n for Advancement of Colored People v. N.Y.*, 413 U.S. 345, 366 (1973); *see also Chiles*, 865 F.2d at 1213.

Synovus knew of this case for at least a year before moving to intervene. (*See* Docs. 57, 219.) This weighs *heavily* against a finding of timeliness and against allowing intervention. As U.S. Magistrate Judge Irick pointed out, the other factors support a finding of untimeliness. The parties have settled (Docs. 221, 239) and allowing intervention at this late stage would be highly prejudicial. As U.S. Magistrate Judge Irick found, "allowing Synovus to intervene at this juncture stands to prolong discovery, prolong the resolution of the underlying case, and increase receivership expenditures." (Doc. 228, p. 13.) Synovus will not be prejudiced—it simply won't be given an advantage over other creditors and victims. (*See* Doc. 228, p. 13.) Finally, no unusual circumstances militate against a finding of untimeliness.

Synovus objects, arguing a one-year delay was reasonable, allowing intervention would not be prejudicial to the parties and would be highly prejudicial to Synovus, and unusual circumstances exist, relying on *Torchia* and *Wells Fargo* for much of its argument. (*See* Doc. 232, pp. 14–16.) Synovus' Objection unavailing, the Court finds no error. (*See id.*)

      b.    *Legally Protectable Interest*

Federal Rule of Civil Procedure 24(a)(2) provides Synovus must also show it has

"an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). An interest is sufficient when it is "direct, substantial and legally protectable." *Georgia v. U.S. Army Corps*, 302 F.3d 1242, 1249 (11th Cir. 2002). An "economic interest" alone cannot establish legal protection. *See U.S. v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991). Rather, the interest must "be one which the *substantive* law recognizes as belonging to or being owned by the applicant." *Id.* (quotation marks and citations omitted).

U.S. Magistrate Judge Irick found Synovus failed to demonstrate a direct, substantial, and legally protectable interest relating to the property or the transaction that is the subject of this action. (Doc. 228, p. 17.) The Court agrees.

Synovus' Objection centered on its state law claims in attachments to its Motion to Intervene,[5] relying on *Chiles* and *Mt. Hawley* to argue it has a protectable interest. (*See* Doc. 232, pp. 16–21; *see also* Docs. 219-1, 219-2, 219-3.) These cases are unhelpful to Synovus, who must show a non-economic interest in the reserve fund. *See Chiles*, 865 F.2d at 1214 (explaining the prisoners in *Chiles* unquestionably satisfied the interest requirement of Rule 24(a)(2) based on their claims they were being held in violation of minimum federal and state prison standards and faced an imminent risk of harm); *see also Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005)

---

[5] Synovus also objected to the R&R's conclusion that its arguments had been "perfunctory." (Doc. 232, p. 16–18.) This objection is not well-taken. Synovus attached 190 pages of exhibits to its Motion to Intervene. (*See* Doc. 219 and attached exhibits.) Attaching 190 pages of exhibits without pin citations isn't argument.

(explaining "[t]he proposed intervenor must show that it has an interest in the *subject matter* of the suit . . . . [A] legally protectable interest is something more than an economic interest." (quotation marks and citations omitted) (emphasis added)).

Synovus could not identify any direct protectable interest it has in the subject of the FTC's action against MOBE. (*See* Doc. 232, p. 20; *see also* Doc. 235, p. 11.) Contrary to Synovus' assertions, this action will not resolve Synovus' contract or state law claims, as Synovus seems to admit when it claims its dispute with MOBE "would not impact rendition of a judgment versus the MOBE defendants." (Doc. 232, p. 25.) Synovus has, at best, an economic right in this action—it wants $6 million. This is insufficient to establish a protectable interest under Rule 24. *See* Fed. R. Civ. P. 24. Finding no error, the objection is overruled. (*See* Doc. 232, p. 16–21.)

### c. *Impaired or Impeded Interests*

Rule 24(a)(2) requires Synovus show its ability to protect its interest may be impaired or impeded by the disposition. Fed. R. Civ. P. 24(a)(2). "[A]ll that is required under Rule 24(a)(2) is that the would-be intervener be practically disadvantaged by his exclusion from the proceedings." *Huff*, 743 F.3d at 800 (citation omitted). U.S. Magistrate Judge Irick correctly determined that participation in the claims process will protect its interest. Even if Synovus established a sufficient interest in the Reserve Fund, it has not demonstrated that refusing to allow intervention may practically impede or impair Synovus's ability to protect that interest. (Doc. 228, p. 21.) Finding no error in the R&R, the Court overrules the Objection. (Doc. 232, pp. 21–24.)

