# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**FEDERAL TRADE COMMISSION,**

        **Plaintiff,**

v.                                                           **Case No: 6:18-cv-862-Orl-37DCI**

**MOBE LTD.,
MOBEPROCESSING.COM, INC.,
TRANSACTION MANAGEMENT USA,
INC., MOBETRAINING.COM, INC.,
9336-0311 QUEBEC INC., MOBE PRO
LIMITED, MOBE INC., MOBE
ONLINE LTD., MATT LLOYD
PUBLISHING.COM PTY LTD.,
MATTHEW LLOYD MCPHEE and
SUSAN ZANGHI,**

        **Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the Receiver's Verified Application for Authority to Pay Canadian Law Firm Blake, Cassells & Graydon LLP for Services Rendered and Costs Incurred (Doc. 240, the Motion).

**I.    Background**

On June 4, 2018, the Federal Trade Commission (FTC) filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b) (the FTC Act). Doc. 1. The FTC also moved pursuant to Federal Rule of Civil Procedure 65(b) for a temporary restraining order, asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Defendants. Doc. 3. At the same time, the FTC made an application for a temporary receiver. Doc. 6. The next day,

the Court granted the FTC's motions, issued a temporary restraining order, and appointed Mark J. Benet as temporary receiver (the Receiver). Doc. 13.

In sum, in the Complaint, the FTC alleged that Defendants operated a fraudulent internet business education program called "My Online Business Education," or "MOBE," through which Defendants claimed they would reveal a "simple 21-step system that will show consumers how to quickly and easily start their own online business and make substantial income." Doc. 1 at 2. However, the FTC further alleged that, contrary to Defendants' representations, "the vast majority of consumers who join the MOBE program and purchase . . . costly MOBE memberships lose money." *Id*. at 3. According to the FTC, Defendants defrauded thousands of consumers who collectively paid Defendants over $125,000,000.00 based on misrepresentations by Defendants concerning MOBE. *Id*. at 3-4.

On August 17, 2018, the Receiver first moved to recover payment for services rendered both by the Receiver (Doc. 92, the Receiver's first motion to pay himself) and by counsel hired by the Receiver to assist him (Doc. 93, the Receiver's first motion to pay counsel). The motions were unopposed. Docs. 92 at 23; 93 at 12. The undersigned recommended that the Receiver's first motion to pay himself be granted in full and recommended that the Receiver's first motion to pay counsel be granted in part and denied in part such that the undersigned reduced certain of the requested rates as unsupported and set rates that the Court deemed reasonable. Doc. 110. No party objected to that Report, and the Court adopted the Report. Doc. 114.

On May 9, 2019, the Receiver moved for the second time to recover payment for services rendered both by the Receiver (Doc. 175) and by counsel hired by the Receiver to assist him (Doc. 176). The motions were unopposed. Docs. 175; 176. The undersigned recommended that the Receiver's second motion to pay himself be granted in full and recommended that the Receiver's

second motion to pay counsel be granted in part and denied in part such that the undersigned again reduced certain of the requested rates as unsupported and set rates that the Court deemed reasonable. Doc. 207. No party objected to that Report, and the Court adopted the Report. Doc. 215.

On December 18, 2019, the Receiver moved for the third time to recover payment for services rendered both by the Receiver (Doc. 241) and by counsel hired by the Receiver to assist him (Doc. 243). The motions were unopposed. Docs. 241; 243. The undersigned recommended that the Receiver's third motion to pay himself be granted in full and recommended that the Receiver's third motion to pay counsel be granted in part and denied in part such that the undersigned again reduced a requested rate as unsupported and set a rate that the Court deemed reasonable. Doc. 207. That Report is pending.

Now before the Court is the Receiver's Verified Application for Authority to Pay Canadian Law Firm Blake, Cassells & Graydon LLP for Services Rendered and Costs Incurred (Doc. 240, the Motion).

**II.    Discussion**

The Court has already determined that the Receiver and all personnel hired by the Receiver are entitled to reasonable compensation and reimbursement of actual out-of-pocket expenses. This is memorialized in the Court's order appointing the Receiver, which provides that:

> **IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Entities. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

Doc. 13 at 22-23.

