# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**FEDERAL TRADE COMMISSION,**

        **Plaintiff,**

v.   Case No:  6:18-cv-862-Orl-37DCI

**MOBE LTD.,
MOBEPROCESSING.COM, INC.,
TRANSACTION MANAGEMENT USA,
INC., MOBETRAINING.COM, INC.,
9336-0311 QUEBEC INC., MOBE PRO
LIMITED, MOBE INC., MOBE
ONLINE LTD., MATT LLOYD
PUBLISHING.COM PTY LTD.,
MATTHEW LLOYD MCPHEE and
SUSAN ZANGHI,**

        **Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | Renewed Motion for Entry of Default Judgment and Permanent Injunction (Doc. 257) |
| **FILED:** | February 12, 2020 |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I.     Background

On June 4, 2018, Plaintiff, the Federal Trade Commission, filed this action against Matthew Lloyd McPhee, the MOBE Corporate Defendants[1], Susan Zanghi, and Russell W. Whitney, Jr.[2] Doc. 1 (the Complaint).  In the Complaint, Plaintiff alleges that Defendants violated Section 5(a) of the Federal Trade Commission Act by engaging in unfair or deceptive acts or practices, and that "Defendants' scheme has defrauded thousands of consumers who collectively have paid over $125,000,000 to Defendants based on" Defendants' misrepresentations.  Doc. 1 at 3-4.  In addition, Plaintiff alleges that Defendants McPhee, Zanghi, and Whitney "formulated, directed, controlled, had the authority to control, or participated in the acts and practices of [the MOBE Corporate Defendants] as set forth in this Complaint."  Doc. 1 at 11-13.  Plaintiff also alleges that the MOBE Corporate Defendants "are all controlled and dominated by [Defendant McPhee] and others acting at his behest."  Doc. 1 at 13.  Plaintiff then directs most of its allegations toward "Defendants" generally.  Doc. 1 at 13-36.  Finally, the Court notes that Plaintiff brings each Count of the Complaint against all Defendants.  Doc. 1 at 34-36.

On February 1, 2019, the Clerk entered default against Defendant McPhee and the MOBE Corporate Defendants.  Docs. 149 through 158.  Thereafter, Defendant McPhee moved to set aside the Clerk's entry of default against him and Plaintiff moved for default judgment against Defendant McPhee and the MOBE Corporate Defendants.[3]  Docs. 160; 166.  On April 19, 2019,

---

[1] The "MOBE Corporate Defendants" consists of Defendants MOBE Ltd.; MOBEProcessing.com, Inc.; Transaction Management USA, Inc.; MOBETraining.com, Inc.; 9336-0311 Quebec Inc.; MOBE Pro Limited; MOBE Inc.; MOBE Online Ltd.; and Matt Lloyd Publishing.com Pty Ltd.

[2] The Court notes that Defendant Ingrid Whitney was later substituted in place of Russell W. Whitney.  Doc. 179.

[3] In its motion for default judgment against Defendant McPhee and the MOBE Corporate Defendants, Plaintiff argued that Defendant McPhee and the MOBE Corporate Defendants are

the Court granted Defendant McPhee's motion to set aside the Clerk's default entered against him and denied Plaintiff's motion for default judgment as moot. Doc. 168.

On May 2, 2019, Plaintiff again moved for default judgment, this time only as to the MOBE Corporate Defendants. Doc. 172. On July 1, 2019, the Court denied that motion without prejudice based on the risk of offending the prohibition against inconsistent judgments.[4] Doc. 200. On December 19, 2019, the Court entered a final order and judgment against Defendant Whitney. Doc. 242; Doc. 245. On February 12, 2020, Plaintiff filed two motions contemporaneously: a Consent Motion for Entry of Stipulated Final Order for Permanent Injunction and Monetary Judgment as to Defendant McPhee (Doc. 256 the McPhee Consent Motion) and the Renewed Motion for Entry of Default Judgment and Permanent Injunction against the MOBE Corporate Defendants (Doc. 257, the Motion) that is now before the Court. On March 5, 2020, the Court granted the McPhee Consent Motion. Doc. 258. Thus, the MOBE Corporate Defendants are the only remaining defendants in this case,[5] and the Motion is ripe for review.

## II.     Applicable Law

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment. First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is

---

jointly and severally liable, and that Defendant McPhee and the MOBE Corporate Defendants "each may be held liable for the deceptive acts and practices of the other." Doc. 166 at 13.

[4] As the Court noted in the order denying that motion, at the time of the denial the action had been stayed as to Defendant Whitney (*see* Doc. 200 n. 4 (citing Docs. 187; 190)) and Defendant McPhee appeared to be an active participant in the case. *See* Doc. 200 at 3.

[5] On December 6, 2018, the Court granted Plaintiff's consent motion for approval and entry of a stipulated final order against Defendant Zanghi. Doc. 139. Thus, the orders entered with respect to Defendants Whitney and McPhee leave the MOBE Corporate Defendants as the only remaining defendants in this case.

made to appear by affidavit or otherwise, the Clerk enters default. Fed. R. Civ. P. 55(a). Second, after obtaining clerk's default, the plaintiff must move for default judgment. Fed. R. Civ. P. 55(b). Before entering default judgment, the court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[6]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). To state a plausible claim for relief, a plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If a plaintiff fails to meet this pleading standard, then the plaintiff will not be entitled to default judgment.

If the plaintiff is entitled to default judgment, then the court must consider whether the plaintiff is entitled to the relief requested in the motion for default judgment. If the plaintiff seeks damages, the plaintiff bears the burden of demonstrating entitlement to recover the amount of damages sought in the motion for default judgment. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D.

---

[6] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

679, 681 (M.D. Fla. 2008).  Unlike well-pled allegations of fact, allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages.  *Id*. (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)).  Therefore, even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages).  Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages.  *See Adolph Coors*, 777 F.2d at 1543-44.  However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also Wallace*, 247 F.R.D. at 681 ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages").

### III. Discussion

#### A. Subject Matter Jurisdiction and Personal Jurisdiction

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.  Doc. 1 at ¶ 8.  As to personal jurisdiction, Plaintiff brings this action pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), which authorizes service of process

nationwide.[7]  "The Eleventh Circuit has held, consistent with other circuits, that federal statutes providing for nationwide service of process confer federal courts with personal jurisdiction over non-residents as long as such exercise of jurisdiction comports with the requirements of the Due Process Clause of the Fifth Amendment, including minimum contacts, fairness, and reasonableness."  *FTC v. Alternatel, Inc.*, 2008 WL 11333090, at *1 (S.D. Fla. Oct. 27, 2008) (citing *Republic of Panama* v. *BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 939 (11th Cir. 1997).  In such circumstances, "the applicable forum for minimum contacts purposes is the United States."  *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1544 (11th Cir. 1997).  Upon review of the Complaint, the undersigned finds that Plaintiff has sufficiently demonstrated that the MOBE Corporate Defendants have minimum contacts with the United States such that the traditional notions of fairness and reasonableness are satisfied.  *See, e.g.,* Doc. 1 at ¶¶ 2; 12-21; 81.  Accordingly, the undersigned finds the Court has both subject matter jurisdiction and personal jurisdiction over the MOBE Corporate Defendants.

### B. Default

On July 12, 2018, Plaintiff filed a return of service as to Defendant McPhee and the MOBE Corporate Defendants in which the process server averred that he personally served Defendant McPhee – individually and in his capacity as an officer of each of the MOBE Corporate Defendants – at Los Angeles International Airport.  Doc. 71.  This was proper service under Federal Rule of Civil Procedure 4(h)(1)(B), which provides that both domestic and foreign corporations may be served in a judicial district of the United States by delivering a copy of the summons and complaint

---

[7] *See* 15 U.S.C. § 53(b)(2) ("In any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found.); *see also FTC v. Alternatel, Inc.* 2008 WL 11333090, at *1 (finding that § 53(b) authorizes nationwide service of process).

to "an agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B).[8]  Thus, the MOBE Corporate Defendants had 21 days from the date of service to respond to the Complaint. Fed. R. Civ. P. 12(a)(1)(A)(i). On September 5, 2018, the Court entered an order extending the deadline to file responses to the Complaint to November 5, 2018. Doc. 103. The MOBE Corporate Defendants did not respond to the Complaint. In light of the MOBE Corporate Defendants' failure to respond to the Complaint, Plaintiff moved for and obtained clerk's defaults against the MOBE Corporate Defendants. Docs. 150 through 158. Given the foregoing, the undersigned finds that the Clerk properly entered default against the MOBE Corporate Defendants.

### C. Liability: Violation of Section 5(a) of the FTC Act

In Counts I and II of the Complaint, Plaintiff claims that the MOBE Corporate Defendants violated Section 5(a) of the FTC Act, which prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). Plaintiff alleges that the MOBE Corporate Defendants "falsely claimed that consumers would earn substantial income by investing large sums of money on MOBE's costly products" (Count I, Misrepresentations Regarding Earnings) and "provided false assurances of refunds or money-back guarantees to separate consumers from their money" (Count II, Misrepresentations Regarding Refunds). Doc. 257 at 1; *see* Doc. 1 at ¶¶ 101-05.

---

[8] Plaintiff also filed additional returns of service in which various process servers averred that they served certain of the MOBE Corporate Defendants by additional means, including by serving registered agents. *See* Doc. 62-70; Doc. 148. Because the undersigned finds that personal service upon Defendant McPhee in his capacity as an officer of each of the MOBE Corporate Defendants satisfies the requirements of Rule 4(h), the undersigned will not address the additional means of service. Plaintiff addresses these additional means of service, in detail, in Plaintiff's motion for clerk's default and the affidavit attached thereto. *See generally* Doc. 148; Doc. 148-1.

To establish that the MOBE Corporate Defendants committed an act or engaged in a practice that violates Section 5(a) of the FTC Act, Plaintiff must establish that: 1) there was a representation; 2) the representation was likely to mislead consumers acting reasonably under the circumstances; and 3) the representation was material.  *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003) (citations omitted).  "A representation is material if it is of a kind usually relied upon by a reasonably prudent person."  *FTC v. Transnet Wireless Corp.*, 506 F. Supp. 2d 1247, 1266 (S.D. Fla. 2007) (citations omitted).  The Commission, however, need not present proof of subjective reliance by each victim:

> In an FTC Act Section 13(b) enforcement action in which the government seeks restitution to compensate thousands of individuals victims of unlawful practices, in contrast to a private action for fraud, such representative proof of injury suffered is sufficient to justify the requested relief.... Requiring proof of subjective reliance by each individual consumer would thwart effective prosecution of large consumer redress actions and frustrate the statutory goals of the section.

*Id.* (quoting *FTC v. U.S. Oil & Gas Corp.,* 1987 U.S. Dist. LEXIS 16137 at *68 (S.D. Fla. July 10, 1987)).  In addition, expressly false claims or deliberately made implied claims used to induce the purchase of a product or service are presumed to be material.  *FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1272 (S.D. Fla. 1999) (citations omitted).

Plaintiff sufficiently alleges that there were two material misrepresentations.  Specifically, Plaintiff alleges that MOBE Corporate Defendants represented 1) that they had a 21-step system through which consumers could earn substantial income quickly and easily, and that consumers would earn even greater returns on their "investment" in the 21-step system by buying expensive membership packages and selling them to others; and 2) that these purchases were refundable without conditions or carried money-back guarantees.  *See, e.g.*, Doc. 1 at ¶¶ 27-28; 30-31; 34; 37; 43; 87; 91-93; 101; 104.  Plaintiff also alleges that these representations were misleading, and, in fact, false.  Specifically, Plaintiff alleges that the vast majority of consumers did not make money

from the MOBE Corporate Defendants' program or offerings, but lost money, and that many consumers were not able to obtain refunds. *See, e.g.*, Doc. 1 at ¶¶ 6; 87-90; 94-95; 98; 102; 106. Because Plaintiff sufficiently alleges these representations were false, the representations are presumed to be material. *See FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d at 1272. Further, these representations are also presumptively material because they "were expressly made or deliberately implied to induce the purchase of [the MOBE Corporate Defendants'] business opportunities." *See id.*; *see also FTC v. Transnet Wireless Corp.*, 506 F. Supp. 2d at 1266-67 (same).

By their default, the MOBE Corporate Defendants have admitted to the foregoing well-pleaded factual allegations, which are sufficient to establish that the MOBE Corporate Defendants engaged in acts or practices in or affecting commerce. The undersigned therefore finds that Plaintiff is entitled to default judgment on Counts I and II of the Complaint.

### D.  Joint and Several Liability

Plaintiff sufficiently alleges that the MOBE Corporate Defendants operated as a common enterprise such that each entity should be held liable for the deceptive acts and practices of another. *See* Doc. 1 at ¶¶ 21-24. Defendants acting as a common enterprise are jointly and severally liable for the amount of equitable monetary relief. *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 468 (11th Cir.1996)) (when "each defendant repeatedly participated in the wrongful acts and each defendant's acts materially contributed to the losses suffered, all defendants [may be] held jointly and severally liable."). "A 'common enterprise' operates if, for example, businesses (1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *FTC v. Washington. Data Res.*, 856 F.Supp.2d 1247, 1276–77 (M.D. Fla. 2012) aff'd sub nom. *FTC. v. Washington Data Res., Inc.*, 704 F.3d 1323 (11th Cir. 2013) (citations omitted).

Here, Plaintiff specifically alleges that the MOBE Corporate Defendants all operated under the common control and ownership of Defendant McPhee, have commingled funds, and have shared websites, addresses, phone numbers and employees. Doc. 1 at ¶¶ 12-24. In addition, Plaintiff alleges that the MOBE Corporate Defendants have conducted business through an interrelated network of companies that have a common business purpose and functions, and that there is no real distinction between each of the MOBE Corporate Defendants. *See id.* at ¶ 24; *Fed. Trade Comm'n v. Lanier Law, LLC,* 194 F. Supp. 3d 1238, 1269 (M.D. Fla. 2016) ("Courts also consider 'whether business is transacted through a maze of interrelated companies,' or whether there is 'evidence which reveals that no real distinction existed between the [c]orporate [d]efendants.'" (internal citations omitted)). Accordingly, the undersigned finds that the MOBE Corporate Defendants operated as a common enterprise and are therefore jointly and severally liable for the acts and practices alleged in the Complaint.

### E.  Relief

Plaintiff seeks injunctive relief, several types of ancillary relief, and equitable monetary relief (Doc. 257 at 9-17), all of which have been detailed in the proposed order attached to the Motion (Doc. 257-1, the Proposed Order). The undersigned will consider each request in turn.

#### 1. Injunctive Relief

Plaintiff requests a permanent injunction enjoining the MOBE Corporate Defendants from: 1) selling or marketing business coaching programs and investment opportunities (and holding any interest in any business that engages in such conduct); 2) making misrepresentations regarding material facts in connection with the sale or marketing of any product or service; and 3) sharing or using customer information in connection with any activity relating to the sale of a business coaching program or investment opportunity. Doc. 257 at 10-13; Doc. 257-1 at 6-7, 11-12.

The FTC Act permits the Court to enter a permanent injunction under appropriate circumstances. 15 U.S.C. § 53(b). To determine whether a permanent injunction is appropriate, "the test is whether the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future." *FTC v. Lalonde*, 545 F. App'x 825, 841 (11th Cir. 2013) (quoting *CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1346-47 (11th Cir. 2008)). To assess the likelihood of future misconduct, courts consider "the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations." *FTC v. RCA Credit Servs.*, LLC, 727 F. Supp. 2d 1320, 1335 (M.D. Fla. 2010) (quoting *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1322 (11th Cir. 1982)).

In addition to enjoining the defendant from specific violations, courts also have discretion to include "fencing-in" provisions that extend beyond the specific violations at issue in the case to prevent a defendant from engaging in similar deceptive practices in the future. *FTC v. RCA Credit Servs., LLC*, 727 F. Supp. 2d at 1335 (citing *FTC v. Colgate–Palmolive Co.*, 380 U.S. 374, 395 (1965) ("The Commission is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past. Having been caught violating the [FTC] Act, respondents must expect some fencing in.") (internal quotation marks and citations omitted); *Litton Indus., Inc. v. FTC*, 676 F.2d 364, 370 (9th Cir.1982) ("Fencing-in provisions serve to close all roads to the prohibited goal, so that [the FTC's] order may not be by-passed with impunity.") (internal quotation marks and citation omitted)). "Fencing-in provisions must bear a reasonable relation to the unlawful practices found to exist." *Id.* (internal quotation marks and citation omitted).

Here, the factual allegations in the Complaint, which must be accepted as true, demonstrate that, since 2013, the MOBE Corporate Defendants have been operating an investment scheme through which they have made misrepresentations to consumers, including through advertising campaigns directed at veterans, older adults, and retirees. *See* Doc. 1 at ¶¶ 26; 36-44; 68-70. As a result, consumers have collectively paid over $125 million to the MOBE Corporate Defendants, and numerous consumers have individually lost more than $20,000 each. *See id.* at ¶¶ 7; 107. The MOBE Corporate Defendants have also pushed consumers to incur debt to pay for these "investment opportunities." *See id.* at ¶¶ 44-48.

Considering the foregoing, the undersigned finds that the MOBE Corporate Defendants' unlawful conduct and the need to protect the public from future violations warrants the imposition of the injunctions sought by Plaintiff, including those injunctions that do not directly relate to violations committed by Plaintiff, such as the prohibition against making material misrepresentations in connection with the marketing and sale of *any* service or product and the prohibition against sharing or using customer information in connection with *any* activity relating to the sale of a business coaching program or investment opportunity. *Cf. FTC. v. Glob. Mktg. Grp., Inc.*, 594 F. Supp. 2d 1281, 1290 (M.D. Fla. 2008) ("A permanent injunction restraining a defendant from engaging, directly or indirectly, in any and all future involvement with telemarketing operations is an appropriate remedy if it would protect the public from potential future violations by the defendant." (quotation marks and citation omitted)).

### 2. Ancillary Relief Related to Injunctive Relief

In addition to injunctive relief, Plaintiff seeks several forms of ancillary relief, including provisions concerning order acknowledgements, recordkeeping, compliance monitoring, and reporting. Doc. 257 at 13; Doc. 257-1 at 12-16. Plaintiff contends that such provisions have been

obtained in other FTC actions because such provisions help enforce compliance with the final order. Doc. 257 (citing *FTC v. Hardco Holding Grp.* Case No. 17-cv-1257 (M.D. Fla. Jan. 23, 2018); *FTC v. The Green Savers, LLC,* Case No 12-cv-1588 (M.D. Fla. Sept. 25, 2013); *FTC v. John Beck Amazing Profits, LLC,* 888 F. Supp. 2d 1006, 1016 (C.D. Cal. 2012)).

Indeed, courts throughout the Eleventh Circuit have approved the inclusion of such ancillary provisions because, as Plaintiff contends, such provisions aid the FTC in ensuring compliance with the final order. *See, e.g.*, *Life Mgmt. Servs. of Orange Cty., LCC*, 350 F. Supp. 3d at 1280-83 (entering an order containing provisions concerning cooperation, order acknowledgments, compliance reporting, recordkeeping, and compliance monitoring); *FTC v. Capital Choice Consumer Credit, Inc*., Case No. 02-21050, 2004 WL 5141452, at *4 (S.D. Fla. May 5, 2004) ("It is well settled that 'record-keeping and monitoring provisions ... are ... appropriate to permit the Commission to police the defendants' compliance with the order.' ") (quoting *SlimAmerica, Inc.*, 77 F. Supp. 2d at 1276). In light of the foregoing authority and purpose of such provisions, the undersigned finds that Plaintiff is entitled to this ancillary relief requested in the Motion.[9]

---

[9] The Proposed Order also contains three other provisions that Plaintiff does not address in the Motion: 1) a provision concerning modification of the asset freeze imposed on the MOBE Corporate Defendants in the Court's revised preliminary injunction order (Doc. 107); 2) a provision continuing the appointment of Mark J. Bernet as receiver over the MOBE Corporate Defendants until certain tasks are completed; and 3) a provision retaining jurisdiction over this matter for purposes of construing, modifying, and enforcing the final order. Doc. 257-1 at 10-11, 16. These appear to be standard provisions in cases such as this and, as such, the undersigned sees no reason to prohibit them. *See* Doc. 139 at 16 (retaining jurisdiction over this matter for purposes of construing, modifying, and enforcing the order stipulated to by Defendant Zanghi); Doc. 258 at 32 (same, with respect to Defendant McPhee); *see also FTC v. Higher Goals Mktg. LLC*, 2019 WL 6330720, at *9 n.4 (M.D. Fla. Nov. 6, 2019), report and recommendation adopted, Case No. 6-17-cv-2048, 2019 WL 6321165 (M.D. Fla. Nov. 26, 2019) (addressing substantially similar provisions in the same manner) (citing *Life Mgmt. Servs. of Orange Cty., LCC*, 350 F. Supp. 3d at 1279 (modifying asset freeze imposed in the Court's preliminary injunction order); *FTC v. Laptop & Desktop Repair, LLC*, No. 1:16-cv-3591-AT, 2017 WL 6994570, at *4 (N.D. Ga. May 19, 2017) (including provision in final order terminating receivership)).

### 3. Equitable Monetary Relief

Plaintiff also seeks the imposition of a monetary judgement against the MOBE Corporate Defendants in the amount of the consumer injury caused by the MOBE Corporate Defendants' unlawful business practices. The Court has the equitable authority under the FTC Act to order monetary relief. *See McGregor v. Chierico*, 206 F.3d 1378, 1387-89 (11th Cir. 2000); *FTC v. Gem Merch. Corp.*, 87 F.3d at 469-70. The Eleventh Circuit has determined that the appropriate measure of such relief is a defendant's unjust enrichment or net revenue, which can be measured by the amounts previously paid by consumers less any amount returned to consumers. *FTC v. Washington Data Res., Inc.*, 704 F.3d at 1326. "The FTC bears the burden to show the "reasonably approximate" amount of the defendant's unjust gain. Next, the burden shifts to the defendants to show the inaccuracy of the FTC's figure." *FTC. v. Washington Data Res.*, 856 F. Supp. 2d at, 1281. Again, defendants acting as a common enterprise are jointly and severally liable for the amount of equitable monetary relief. *See FTC v. Gem Merch. Corp.*, 87 F.3d at 468.

Here, Plaintiff seeks a monetary judgment for the full amount of the consumer injury, *i.e.* $318,512,336, against the MOBE Corporate Defendants. Doc. 257 at 13-15. To support this award, Plaintiffs have submitted a declaration from FTC Analyst Amanda Wilson. Doc. 257-3 (the Declaration). In the Declaration, Wilson avers that, in connection with this case, she obtained and reviewed voluminous records relating to the MOBE Corporate Defendants' operations and finances, namely from the MOBE Corporate Defendants' Customer Relationship Management database (CRM). *Id.* Wilson explains that the CRM contained 782,235 total consumer records; 511,236 of these records reflected consumer purchases. *Id.* at ¶ 6. Wilson's analysis of the consumer purchase records shows that, between December 6, 2012 and June 6, 2018 2014, consumer purchases totaled $318,512,335.67. *Id.* at ¶ 6. Although a fraction of the 782,235

records appeared to be associated with refunds, Wilson explains that nearly all of the records in the "refund category" (89%) were anomalous; some records reflected refunded amounts without earlier offsetting payment records, and others showed refunds of greater amounts than had initially been paid. *Id.* at ¶ 9. The undersigned notes that the MOBE Corporate Defendants have not provided any data to rebut Wilson's estimates, have not provided any other evidence showing the amount of refunds actually paid to consumers, and have not objected to this monetary award. The undersigned also notes that, even taking the anomalous refund records into account, Wilson's estimate of the MOBE Defendants' net revenue would change by less than 1% – to $ 316,860,223. *Id.* at ¶ 10. Given the foregoing, the undersigned finds that the evidence reasonably calculates consumers' net losses as a result of the unfair or deceptive acts or practices attributed to the MOBE Corporate Defendants. Accordingly, the undersigned respectfully recommends that the Court award equitable monetary relief of $318,512,336 against the MOBE Corporate Defendants, jointly and severally.

### 4. Ancillary Relief Related to Equitable Monetary Relief

In addition to equitable monetary relief, Plaintiff seeks ancillary relief in the form of a provision concerning asset turnover, applicable to the MOBE Corporate Defendants and third parties holding assets belonging to the MOBE Corporate Defendants. Doc. 257 at 16-17. Plaintiff contends that such provisions have been obtained in default judgment orders in other FTC actions because such provisions are necessary to partially satisfy monetary judgement. *Id.* at 16 (citing *FTC v. Timeshare Mega Media*, Case No. 12-cv-986 (M.D. Fla. Mar. 9, 2012); *FTC v. Vacation Comm'n Grp.*, Case No. 13-cv-00789 (M.D. Fla. June 16 2014). The undersigned agrees. In light of the foregoing authority and purpose of such provisions, the undersigned finds that Plaintiff is entitled to this ancillary relief requested in the Motion.

**IV.     Conclusion**

The relief requested in the Motion is consistent with the relief pled in the Complaint. *See* Doc. 1 at 35-36; Doc. 257-1. The relief requested is also consistent with the judgments that have been entered against other Defendants in this case, including the permanent injunction and monetary judgment stipulated to by the MOBE Corporate Defendants' CEO and sole owner, Defendant McPhee. *See* Doc. 258 (the McPhee Judgment); *see also* Doc. 139 (the Zanghi Judgment). In addition to finding that Plaintiff is entitled to injunctive, monetary, and ancillary relief against the MOBE Corporate Defendants, the undersigned notes that the owner of each of the MOBE Corporate Defendants, Defendant McPhee, does not oppose the Motion, and, hence, does not oppose the relief sought therein. For all these reasons, the undersigned finds that relief consistent with the terms set forth in the Proposed Order (Doc. 257-1) is appropriate.

Accordingly, the undersigned respectfully **RECOMMENDS** that the Motion (Doc. 257) be **GRANTED**. Plaintiff's Proposed Order (Doc. 257-1) includes a permanent injunction and an order of monetary relief. *Id.* The undersigned recommends that an injunction consistent with the proposed terms be entered against the MOBE Corporate Defendants.[10]

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

---

[10] *See* Docs. 139; 258 (adopting similar orders and judgments of permanent injunction and disgorgement as to other Defendants in this case).

Recommended in Orlando, Florida on March 26, 2020.

/s/ Daniel C. Irick
DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy