# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**FEDERAL TRADE COMMISSION,**

        **Plaintiff,**

**v.**                                              **Case No:  6:18-cv-862-Orl-37DCI**

**MOBE LTD.,**
**MOBEPROCESSING.COM, INC.,**
**TRANSACTION MANAGEMENT USA,**
**INC., MOBETRAINING.COM, INC.,**
**9336-0311 QUEBEC INC., MOBE PRO**
**LIMITED, MOBE INC., MOBE**
**ONLINE LTD., MATT LLOYD**
**PUBLISHING.COM PTY LTD.,**
**MATTHEW LLOYD MCPHEE and**
**SUSAN ZANGHI,**

        **Defendants.**

---

## REPORT AND RECOMMENDATION

The Special Receiver's Consolidated Motion (1) To Approve Settlement with Synovus Bank; (2) To Approve the Payment of Fees and Costs; and (3) To Terminate the Special Receiver's Appointment (Doc. 268, the Motion) is before the undersigned upon referral.  Upon review, the undersigned finds that the Motion is due to be granted in part and denied in part.

### I.    Background

On June 4, 2018, the Federal Trade Commission (the FTC), brought this action against Defendants – MOBE Ltd. and its related entities (collectively, MOBE), Matthew Lloyd McPhee and a related entity, Susan Zanghi, and Ingrid Whitney – for alleged violations of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a).  Doc. 1 (the Complaint).  Neither Synovus Bank (Synovus) nor Qualpay, Inc. (Qualpay) were named as defendants in that action.  *Id.*  In the

Complaint, the FTC alleged, in sum, that Defendants operated a fraudulent internet business education program called "My Online Business Education," or the "MOBE" program, through which Defendants claimed they would reveal a "simple 21-step system that will show consumers how to quickly and easily start their own online business and make substantial income."  Doc. 1 at 2.  The FTC further alleged that contrary to Defendants' representations, "the vast majority of consumers who join the MOBE program and purchase . . . costly MOBE memberships lose money."  *Id.* at 3.  According to the FTC, Defendants defrauded thousands of consumers who collectively paid Defendants over $125,000,000.00 based on misrepresentations by Defendants concerning the MOBE program.  *Id*. at 3-4.

Contemporaneous with the filing of the Complaint, the FTC also moved – pursuant to Federal Rule of Civil Procedure 65(b) – for a temporary restraining order, asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Defendants.  Doc. 3.  At the same time, the FTC made an application for a temporary receiver.  Doc. 6.  The next day, the Court granted the FTC's motions, issued a temporary restraining order, and appointed Mark J. Bernet as temporary receiver (the Receiver).  Doc. 13 (the TRO).  The TRO imposed an asset freeze on Defendants and certain third parties, directing them to "[h]old, preserve, and retain":

> (a) . . . any Asset that has been (i) owned or controlled, directly or indirectly, by any Defendant; (ii) held, in part of in whole, for the benefit of any Defendant; (iii) in the actual or constructive possession of any Defendant; or (iv) owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant[.]

> (b) . . . Asset[s] associated with credits, debits, or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities[.]

Doc. 13 at 8.[1]  Qualpay and Synovus claimed an ownership interest in the frozen assets, and on June 22, 2018 and July 10, 2018, respectively, filed motions for relief from the TRO and, "to the extent necessary," to intervene for the purpose of obtaining the release of "their" funds.  *See* Doc. 32 at 2-4; Doc. 57 at 14.  The Court allowed a limited intervention to the extent that the Court considered the merits of the motions, but the motions were denied in full.  Doc. 83.  The Court then articulated the primary issue in the motions for temporary restraining order: who owns the funds in the MOBE reserve account totaling approximately $6.3 million (the Reserve Fund).  *Id.* at 5; 13.  The Court found that MOBE owns the Reserve Fund and ordered the funds turned over to the Receiver and placed in a constructive trust.  *Id.* at 13.

Approximately nine months after Synovus was ordered to turn over the funds in the Reserve Fund, the Receiver filed a motion for appointment of a special receiver regarding potential claims against Qualpay and Synovus.  Doc. 181.  On May 23, 2019, the Court entered an order appointing Burt Wiand as special receiver (the Special Receiver).  Doc. 182.

Approximately two weeks later—almost a year after intervention was first attempted—on June 3, 2019, Synovus filed a pleading seeking the return of funds that Synovus conditionally paid to the Receiver.  The pleading asserted "defenses" to the FTC and the Receiver and a "claim" for affirmative relief against Qualpay and the Special Receiver.  Doc. 189 (the Claims and Defenses).

On June 25, 2019, Qualpay filed its answer to Synovus's pleading and a cross-claim against the Special Receiver.  Doc. 196 (the Answer and Cross-Claim).  Four motions were then filed

---

[1] The TRO has been converted into a series of agreed preliminary injunctions, containing essentially the same terms as were contained in the TRO.  *See* Doc. 94 (stipulated preliminary injunction pertaining to Russell W. Whitney); Doc. 95 (stipulated preliminary injunction pertaining to Susan Zanghi); Doc. 107 (stipulated preliminary injunction pertaining to McPhee and the MOBE Defendants).

attacking the propriety of those pleadings.  The FTC filed a motion to limit Synovus's intervention (Doc. 194) and a motion to set aside the Answer and Cross-Claim (Doc. 208).  The Special Receiver filed a motion to dismiss the Claims and Defenses (Doc. 195) and a motion to strike or dismiss the Answer and Cross-Claim (Doc. 210).  Ultimately, all those potentially affected—the parties and the proposed intervenors—agreed to the Court continuing consideration of the propriety of the proposed intervenors' claims.  *See* Doc. 214 at 3.

The Court raised *sua sponte* the issue of the proposed intervenors' compliance with Federal Rule of Civil Procedure 24 in filing the Claims and Defenses and the Answer and Cross-Claim and gave the proposed intervenors an opportunity to address that issue.  *See id.*  In sum, the proposed intervenors did not argue that they complied fully with Rule 24.  *Id.*  The Court found that Synovus and Qualpay failed to comply with Rule 24(a) and (c) when seeking to intervene in this action.  *Id.*  In particular, the Court found that the proposed intervenors never obtained leave to intervene by filing the Claims and Defenses or the Answer and Cross-Claim and never filed a "motion accompanied by a pleading that sets out the claim or defense for which intervention is sought."  *Id.* (quoting Fed. R. Civ. P. 24(c)).  Thus, the Court ordered the Claims and Defenses and the Answer and Cross-Claim stricken.  *Id.* at 4.  However, the Court also granted Synovus and Qualpay leave to file motions to intervene, provided that they fully complied with the Federal Rules of Civil Procedure.  *Id.* at 3-4.

On September 3, 2019, Synovus filed a motion to intervene seeking the return of the Reserve Funds.  Doc. 219.  The Special Receiver and the FTC filed responses in opposition to Synovus's motion.  Docs. 225; 224.  On October 23, 2019, the undersigned issued a report recommending that the Court deny Synovus's motion to intervene (Doc. 228), which the Court adopted and confirmed (Doc. 246), overruling Synovus's objections (Doc. 232).

On January 15, 2020, Synovus filed a notice of appeal to the United States Court of Appeals for the Eleventh Circuit relating to the Court's denial of Synovus's motion to intervene.  Doc. 251. Now before the undersigned is the Special Receiver's Consolidated Motion (1) To Approve Settlement with Synovus Bank; (2) To Approve the Payment of Fees and Costs; And (3) To Terminate the Special Receiver's Appointment.  Doc. 268 (the Motion).  The undersigned will consider each issue in turn.

## II.     Settlement

Through the Motion, the Special Receiver seeks court approval of a settlement with Synovus concerning the Reserve Fund, explaining that "[i]n advance of mediation ordered by the Eleventh Circuit, the parties engaged in numerous settlement discussions, which resulted in the settlement that is the subject of this [M]otion . . . ."  Doc. 268 at 8-9.  The Special Receiver also explains the terms of and the basis for the settlement (*see* Doc. 268 at 9-12) and attaches to the Motion the settlement agreement (Doc. 268-1).

In sum, the settlement provides that the Receiver will return approximately $2 million to Synovus, while the Receivership estate will retain the remainder of the Reserve Fund previously turned over—approximately $4.4 million, plus additional accrued interest since March 30, 2020. *See* Doc. 268 at 8; Doc. 268-1.  In return, Synovus will dismiss any pending actions related to the Reserve Fund (including its appeal to the Eleventh Circuit) and release its entitlement to any claim with respect to the Receivership (including a claim to the Reserve Fund).  *See id.*  The Special Receiver will likewise release Synovus for any claim the Special Receiver may have pursued against Synovus on behalf of the Receivership.  *See id.*

The Special Receiver explains that in negotiating the settlement, he considered several factors.  First, the Special Receiver points out that Synovus has vigorously pursued its entitlement

to the Reserve Fund and would likely continue to do so absent settlement, in which case further litigation would likely "consume a significant amount of Receivership resources that could otherwise be used to compensate defrauded customers and other claimants." *Id.* at 9-10.  Second, the Special Receiver notes that the settlement would immediately provide more than $4.4 million to the Receivership estate "free and clear of challenge." *Id.* at 11-12.  Third, the Special Receiver notes that the settlement would resolve the uncertainty of future litigation with Synovus. *Id.* at 11-12.  With respect to this uncertainty, the Special Receiver explains that if, for example, Synovus succeeded in demonstrating a valid security interest in the Reserve Fund, that interest might require the Receivership to return funds to Synovus during the claims process, "thus reducing recovery from the Receivership estate by other claimants. . . most of whom are unsecured, defrauded consumers." *Id.* at 10.  The Special Receiver also acknowledges the challenges in succeeding on potential claims against Synovus, and notes that even if such claims were successful, "the amount of recovery that would ultimately flow to the Receivership in excess of the negotiated Settlement amount is highly uncertain." *Id.* at 11.

The Special Receiver thus concludes that this settlement is fair and in the best interest of the Receivership estate because "it not only provides substantial funds available for distribution to defrauded consumers and other claimants in the claims process, but it also ends costly litigation with Synovus over entitlement to the reserve funds at issue, as well as uncertain benefits that would result from any litigation efforts by the Special Receiver against Synovus." *Id.* at 9; *see generally id.* at 9-12.

"The district court has broad powers and wide discretion to determine relief in an equity receivership." *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992); *see also S.E.C. v. Kaleta*, 530 Fed. Appx. 360, 362 (5th Cir. 2013).  After carefully considering the terms of the proposed

settlement and the arguments and representations of the Special Receiver—and noting there are no objections to the Motion—the undersigned agrees with the Special Receiver and recommends that the Court grant the Motion to the extent it requests court approval of the settlement.  In doing so, the undersigned finds that the settlement agreement is fair, reasonable, and in the best interest of the Receivership estate and the affected consumers as a whole.  *See Sterling v. Stewart*, 158 F.3d 1199, 1202 (11th Cir. 1998) (holding that the determination of fairness of the settlement [in an equity receivership] is left to the sound discretion of the trial court and that the court's decision will not be overturned absent a clear showing of abuse of discretion).

## III.    Fees and Costs

The Special Receiver also moves for court approval to pay himself (as Special Receiver), counsel to the Special Receiver, and counsel to the Receiver.  Doc. 268 at 12-16.  The Court has already determined that the Receiver and counsel to the Receiver are entitled to payment of a reasonable fee and reimbursement of actual out-of-pocket expenses. This is memorialized in the Court's order appointing the Receiver, which provides that:

> **IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Entities. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

Doc. 13 at 22-23.

On May 23, 2019, the Court entered an Order granting the Receiver's Motion for Appointment of Special Receiver and appointing Burton Wiand "as the special receiver to handle all matters relating to Qualpay and Synovus."  Doc. 182.  As such, the undersigned finds that the

Special Receiver and counsel to the Special Receiver are likewise entitled to payment of a reasonable fee and reimbursement of actual out-of-pocket expenses.

Courts are required to utilize the lodestar approach to determine reasonable compensation. *SEC v. Aquacell Batteries, Inc.*, No. 6:07-cv-608-Orl-22DAB, 2008 WL 276026, at *3 (M.D. Fla. Jan. 31, 2008).  The lodestar figure is reached by "multiply[ing] the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (internal quotations omitted); *see also Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-22046, 2010 WL 750301, at *2 (S.D. Fla. Mar. 3, 2010).  The party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable.  *See Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).  "If evidence is inadequate, a court in its discretion may reduce an award, make the award on its own experience without further filings or an evidentiary hearing, or exclude unsupported requests."  *Proescher v. Sec. Collection Agency*, No. 3:17-CV-1052-J-32PDB, 2018 WL 3432737, at *10-11 (M.D. Fla. June 8, 2018), *report and recommendation adopted sub nom.*, No. 3:17-CV-1052-J-32PDB, 2018 WL 3428157 (M.D. Fla. July 16, 2018) (internal citations and quotations omitted).  In determining if the requested rate is reasonable, the Court may consider the applicable *Johnson* factors and may rely on its own knowledge and experience.  *Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.") (quotations and citation omitted); *see Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[2]

---

[2] The *Johnson* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other

**A.  The Special Receiver's Fee**

The Special Receiver requests a payment of fees for the period June 3, 2019 through August 13, 2020 in the amount of $6,084.00, which is based on 16.9 hours expended by the Special Receiver at an hourly rate of $360.00.  *See* Doc. 268 at 12-14; Doc. 268-2 at 8-10.

Based on the account of receivership events contained in the motion (*see* Doc. 268 at 13-14 ), and the itemized timesheet attached to the motion (Doc. 268-2 at 8-11), the undersigned finds that the hours expended by the Special Receiver for the period June 3, 2019 through August 13, 2020 are reasonable.

The Special Receiver maintains that his requested hourly rate of $360.00 represents a $140.00 discount off his standard rate of $500.00.  *See* Doc. 268 at 6 n.4; Doc. 181 at 7.  As reported by the Receiver in his Motion for Appointment of Special Receiver, the Special Receiver agreed to accept the reduced rate.  Doc. 181 at 7.  The undersigned finds the Special Receiver's hourly rate to be reasonable for his services in this case.  Upon consideration of all these factors, it is respectfully recommended that the Court allow the Special Receiver to be paid $6,084.00 in fees.

**B.  The Special Receiver's Counsel's Fee**

---

employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The Eleventh Circuit has subsequently explained that "district courts may, but are not required to, consider [the *Johnson*] factors since many 'usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 801 (11th Cir. 2012) (quoting *ADA v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 n.1 (11th Cir. 2006)).

To assist him in his duties, the Special Receiver hired counsel, the law firm Wiand Guerra King (WKG).  Thus, the Special Receiver requests permission to pay WGK fees for the period June 3, 2019 through August 18, 2020 in the amount of $62,064.00, which is based on 205.9 hours expended by two partners (George Guerra and Jared J. Perez); two associates (Eric Feld and Michael Mariani); and one paralegal (Jeffrey Rizzo).  *See* Doc. 268 at 12-14; Doc. 268-2 at 11-20.

Based on the account of receivership events contained in the Motion (*see* Doc. 268 at 12-14) and the itemized timesheet attached to the Motion (Doc. 268-2), the undersigned finds that the hours expended by the Special Receiver's counsel from June 3, 2019 through August 18, 2020 are reasonable.  But the undersigned notes that, in the Motion itself, the description of services rendered is deficient, and, thus, the undersigned is relying primarily upon the attached timesheets (Doc. 268-2 at 11-19) and information gleaned from the Motion (Doc. 268 at 12-14) in making this finding.

In turning to the second component of the lodestar, however, the undersigned finds that the Special Receiver has not provided sufficient justification or support for the hourly rates requested for the professionals at WGK.  To assist him in his duties, the Special Receiver retained the services of five professionals at WGK; the following is an explanation of the rates and hours billed for each professional:

|  | Role | Rate | Hours | Total |
|---|---|---|---|---|
| George Guerra | Partner | $400 | 24.7 | $9,880.00 |
| Jared J. Perez | Partner | $320 | 2.0 | $640.00 |
| Eric Feld | Associate | $290 | 174.0 | $50,460.00 |
| Michael Mariani | Associate | $235 | 2.9 | $681.50 |
| Jeffrey Rizzo | Paralegal | $175 | 2.3 | $402.50 |

| | | | Total: | $62,064.00 |
|---|---|---|---|---|

*See* Doc. 268-2 at 19.  This being the Special Receiver's first request for fees for services rendered by its counsel in this case, the undersigned is disappointed at the inadequacy of the Special Receiver's effort to justify its counsel's fees.  It is the Special Receiver's burden to justify the rates he seeks to collect for his counsel.  But there is almost no information provided to the Court justifying the hourly rates at issue.  The Special Receiver provided little explanation of each professional's role at their firm (other than partner, associate, or paralegal), no information concerning the professionals' qualifications justifying their requested rates, no opinion testimony supporting the requested rates, and identified no similar cases in which courts awarded similar rates for similar work.

Given the dearth of information within the Motion, the undersigned is left to the exercise of discretion and, thus, may reduce the award, make the award on its own experience without further filings or an evidentiary hearing, or exclude unsupported requests.  *See Proescher*, 2018 WL 3432737, at *10-11, *report and recommendation adopted sub nom.*, 2018 WL 3428157.  Here, drawing upon the undersigned's own experience and expertise, and considering the lack of supporting information provided by the Special Receiver, the undersigned finds the hourly rates set for both partners and both associates reasonable, but finds that the paralegal rate should be reduced to $125 per hour.

In coming to the foregoing rates (which the undersigned deems significant, especially in light of the lack of information supporting the request), the undersigned has also considered the lack of opposition to the motions by any party, as well as the *Johnson* factors, including particularly the significant time and effort involved, the difficulty and complexity of this case, the skill

necessary to perform the services requested, and the time limitations involved in a case such as this.

Upon consideration of all these factors, it is respectfully recommended that the Court allow the Special Receiver to pay WGK $61,949.00 in fees.

### C.  The Receiver's Counsel's Fee

The Special Receiver also requests permission to pay WGK fees for its services as counsel to the Receiver for the period February 22, 2019 through August 5, 2020 in the amount of $22,862.50, which is based on 67.6 hours expended by one partner (George Guerra), one associate (Eric Feld), one paralegal (Jeffrey Rizzo), and one counsel (Burton Wiand, who is also the Special Receiver).  Doc. 268-2 at 6.

Based on the account of "services provided" contained in the Motion, it is not clear to the undersigned which services should be attributed to WGK as counsel for the Special Receiver and which services should be attributed to WGK as counsel for the Receiver.  As the undersigned has already stated, in the motion itself, the description of services rendered is deficient.  However, relying primarily on the itemized timesheet attached to the Motion (Doc. 268-2 at 1-6), the undersigned finds that the hours expended by the Receiver's counsel from February 22, 2019 through August 5, 2020 are reasonable.

In turning to the second component of the lodestar, however, the undersigned again finds that the Special Receiver has not provided sufficient justification or support for the hourly rates requested for the professionals at WGK.  To assist him in his duties, the Receiver retained the services of four professionals at WGK; the following is an explanation of the rates and hours billed for each professional:

|  | Role | Rate | Hours | Total |
|---|---|---|---|---|

| George Guerra | Partner | $400 | 18.6 | $7,440.00 |
|---|---|---|---|---|
| Eric Feld | Associate | $290 | 29.8 | $8,642.00 |
| Jeffrey Rizzo | Paralegal | $175 | 6.7 | $1,172.50 |
| Burton W. Wiand | Counsel | $360 | 0.3 | $108.00 |
| Burton W. Wiand | Counsel | $500 | 11.0 | $5,500 |
| | | | Total: | $22,862.50 |

*See* Doc. 268-2 at 6.[3]  Again, there is almost no information provided to the Court justifying the hourly rates at issue.

The undersigned has already determined that $400, $290, and $125 are reasonable hourly rates for Mr. Guerra, Mr. Feld, and Mr. Rizzo, respectively.  However, the Receiver also used the services of Burton Wiand, listed as "counsel" at WGK, who was ultimately appointed as the Special Receiver.  There is no information at all concerning Mr. Wiand in his role as counsel (who seeks the highest rate), and there is no information concerning the reason for the variability between Mr. Wiand's rate, which ranges from $360 per hour (the same rate he accepted for his services as Special Receiver) to $500 per hour.  Rather, the Motion simply includes the following footnote:

> [T]he Special Receiver, Mr. Wiand, and the law firm his is associated with, Wiand Guerra King, initially acted as counsel to the Receiver. Mr. Wiand was then appointed as the "Special Receiver" and other attorneys with Wiand Guerra King continued to represent him. While the work performed by Mr. Wiand was not substantially different in these two roles, the fees incurred by Mr. Wiand as counsel

---

[3] The undersigned notes that in the itemized timesheet, there are additional listings for George Guerra (0.5 hours at a $0.00 hourly rate) and Burton Wiand (0.7 hours at a $0.00 hourly rate). Because these listings do not affect the total fees requested and are not addressed at all in the Motion, the undersigned will not address those listings in this Report.

and then as Special Receiver will be segregated for the benefit of the Court. As will Wiand Guerra King's fees for services to the Receiver and the Special Receiver.

Doc. 268 at 12 n.10.

Given the dearth of information within the Motion, the undersigned is left to the exercise of discretion and, thus, may reduce the award, make the award on its own experience without further filings or an evidentiary hearing, or exclude unsupported requests. *See Proescher*, 2018 WL 3432737, at *10-11, *report and recommendation adopted sub nom.*, 2018 WL 3428157. Here, drawing upon the undersigned's own experience and expertise, and considering the lack of supporting information provided by the Special Receiver, the undersigned finds that the hourly rates for Mr. Wiand should be reduced to $450.

In coming to the foregoing rate (which the undersigned deems significant, especially in light of the lack of information supporting the request), the undersigned has considered the lack of opposition to the Motion by any party, as well as the *Johnson* factors, including particularly the significant time and effort involved, the difficulty and complexity of this case, the skill necessary to perform the services requested, and the time limitations involved in a case such as this. Additionally, the undersigned notes that he has repeatedly addressed the lack of information justifying various attorney's hourly rates throughout this case (*see, e.g.*, Doc. 110 at 7-10).

Upon consideration of all these factors, it is respectfully recommended that the Court allow the Special Receiver to pay WGK $21,977.50 in fees.

## D.  WGK's Costs

In addition to fees, the Special Receiver is requesting that WGK be paid $4,306.00 in costs. Doc. 268 at 13.  These expenses appear to be justified and to have been actually incurred, based upon a review of the invoices attached to the Motion which show the itemized disbursements of

funds for identified expenses. Doc. 268-2 at 6;20.  Thus, the undersigned respectfully recommends that the Court allow the Receiver to pay WGK $4,306.00 in expenses.

## IV.     Termination of Special Receiver's Appointment

Finally, the Special Receiver requests that the Court terminate his appointment.  In the Motion, the Special Receiver explains that, if the Court approves the settlement with Synovus, it will conclude Synovus's involvement in this case and end the Special Receiver's investigation into potential claims against Synovus.  *See* Doc. 268 at 15-16.  The Special Receiver also represents that the FTC is entering into a separate settlement with Qualpay, which will terminate Qualpay's involvement in this case.  *See id.* at 16 n.13.  In light of the Special Receiver's responsibilities being to "handle all matters relating to Qualpay and Synovus" (Doc. 182), and the apparent end of all matters relating to Qualpay and Synovus upon settlement approval, the Special Receiver requests that the Court terminate his appointment, along with the appointment with any representatives he employed.  Doc. 268 at 16.  The Special Receiver asserts that no accounting is appropriate, given that "during the course of the Special Receivership, the Special Receiver did not hold or receive any funds or assets as they are held by Receiver Mark Bernet."  The undersigned agrees with the Special Receiver and thus respectfully recommends that the Court terminate Burton Wiand's appointment as Special Receiver.

## V.     Conclusion

Accordingly, it is respectfully **RECOMMENDED** that the Motion (Doc. 268) be **GRANTED in part** and **DENIED in part** as follows:

1.  The settlement with Synovus be approved;

2.  The Special Receiver be authorized to pay himself (as Special Receiver) $6,084.00 in fees;

3.  The Special Receiver be authorized to pay WGK $61,949.00 in fees for its services as counsel for the Special Receiver;

4.  The Special Receiver be authorized to pay WGK $21,977.50 in fees for its services as counsel for the Receiver;

5.  The Special Receiver be authorized to pay WGK $4,306.00 in expenses; and

6.  The Motion (Doc. 268) be **DENIED in all other respects.**

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on October 23, 2020.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

- 17 -