# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**FEDERAL TRADE COMMISSION,**

        **Plaintiff,**

**v.**                                          **Case No: 6:18-cv-862-RBD-DCI**

**MOBE LTD.,
MOBEPROCESSING.COM, INC.,
TRANSACTION MANAGEMENT USA,
INC., MOBETRAINING.COM, INC.,
9336-0311 QUEBEC INC., MOBE PRO
LIMITED, MOBE INC., MOBE
ONLINE LTD., MATT LLOYD
PUBLISHING.COM PTY LTD.,
MATTHEW LLOYD MCPHEE, SUSAN
ZANGHI and INGRID WHITNEY,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

      This cause comes before the Court for consideration without oral argument on the following motions:

| | |
|---|---|
| **MOTION:** | **Receiver's First and Final Application for Authority to Pay the Rehmann Group for Accounting Services Rendered (Doc. 296)** |
| **FILED:** | **June 4, 2024** |
| | |
| **MOTION:** | **Receiver's Verified Sixth and Final Application for Payment for Services Rendered by Akerman LLP (Doc. 297)** |
| **FILED:** | **June 4, 2024** |

| | |
|---|---|
| **MOTION:** | **Receiver's Verified Eighth and Final Application for Payment for Services Rendered (Doc. 298)** |
| **FILED:** | **June 4, 2024** |
| | |
| **MOTION:** | **Receiver's Final Report, Concerning Winding Up the Receivership, and Unopposed Motion to Conclude Receivership and Discharge Receiver (Doc. 299)** |
| **FILED:** | **June 4, 2024** |

**THEREON** it is **RECOMMENDED** that the motions be **GRANTED** as set forth herein.

## I.   Background

On June 4, 2018, the Federal Trade Commission (FTC) filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b) (the FTC Act). Doc. 1. The FTC also moved pursuant to Federal Rule of Civil Procedure 65(b) for a temporary restraining order, asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Defendants. Doc. 3. At the same time, the FTC made an application for a temporary receiver. Doc. 6. The next day, the Court granted the FTC's motions, issued a temporary restraining order, and appointed Mark J. Bernet as temporary receiver (the Receiver). Doc. 13.

In sum, in the Complaint, the FTC alleged that Defendants operated a fraudulent internet business education program called "My Online Business Education," or "MOBE," through which Defendants claimed they would reveal a "simple 21-step system that will show consumers how to quickly and easily start their own online business and make substantial income." Doc. 1 at 2. However, the FTC further alleged that, contrary to Defendants' representations, "the vast majority of consumers who join the MOBE program and purchase ... costly MOBE memberships lose

money." *Id.* at 3. According to the FTC, Defendants defrauded thousands of consumers who collectively paid Defendants over $125,000,000.00 based on misrepresentations by Defendants concerning MOBE. *Id.* at 3-4.

On August 17, 2018, the Receiver first moved to recover payment for services rendered both by the Receiver (Doc. 92, the Receiver's first motion to pay himself) and by counsel hired by the Receiver to assist him (Doc. 93, the Receiver's first motion to pay counsel). The motions were unopposed. Docs. 92 at 23; 93 at 12. The undersigned recommended that the Receiver's first motion to pay himself be granted in full and recommended that the Receiver's first motion to pay counsel be granted in part and denied in part such that the undersigned reduced certain of the requested rates as unsupported and set rates that the Court deemed reasonable. Doc. 110. No party objected to that Report, and the Court adopted the Report. Doc. 114.

On May 9, 2019, the Receiver moved for the second time to recover payment for services rendered both by the Receiver (Doc. 175) and by counsel hired by the Receiver to assist him (Doc. 176). The motions were unopposed. Docs. 175-176. The undersigned recommended that the Receiver's second motion to pay himself be granted in full and recommended that the Receiver's second motion to pay counsel be granted in part and denied in part such that the undersigned again reduced certain of the requested rates as unsupported and set rates that the Court deemed reasonable. Doc. 207. No party objected to that Report, and the Court adopted the Report. Doc. 215.

On December 16, 2019, the Receiver moved to recover payment for services rendered by Canadian counsel hired by the Receiver to assist him. Doc. 240. The motion was unopposed. Doc. 240. The undersigned recommended that the Receiver's motion to pay Canadian counsel be granted in part and denied in part such that the undersigned again reduced certain of the requested rates as

unsupported and set rates that the Court deemed reasonable. Doc. 248. No party objected to that Report, and the Court adopted the Report. Doc. 249.

On December 17, 2019 and December 18, 2019, the Receiver moved for the third time to recover payment for services rendered both by the Receiver (Doc. 241) and by counsel hired by the Receiver to assist him (Doc. 243), respectively. The motions were unopposed. Docs. 241; 243. The undersigned recommended that the Receiver's second motion to pay himself be granted in full and recommended that the Receiver's second motion to pay counsel be granted in part and denied in part such that the undersigned again reduced certain of the requested rates as unsupported and set rates that the Court deemed reasonable. Doc. 247. No party objected to that Report, and the Court adopted the Report. Doc. 250.

On May 28, 2020, the Receiver moved for the fourth time to recover payment for services rendered by the Receiver (Doc. 261), by counsel hired by the Receiver to assist him (Docs. 262, 263), and by an accounting firm the Receiver hired to assist him (Doc. 264).  The motions were unopposed.  Docs. 261-264.  The undersigned recommended that the Receiver's first motion to pay himself be granted in full, that the Receiver's second motion to pay counsel be granted in part and denied in part, that the Receiver's third motion to pay a Hong Kong law firm be granted in part and denied in part, that the Receiver's, and that Receiver's fourth motion to pay an accounting firm be granted in full.  Doc. 265.  No party objected to that Report, and the Court adopted the Report.  Doc. 266.

On October 7, 2020, the Receiver moved for the fifth time to recover payment for services rendered by the Receiver.  Doc. 269.  The motion was unopposed.  *Id.*  The undersigned recommended that the Receiver's motion be granted.  Doc. 270.  No party objected to that Report, and the Court adopted the Report.  Doc. 277.

On August 24, 2021, the Receiver moved for the sixth time to recover payment for services rendered by the Receiver (Doc. 289) and by counsel hired by the Receiver to assist him (Doc. 290). The motions were unopposed.  Docs. 289-290.  The undersigned recommended that the Receiver's motions be granted.  Doc. 291.  No party objected to that Report, and the Court adopted the Report.  Doc. 292.

On September 21, 2022, the Receiver moved for the seventh time to recover payment for services rendered by the Receiver.  Doc. 293.  The motion was unopposed.  *Id.*  The undersigned recommended that the Receiver's motion be granted.  Doc. 294.  No party objected to that Report, and the Court adopted the Report.  Doc. 295.

Now before the undersigned are the Receiver's eighth and final application to recover fees incurred by the Receiver (Doc. 298), as well as motions to recover payment for services rendered by counsel hired by the Receiver to assist him (Doc. 297), and to recover payment for services rendered by an accounting firm hired by the Receiver to assist him (Doc. 296).  Additionally, the Receiver has filed a motion concerning winding up the receivership, concluding the receivership, and discharging the Receiver.  Doc. 299.  All the pending motions are unopposed.  *See* Docs. 296-299.

## II.      Discussion

The Court has already determined that the Receiver and counsel to the Receiver are entitled to payment of a reasonable fee and reimbursement of actual out-of-pocket expenses. This is memorialized in the Court's order appointing the Receiver, which provides that:

> **IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Entities. The Receiver shall file with the Court and serve on

the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

Doc. 13 at 22-23.

Courts are required to utilize the lodestar approach to determine reasonable compensation. *SEC v. Aquacell Batteries, Inc.*, No. 6:07-cv-608-Orl-22DAB, 2008 WL 276026, at *3 (M.D. Fla. Jan. 31, 2008). The lodestar figure is reached by "multiply[ing] the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (internal quotations omitted); *see also Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-22046, 2010 WL 750301, at *2 (S.D. Fla. Mar. 3, 2010). The party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable. *See Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "If evidence is inadequate, a court in its discretion may reduce an award, make the award on its own experience without further filings or an evidentiary hearing, or exclude unsupported requests." *Proescher v. Sec. Collection Agency*, No. 3:17-CV-1052-J-32PDB, 2018 WL 3432737, at *10-11 (M.D. Fla. June 8, 2018), *report and recommendation adopted sub nom.*, No. 3:17-CV-1052-J-32PDB, 2018 WL 3428157 (M.D. Fla. July 16, 2018) (internal citations and quotations omitted). In determining if the requested rate is reasonable, the Court may consider the applicable *Johnson* factors and may rely on its own knowledge and experience. *Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment

either with or without the aid of witnesses as to value.") (quotations and citation omitted); *see Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[1]

### A. The Receiver's Accountant's Fee

To assist him in his duties, the Receiver hired an accounting firm, Rehmann Group. Thus, the Receiver requests permission to pay Rehmann $20,410.00 for services rendered for the period beginning August 10, 2020 and continuing through May 31, 2023, which sum is based on 130.8 hours expended by Rehmann at a blended hourly rate of $423.80. Doc. 296 at 1-2.[2]

The Receiver represents that all the services for which the Receiver requests compensation for Rehmann were rendered solely in connection with this case and solely at the request and under the supervision of the Receiver, and that Rehmann received a retainer in the amount of $35,000.00. *Id.* at 2-3. The Receiver maintains that, considering the difficult and complex nature of the case, the requested compensation for Rehmann is fair and reasonable. *Id.* at 3.

---

[1] The *Johnson* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The Eleventh Circuit has subsequently explained that "district courts may, but are not required to, consider [the *Johnson*] factors since many 'usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.' " *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 801 (11th Cir. 2012) (quoting *ADA v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 n.1 (11th Cir. 2006)).

[2] The Receiver requests authority to pay Rehmann $55,410.00, but notes that after applying a $35,000.00 retainer previously paid, the net payment to Rehmann would be $20,410.00. Doc. 296 at 1-2. However, the undersigned notes that multiplying the proposed blended hourly rate ($423.80) by the total hours expended (130.8) equates to $55,411.85. Despite this, the Receiver correctly requests the proper total fee of $51,400.00. *See infra* (noting the correct blended hourly rate should be $423.79).

Based on the detailed account of events contained in the motion (*id.* at 4-6), and the itemized timesheet attached to the motion (Doc. 296-1), the undersigned finds that the hours expended by the Receiver's accountants are reasonable.

In turning to the second component of the lodestar, however, while the undersigned finds that the Receiver has provided sufficient justification and support for the blended hourly rate requested for a professional at Rehmann, there appears to be a slight mathematical error in the Receiver's calculation of the blended hourly rate.[3]  Though not clear from the motion, it appears that the Receiver arrived at the blended hourly rate by dividing the total fees ($55,410.00) by the total hours expended (130.75) and concluded that the blended hourly rate should be $423.80. However, the undersigned finds that the correct blended hourly rate should be $423.79. Accordingly, the undersigned respectfully recommends that Court reduce the blended hourly rate to $423.79 and allow the Receiver to pay Rehmann $55,410.00, less the $35,000.00 retainer previously paid, for a total of $20,410.00.

### B. The Receiver's Counsel's Fee: Akerman LLP

To assist him in his duties, the Receiver hired counsel at the law firm Akerman LLP.  Thus, the Receiver requests permission to pay Akerman fees for the period beginning August 1, 2021 through the end of the case (the Final Fee Period) in the amount of $3,750.00, which is based on 25.0 hours expended by a paralegal at an hourly rate of $150.00.  Doc. 297 at 2.

---

[3] To assist him in his duties, the Receiver retained the services of eight professionals at Rehman. The Receiver provides that the hourly rates for the eight professional are as follows: (1) $450.00 for Charles Hoebeke, who expended 3.3 hours; (2) $450.00 for Mitchell Hall who expended 104.6 hours; (3) $300.00 for Gina Joyce who expended 3.45 hours; (4) $300.00 for Haley Arndt who expended 16.85 hours; (5) $300.00 for Stephanie Romig who expended 0.5 hours; (6) $300.00 for Tori Lounds who expended 1.25 hours; (7) $300 for Jessica Mohr who expended 0.3 hours; and (8) $300.00 for Tami Archey who expended 0.5 hours.  Doc. 296 at 8.

The Receiver explains during this billing period he relied upon that paralegal, Mary A McLees, and did not utilize the assistance of any attorneys at Akerman. *Id.* at 5.

The Receiver represents that all the services for which the Receiver requests compensation for Akerman were rendered solely in connection with this case and solely at the request and under the supervision of the Receiver, and that Akerman received no retainer for professional fees and costs in connection with its services, but instead agreed to wait for a Court order authorizing payment before taking payment. *Id.* at 2-3. The Receiver is a partner at Akerman, but the Receiver has requested his fees separately, as set forth *infra*. *Id.* at 3-4. The Receiver maintains that, in light of the difficult and complex nature of this case, the requested compensation for Akerman is fair and reasonable. *Id.* at 4.

Based on the detailed account of events contained in the motion (*id.* at 5-7), and the itemized timesheet attached to the motion (Doc. 297-1), the undersigned finds that the hours expended by the Receiver's counsel from August 1, 2021 through the Final Fee Period are reasonable.

In turning to the second component of the lodestar, the undersigned also finds that the Receiver has provided sufficient justification and support for the hourly rate requested for Ms. McLees. The undersigned has already set a rate of $150.00 for Ms. McLees in a previously adopted Report (Doc. 291), and the undersigned will continue to recommend that rate for the reasons set forth in that Report. The Receiver represents that Ms. McLees has been a paralegal for over 40 years and has extensive experience in complex corporate litigation, securities litigation, and insurance defense. Doc. 297 at 11. Thus, drawing upon the undersigned's own experience and expertise, and considering the information provided by the Receiver, the undersigned recommends that the Court set an hourly rate for Ms. McLees of $150.00, which the undersigned

finds reasonable.  In affirming that rate (which the undersigned deems significant), the undersigned has also considered the lack of opposition to the motion by any party, as well as the *Johnson* factors, including particularly the significant time and effort involved, the skill necessary to perform the services requested, the fee requested by Akerman (which the Receiver deems lower than is customary), the significant results obtained by Akerman in securing assets, and the experience and reputation of the law firm.  Upon consideration of all these factors, it is respectfully recommended that the Court allow the Receiver to pay Akerman $3,750.00 in fees.

**C. The Receiver's Fee**

The Receiver requests a payment of fees for period of September 1, 2022, continuing through the Final Fee Period in the amount of $6,006.00 which is based on 18.2 hours expended by the Receiver at an hourly rate of $330.00.  Doc. 298 at 2.

Based on the detailed account of receivership events contained in the motion (*id.* at 6-15), and the itemized timesheet attached to the motion (Doc. 298-1), the undersigned finds that the hours expended by the Receiver for the period of September 1, 2022 through the Final Fee Period are reasonable.

The Receiver maintains that his requested hourly rate of $330.00 represents a discount off his standard 2020-21 hourly rate of $560.00, his standard 2022 hourly rate of $690.00, and his standard 2024 hourly rate of $960.00.  Doc. 298 at 2 n.2.  As reported by Plaintiffs in their Application for a Temporary Receiver, the Receiver agreed to accept the reduced hourly rate.  Doc. 6 at 2-3.  As in the undersigned's previous reports (most recently, Doc. 294 at 3), which was adopted by the Court (Doc. 295), the undersigned finds the Receiver's hourly rate to be reasonable for his services in this case.  Upon consideration of all these factors, it is respectfully recommended that the Court allow Receiver to be paid $6,006.00 in fees.

### D. Motion to Conclude Receivership and Discharge Receiver

Finally, the Receiver requests that the Court conclude the receivership and discharge the Receiver.  Doc. 299.  The Receiver contends that he has completed all necessary receivership tasks that can be completed in a cost-effective manner.  *Id.* at 1.  The Receiver states that all accounts have now been closed, save for a money market account in which the Receiver is holding $386,144.99.  *Id.* at 2-3.

"'The Court may discharge a receiver at any stage of the proceedings, and the decision to discharge a receiver is discretionary.'"  *FTC v. Giannulis*, 2020 WL 13120570, at *2 (M.D. Fla. Oct. 6, 2020) (quoting *SEC v. Int'l Capital Mgmt., Inc.*, 2008 WL 11470843, at *4 (S.D. Fla. Jan. 8, 2008)).  "Generally speaking, a receivership should be terminated as soon as it has accomplished its purpose. As such, whenever the reason or necessity for the receiver ceases to exist, the receiver should be discharged upon proper application."  *Int'l Capital*¸ 2008 WL 11470843, at *4 (internal citations omitted).

Taking into account the extensive history of this case, along with the Receiver's steadfast commitment to faithfully executing his duties, the undersigned recommends that the Receiver's request for discharge should be granted.  The undersigned respectfully recommends the Receiver be discharged upon paying out the fee awards discussed in this Report.  Further, the undersigned recommends that the Court order the Receiver to pay the balance of the funds in his possession (after paying the fee awards) to the Plaintiff and thereafter discharge the Receiver.

### III. Conclusion

Accordingly, the undersigned respectfully **RECOMMENDS** that:

1.  Receiver's First and Final Application for Authority to Pay the Rehmann Group for Accounting Services Rendered (Doc. 296) be **GRANTED** such that that the Receiver be authorized to pay Rehmann Group $20,410.00 in fees;

2.  Receiver's Verified Sixth and Final Application for Payment for Services Rendered by Akerman LLP (Doc. 297) be **GRANTED** such that the Receiver be authorized to pay Akerman $3,750.00 in fees;

3.  Receiver's Verified Eighth and Final Application for Payment for Services Rendered (Doc. 298) be **GRANTED** and that the Receiver be authorized payment in the amount of $6,006.00 in fees; and

4.  Receiver's Final Report, Concerning Winding Up the Receivership, and Unopposed Motion to Conclude Receivership and Discharge Receiver (Doc. 299) be

    a.  **GRANTED in part** such that:

        i.  The Court should direct the Receiver to pay the balance of funds in his possession to the Plaintiff; and

        ii. Upon a Report from the Receiver verifying completion of all these tasks, the Court discharge the Receiver; and

    b.  **DENIED without prejudice** to the extent it requests any further relief.[4]

---

[4] At the end of the motion, the Receiver requests that the Court provide him "with a general release." Doc. 299 at 4. There is no explanation concerning this request, nor is there any legal authority supporting it. It appears that this is a request often made by this Receiver in particular. In some cases, judges in this district have granted his request, though without much discussion. *See, e.g.*, *Fed. Trade Comm'n & Off. of the Att'y Gen. v. Life Mgmt. Servs. of Orange Cnty., LLC*, No. 6:16-cv-982-CEM-DAB, 2022 WL 17416557, at *1 (M.D. Fla. Aug. 29, 2022) ("The Court

**NOTICE TO PARTIES**

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to serve and file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on June 10, 2024.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

---

will discharge Receiver and grant him a full and general release"). In others, judges have denied his request without much discussion. *See, e.g.*, *Fed. Trade Comm'n v. All US Mktg. LLC*, No. 6:15-cv-1016-ORL-28KRS, 2017 WL 9990574, at *1 (M.D. Fla. Sept. 5, 2017) ("The motion is denied insofar as it seeks a general release and is otherwise granted."). In another case, the judge denied his request without prejudice; he did not renew his request and the case was ultimately closed. *See FTC v. Innovative Wealth Builders, Inc.*, No. 8:13-cv-123-T-33EAJ, 2014 WL 5039538, at *2 (M.D. Fla. Sep. 30, 2014) ("However, to the extent the Receiver requests a 'release' from the Court . . . the Motion is denied without prejudice because the Receiver is required to provide further information to the Court. For instance, with respect to a release, the Receiver should prepare proposed release language for the Court's review, after circulating such language to opposing counsel.").

To the extent that the Receiver is requesting a release from any further obligations as the receiver in this case, it seems to the undersigned that such a request is sufficiently granted through his discharge. To the extent he is seeking something else, it is recommended that the request be denied without prejudice.