#### d. *Adequate Representation*

The final requirement of Rule 24(a)(2) is that Synovus show its interest cannot be adequately represented by existing parties to the suit. Fed. R. Civ. P. 24(a)(2). This requirement "is satisfied if the [proposed intervenor] shows that representation of his interest 'may be' inadequate" and "the burden of making that showing should be treated as minimal." *Chiles*, 865 F.2d at 1214 (quotation marks and citation omitted). U.S. Magistrate Judge Irick concluded "Synovus has not established that it has an interest in the Reserve Fund sufficient to warrant intervention, and for that reason alone its argument that existing parties to the case cannot adequately represent its purported interest must fail." (Doc. 228, p. 22.) As discussed, *supra* Section III.A.3.b, the Court agrees. *See id*. The Court finds no error. Synovus's objection is overruled.

### 4. Permissive Intervention

A party seeking permissive intervention under Rule 24(b)(2) must show: (1) its application is timely; and (2) its claim or defense and the main action have a question of law or fact in common. Fed. R. Civ. P. 24(b)(2); *Chiles*, 865 F.2d at 1213. Even if these elements are met, the Court may deny intervention if it "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. R. 24(b)(3). As discussed, *infra* Section III.A.3.a, and as noted in the R&R, the argument for permissive intervention is doomed as untimely. (*See* Doc. 228, p. 24.) U.S. Magistrate Judge Irick found even if the motion was timely and there was some overlap between the claims, intervention should be denied for the delay and prejudice to the original parties. (*Id.* at p. 25.) The Court agrees.

Finding no error, the objection to the R&R is overruled. (*See* Doc. 232, pp. 24–26.)

**B.    Settlement Motion**

U.S. Magistrate Judge Irick also issued a report and recommendation on the Settlement Motion. (Doc. 229 ("**Settlement R&R**").) After carefully considering the terms of the proposed settlement and the arguments and representations of the Receiver, U.S. Magistrate Judge Irick recommended granting the Settlement Motion. (Doc. 229, p. 9.) The Receiver explained many of the real property interests are in foreign countries and each involve unique circumstances that make it difficult—if not impossible—for the Receiver to take possession of the assets without significant assistance from Matthew Lloyd McPhee and the entities he controls. (Doc. 229, p. 5.) U.S. Magistrate Judge Irick found "the settlement agreement is fair, reasonable, and in the best interest of the receivership estate and the affected consumers as a whole, especially given the unique circumstances described by the Receiver concerning each of the assets." (*Id.*)

No objections were filed, and the time for objecting has now passed. Absent objection, the Court reviewed the Settlement R&R only for clear error. *See Wiand v. Wells Fargo Bank, N.A.*, No. 8:12-cv-557-T-27EAJ, 2016 WL 355490, at *1 (M.D. Fla. Jan. 28, 2016); *see also Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). Finding none, the Court adopts the Settlement R&R in full.

IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1.    The Objection of Synovus Bank to Report and Recommendations (Doc. 232)

on Synovus Bank's Motion to Intervene is **OVERRULED.**

2. U.S. Magistrate Judge Daniel C. Irick's Report and Recommendation (Doc. 228) on Synovus Bank's Motion to Intervene is **ADOPTED, CONFIRMED,** and made a part of this Order.

3. Synovus Bank's Motion to Intervene (Doc. 219) is **DENIED.**

4. U.S. Magistrate Judge Daniel C. Irick's Report and Recommendation (Doc. 229) on the Receiver's Amended Motion to Approve Settlement with Matthew Lloyd McPhee and Related Entities is **ADOPTED, CONFIRMED,** and made a part of this Order.

5. The Receiver's Amended Motion to Approve Settlement with Matthew Lloyd McPhee and Related Entities (Doc. 222) is **GRANTED.**

6. The Settlement Agreement (Doc. 222-1) is **APPROVED.**

**DONE AND ORDERED** in Chambers in Orlando, Florida, on December 19, 2019.

ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record
*Pro se* party