Courts are required to use the lodestar approach to determine reasonable compensation. *SEC v. Aquacell Batteries, Inc.*, No. 6:07-cv-608-Orl-22DAB, 2008 WL 276026, at *3 (M.D. Fla. Jan. 31, 2008). The lodestar figure is reached by "multiply[ing] the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (internal quotations omitted); *see also Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-22046, 2010 WL 750301, at *2 (S.D. Fla. Mar. 3, 2010). The party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable. *See Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "If evidence is inadequate, a court in its discretion may reduce an award, make the award on its own experience without further filings or an evidentiary hearing, or exclude unsupported requests." *Proescher v. Sec. Collection Agency*, No. 3:17-CV-1052-J-32PDB, 2018 WL 3432737, at *10-11 (M.D. Fla. June 8, 2018), *report and recommendation adopted sub nom.*, No. 3:17-CV-1052-J-32PDB, 2018 WL 3428157 (M.D. Fla. July 16, 2018) (internal citations and quotations omitted). In determining if the requested rate is reasonable, the Court may consider the applicable *Johnson* factors and may rely on its own knowledge and experience. *Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.") (quotations and citation omitted); *see Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[1]

---

[1] The *Johnson* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or

In the Motion, the Receiver seeks an order authorizing him to pay his Canadian lawyers, Blake, Cassels & Graydon, LLP (Blakes), the aggregate amount of CDN $148,475.16, consisting of CDN $127,379.95 as fees, CDN $4,488.14 for costs incurred, and CDN $16,671.07 for applicable taxes, "for services rendered and costs incurred in connection with Blakes' representation of the Receiver in litigation against Peoples Trust Company in Montreal, Quebec, Canada, and other related recovery efforts in respect of Canadian banks." Doc. 240 at 1-2. According to the Motion, the aggregate sum is approximately USD $117,570.77. *Id*. at n.1. The Receiver explains that due to the efforts of Blakes, the Receiver was able to recover USD $777,000.00. *Id*. at 14.

The efforts undertaken by Blakes are detailed in the Motion (*see id*. at 7-10) and include the assertion of claims in Canada against National Bank (National), Royal Bank of Canada (RBC) and Peoples Trust Company (Peoples), "to recover credit card reserves and other accounts that each, according to the Receiver's records, held or may have held in the name of MOBE." *Id*. at 2. Blakes obtained some initial relief after filing in the Canadian courts (including the issuance of an injunction and a USD $170,000.00 payment from RBC), but Peoples refused to remit funds to the Receiver, and Blakes was forced to continue formal litigation against Peoples. Eventually, after some discovery had been conducted, Blakes and the Receiver negotiated a settlement agreement with Peoples whereby Peoples would pay the Receiver USD $607,000.00.

---

circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The Eleventh Circuit has subsequently explained that "district courts may, but are not required to, consider [the *Johnson*] factors since many 'usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Mock v. Bell Helicopter Textron, Inc*., 456 F. App'x 799, 801 (11th Cir. 2012) (quoting *ADA v. Neptune Designs, Inc*., 469 F.3d 1357, 1359 n.1 (11th Cir. 2006)).

The Receiver requests permission to pay Blakes fees in the amount of CDN $127,379.95, which is based on 346.8 hours expended at a "blended" hourly rate that averages CDN $367.30. Doc. 240 at 3. This is blend of both attorney and non-attorney time. *See id.* According to the Receiver, the requested amount also reflects a 10% discount applied after calculation of the lodestar, which is reflected on the invoices, plus an additional reduction of $9,891.53, which is unexplained but appears to be consistent with a write-off. *Id.* at 3. The Receiver maintains that, in light of the difficult and complex nature of this case, the requested compensation for Blakes is fair and reasonable. *Id.*

Based on the account of events contained in the Motion (*id.* at 7-10), and the itemized timesheet attached to the motion (Doc. 240-1), the undersigned finds that the hours expended by Blakes are reasonable, taking into consideration the reductions (through discount and write-off) already made by the Receiver and Blakes. To be sure, the undersigned is concerned with several entries in the timesheets that involve repetitive correspondence and communications between co-counsel as well as administrative tasks being handled by attorneys and paraprofessionals. However, the undersigned finds that the reductions taken by Blakes prior to submission to the Court were the exercise of proper billing judgment and make the total hours billed reasonable, taking into consideration those voluntary reductions.

In turning to the second component of the lodestar, the undersigned finds that the Receiver has not provided sufficient justification or support for the hourly rates requested for the professionals at Blakes. To assist him in his duties, the Receiver retained the services of seven professionals at Blakes, including three partners, two associates (one senior and one junior), a law clerk, and a student. *Id.* at 14-19. The rates sought for the partners are CDN $681.58, CDN

$700.00, and CDN $741.27, which is approximately[2] USD $519.00, USD $533.00, and USD $565.00. The rates sought for the junior and senior associates are approximately USD $259.00 and USD $349.00, respectively. Finally, the rates sought for the student and the law clerk are approximately USD $224.00 and USD $213.00, respectively.

It is the Receiver's burden to justify the rates he seeks to collect for his counsel. But there is very little information provided to the Court justifying the hourly rates at issue. While the Receiver did include a brief discussion of each *Johnson* factor (Doc. 240 at 11-19), with a couple exceptions that information is exceedingly sparse and conclusory. Indeed, at one point the Receiver simply asserts – without citation to authority – that: "*It is customary for a court to award a receiver's attorneys the fees they request*, particularly where the attorneys have performed as directed and have requested a reasonable amount." *Id.* at 19 (emphasis added). Further, the Receiver provided no information whatsoever about the reasonableness of these rates as compared to other counsel in Canada (other than a footnote in which the Receiver asserts that Blakes asserts that its fees are reasonable and customary) and no opinion testimony supporting the requested rates, nor did the Receiver identify any similar cases in which courts awarded similar rates for similar work.

Given the dearth of information within the motion, the undersigned is left to the exercise of discretion and, thus, may reduce the award, make the award on his own experience without further filings or an evidentiary hearing, or exclude unsupported requests. *See Proescher*, 2018 WL 3432737, at *10-11, *report and recommendation adopted sub nom.*, 2018 WL 3428157. Here, drawing upon the undersigned's own experience and expertise, and considering the lack of

---

[2] *See* https://www.bankofcanada.ca/rates/exchange/currency-converter/ (visited 12/23/2019) (for purposes of this Report, the undersigned is using data from the date the Motion was filed).

supporting information provided by the Receiver, the undersigned finds that the rates requested by the partners at Blakes are unsupported, as are the rates requested for the law clerk and student, regardless of whether that student later became an associate at Blakes. Specifically, the undersigned finds that the partners rates at Blakes should be on par with those awarded to the partners at Akerman in this case. *See* Docs. 110; 207. Thus, the rates awarded to the partners should be approximately USD $500.00 with regards to Messrs. Guy and Rubin and USD $550.00 with respect to Mr. Burr. As to the students and law clerk, the undersigned finds that their rates should be on par with the amounts awarded to paralegals in this case, approximately USD $150.00. As to the associates, the undersigned finds the requested rates to be reasonable.

In coming to the foregoing rates (which the undersigned deems significant, especially in light of the lack of information supporting the request), the undersigned has also considered the lack of opposition to the motions by any party, as well as the *Johnson* factors, including particularly the significant time and effort involved, the difficulty and complexity of this case, the skill necessary to perform the services requested, the significant results obtained by Blakes and the Receiver in securing assets, and the experience and reputation of the law firm.

In considering how to calculate the final amount given the voluntary reductions already taken by Blakes – and noting that the reductions taken were not to any particular rate but instead to a "blended," post-lodestar discount and then reduction – the undersigned has considered the amount of the total requested fee and what percentage of that fee is affected by the undersigned's findings as to the hourly rates. Prior to any reduction, the amount billed by the three partners, the law student, and the clerk was just approximately 23% of the total amount billed. The undersigned also notes that the recommended reductions to the partners' rates are only between approximately 2% and 7%, while the reductions to the non-lawyers' rates are approximately one-third of their

- 8 -

requested rates. Also taking into consideration the number of hours billed by the affected timekeepers and the voluntary reductions taken, the undersigned recommends an overall reduction of 2.3% to the total amount. That is, in effect, a ten percent reduction of the amount billed by the affected timekeepers; a reduction the undersigned finds as reasonable.

Upon consideration of all these factors, it is respectfully recommended that the Court allow the Receiver to pay Blakes CDN $124,450.21 in fees.[3]

In addition to fees, the Receiver is requesting that Blakes be paid CDN $4,488.14 for costs incurred and CDN $16,671.07 for applicable taxes. Doc. 240 at 19. These expenses and taxes appear to be justified, necessarily charged under Canadian law, and to have been actually incurred, based upon a review of the invoices attached to the Motion which show the itemized disbursements of funds for identified expenses. Doc. 240-1. Thus, the undersigned respectfully recommends that the Court allow the Receiver to pay Blakes CDN $4,488.14 for costs incurred and CDN $16,671.07 for applicable taxes.

### III. Conclusion

Accordingly, it is respectfully **RECOMMENDED** that the Receiver's Verified Application for Authority to Pay Canadian Law Firm Blake, Cassells & Graydon LLP for Services Rendered and Costs Incurred (Doc. 240) be **GRANTED in part**, such that the Receiver be authorized to pay Blakes CDN $124,450.21 in fees, CDN $4,488.14 for costs incurred, and up to[4] CDN $16,671.07 for applicable taxes, and **DENIED in all other respects**.

---

[3] CDN $127,379.95 * .977 = CDN $124,450.21.

[4] If the reduction in fees is adopted and that results in a lesser tax amount, then the Receiver should of course pay the lesser amount.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on December 23, 2019.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy